# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

**RICHARD PENKOSKI, JOHN GUNTER JR, WHITNEY KOHL, JOAN GRACE HARLEY, CHRIS SEVIER**

JAN 1 6 2018

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

**V.**

**JIM JUSTICE, in his official capacity as Governor of West Virginia; PATRICK MORRISEY, in his official capacity as Attorney General of West Virginia; JEAN BUTCHER, in her official capacity as the Clerk of Gilmer County**
*Defendants*

Case No: 1:18 CV 10
Keeley / Aloi

## COMPLAINT FOR INJUNCTIVE RELIEF
## INTRODUCTION

1. NOW COMES, the Plaintiffs, Pastor Richard Penkoski,[1] founder of SocialCross.org and Warriors For Christ, who is a taxpayer and Navy veteran; Chris Sevier Esq., a former Judge Advocate General, combat Infantry Officer, assistant United States Attorney, Congressional Liaison for Special Investigations, self-identified objectophile, and taxpayer; John Gunter Jr. a state and federal lobbyist, taxpayer, and self-identified polygamists; Grace Harley, a taxpayer and former transgender, and self-identified polygamist; and Whitney Kohl, a taxpayer, former lesbian, and self-identified polygamist seeking injunctive relief.  Like in *Obergefell v. Hodges*,

---

[1] Instead of continuing to petition Facebook to stop removing his facebook profile "Warriors For Christ," Pastor Penkoski is now petitioning the Federal District Court for the Northern District of West Virginia to enjoin the State of West Virginia from legally recognizing any form of parody marriage and from enforcing any statute that asserts that sexual orientation is a matter of civil rights.
https://www.washingtontimes.com/news/2018/jan/3/facebook-fight-warriors-christ-temporarily-shutter/

135 S.Ct. 2584 (2015), "this case concerns only what States may do under the Constitution" in determining (1) how the Constitution permits the States to legally define marriage and (2) which types of marriages the States can legally recognize.  While many Secular Humanist have said that America was "ready" for legally recognized "gay marriage," the United States is never "ready" for government action that violates the Constitution.  As the Court is being asked to interpret the Constitution in an unresolved controversy under the correct Constitutional prescription, Stare Decisis does not keep *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) from being overruled.  The Supreme Court has held, "questions which merely lurk in the record, neither brought to attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Industries, Inc. v. Aviall Services, Inc.* 543 U.S. 157 (2004). The Establishment Clause claims were "lurking" in the record but undecided in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015).   "[Stare Decisis] is at its weakest when [the courts] interpret the Constitution because [their] interpretation can be altered only by constitutional amendment or by overruling our prior decisions." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996); *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 94, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (Stone and Cardozo, JJ., concurring in result) ("The doctrine of stare decisis ... has only a limited application in the field of constitutional law").

2.  Under 8(e)(2), the Plaintiffs exercise their rights to file a lawsuit with alternative Constitutional claims under the First and Fourteenth Amendments.[2] These alternatives claims do

---

[2]Rule 8(e) (2), Fed. R. Civ. P., specifically provides that a party may plead in the alternative, even where the alternative claims are inconsistent: "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses." When two or more statements are made in the alternative and one of them if made independently would

not have to be consistent and they can compete. *Blazer v. Black*, 196 F.2d 139, 144 (10th Cir. 1952).[3] Pastor Penkoski joins the other four Plaintiffs in their demand for injunction under the Establishment Clause, but if paramount cause fails, then the remaining four Plaintiffs seek an injunction under the Fourteenth Amendment's Equal Protection and Substantive Due Process Clauses.

3.  This is an "if not this, then that" lawsuit.  If the Establishment Clause does not enjoin the State from legally recognizing non-secular parody marriages, then the four of the Plaintiffs warrant the same rights to marry under the Equal Protection and Due Process Clause of the Fourteenth Amendment and visa versa. Either way, the current definition of marriage and the State's decision to only legally recognize one form of non-secular parody marriage is wildly unconstitutional from every angle.

4.  First, the Plaintiffs have brought a cause of action where they contend that legally recognized gay marriage, transgender policies, and sexual orientation discrimination statutes are (1) a non-secular," (2) an indefensible legal weapon against non-observers of the religion of Secular

---

be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.
[3]*Blazer v. Black*, 196 F.2d 139, 144 (10th Cir. 1952) (explaining that a party is "at liberty to state as many separate claims as he wishe[s], regardless of consistency, whether based upon legal or equitable grounds or both"); *Clark v. Associates Commercial Corp.*, 149 F.R.D. 629, 634 (D.Kan.1993) (recognizing a party's right under Rule8(e)(2) to plead alternative and inconsistent claims); *Lader v . Dahlberg*, 2 F.R.D. 49,50 (S.D.N.Y.1941) (noting that the Federal Rules of Civil Procedure "contemplate a disposition of all issues between litigants in a single lawsuit," whether alleged in the alternative or hypothetically and whether or not consistent with one another). So, for example, "[c]ourts have permitted plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim or allege fraud or some other tort theory." 5 Wright & Miller, § 1283 at pp. 535-37. And in *Lann v. Hill*, 436 F. Supp. 463, 465 (W.D.Okla. 1977), the court noted that when a party pleads alternative and inconsistent claims, "the Court will determine if it has subject matter jurisdiction over either of the possible actions under which Plaintiff might proceed."

Humanism, and (3) an excessive entanglement the government with the religion Secular

Humanism as prohibited by the Establishment Clause. The Supreme Court in *Torcaso v.*

*Watkins*, 367 U.S., 488 (1961) and *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987) already

found that Secular Humanism is a religion for purposes of the Establishment Clause. The

evidence will show in this case that legally recognized gay marriage manages to fail every prong

of the *Lemon* and coercion tests by a landslide.[4]  Second, four of the Plaintiffs bring an

alternative cause of action under the Equal Protection and Substantive Due Process Clause of the

Fourteenth Amendment arguing that they deserve the same "existing," "fundamental," and

"individual" right to marry based on their "personal choice" and "personal autonomy" in step

_____

[4]The general rules regarding standing to challenge governmental actions are designed to ensure that courts are addressing actual cases that can be resolved by the judicial system. However, in some circumstances, individuals may seek to challenge governmental actions for which neither those individuals nor any other individuals could meet standing requirements. Indeed, the Supreme Court has noted that in some instances "it can be argued that if [someone with a generalized grievance] is not permitted to litigate this issue, no one can do so." *United States v. Richardson*, 418 U.S. 166 (1974).  Generally, the court has noted, "lack of standing within the narrow confines of Art. III jurisdiction does not impair the right to assert [one's] views in the political forum or at the polls."  However, the ability of individuals to effect change through political and democratic means does not eliminate all cases where a large group of individuals would be affected by the challenged governmental action. In particular, the Court has specifically allowed taxpayer standing for claims arising under the Establishment Clause. Under the *Flast* exception to the general prohibition on taxpayer standing, taxpayers may raise challenges of actions exceeding specific constitutional limitations (such as the Establishment Clause) taken by Congress under Article I's Taxing and Spending Clause which is applicable to the states under the Fourteenth Amendment. *Flast v. Cohen*, 392 U.S. 83 (1968). The Court has maintained its interpretation of this exception, refusing to extend it to permit taxpayer lawsuits challenging executive actions or taxpayer lawsuits challenging actions taken under powers other than taxing and spending. *Valley Forge Coll. v. Americans United*, 454 U.S. 464 (1982)(refusing to allow a taxpayer challenge of government transfer of property to a sectarian institution without charge because the action was taken by an executive agency exercising power under the Property Clause); *Hein v. Freedom from Religion Foundation*, 551 U.S. 587 (2007) (refusing to allow a taxpayer challenge of activities of the White House Office of Faith-Based and Community Initiatives because the funding was made through discretionary executive spending).  These exceptions, the Court has explained, result because the Establishment Clause is a constitutional limit on the government's ability to act. According to the Court, the framers of the Constitution feared abuse of governmental power that might result in favoring "one religion over another." *Flast*,  392 U.S. at 103-04. It is difficult to imagine circumstances in which potential abuses of the Establishment Clause could be enforced without this exception.

with their self-asserted sex-based identity narrative to the same extent that self-identified

homosexuals are afforded in the wake of *Obergefell*.[5]  If Stare Decisis applies under *Obergefell*

to all individuals who seek to enter into a parody marriage based on their sexual orientation, then

the Plaintiffs and others are entitled to legally marry in accordance with their self-asserted

sex-based identity narrative just as self-identified homosexuals are permitted. Id.  To avoid

confusion and for clarity's sake, here is the holding in *Obergefell*:

"These considerations lead to the conclusion that the right to marry is a fundamental right
inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of
the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that
liberty. The Court now holds that [self-identified homosexuals] may exercise the fundamental
right to [legally] marry. No longer may this liberty be denied to them. *Baker* v. *Nelson* must be
and now is overruled, and the State laws challenged by Petitioners in these cases are now held
invalid to the extent they exclude [self-identified homosexuals] from civil marriage on the same
terms and conditions as opposite- sex couples [in a secular marriage]." *Obergefell* at 22-23.

5. If precedent controls, then "the conclusion" that this Court must reach is that "the right to

marry is a fundamental right inherent in the liberty of the person, and under the Due Process and

Equal Protection Clauses of the Fourteenth Amendment [self-identified Objectophiles and

polygamists] may not be deprived of that right and that liberty." Id. Plaintiff Sevier is a "person"

with the same "liberty," "dignity," "autonomy" interests as self-identified homosexuals. Id. The

same is true as applied to self-identified polygamists and zoophiles. The Plaintiffs and others

cannot "be deprived of" the right to legally marry in step with their self-asserted sex-based

identity narrative as a matter of "liberty" any more or less that self-identified homosexuals can.

---

[5] *Obergefell*, 192 L. Ed. 2d 609 1-28.  *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) (fundamental right); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940 (1974) (personal choice); *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (existing right/individual right); *Lawrence v. Texas,* 539 U.S. 558 (2003) (intimate choice)

6.   As taxpayers, all five Plaintiffs have standing to pursue Establishment Clause causes of action under *Flast v. Cohen,* 392 U.S. 83 (1968) to enjoin the State from legally recognizing gay marriage and any form of parody marriage.  Likewise, the Plaintiffs and others, like self-identified polygamists, have standing to pursue Equal Protection and Substantive Due Process Causes of Action under *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), as self-identified members of the true minority of a suspect class under sexual orientation classification.

## APPLYING LIBERAL LOGIC IN *OBERGEFELL* TO CONSTITUTIONAL INTERPRETATION FOR PURPOSES OF STANDING IN UNSETTLED MARRIAGE MATTERS

7. Under this alternative cause of action pursuant to the Equal Protection and Substantive Due Process Clauses, the Plaintiffs' cause of action amounts to an "if this, then that" lawsuit. If self-identified homosexuals are given the Constitutional right to marry, then so are self-identified Objectophiles, polygamists, and zoophiles. Justice Roberts could not have made that any clearer in his dissent in *Obergefell:*

   "One immediate question invited by the majority's position is whether States may retain the definition of marriage as a union of two people. Cf. *Brown* v. *Buhman,* 947 F. Supp. 2d 1170 (Utah 2013), appeal pending, No. 14- 4117 (CA10). Although the majority randomly inserts the adjective "two" in various places, it offers no reason at all why the two-person element of the core definition of marriage may be preserved while the man-woman element may not. Indeed, from the standpoint of history and tradition, a leap from opposite-sex marriage to same-sex marriage is much greater than one from a two-person union to plural unions, which have deep roots in some cultures around the world. If the majority is willing to take the big leap, it is hard to see how it can say no to the shorter one.  It is striking how much of the majority's reasoning would apply with equal force to the claim of a fundamental right to plural marriage. If "[t]here is dignity in the bond between two men or two women who seek to marry and in their autonomy to make such profound choices," *ante,* at 13, why would there be any less dignity in the bond between three people who, in exercising their autonomy, seek to make the profound choice to marry? If a same-sex couple has the constitutional right to marry because their children would otherwise "suffer the stigma of knowing their families are somehow lesser," *ante,* at 15, why wouldn't the same reasoning apply to a family of three or more persons raising children? If not having the opportunity to marry "serves to disrespect and subordinate" gay and lesbian couples, why wouldn't the same "imposition of this disability," *ante,* at 22, serve to disrespect and subordinate people who find fulfillment in polyamorous relationships? See Bennett, Polyamory:

The Next Sexual Revolution? Newsweek, July 28, 2009 (estimating 500,000 polyamorous families in the United States); Li, Married Lesbian "Throuple" Expecting First Child, N. Y. Post, Apr. 23, 2014; Otter, Three May Not Be a Crowd: The Case for a Constitutional Right to Plural Marriage, 64 Emory L. J. 1977 (2015). I do not mean to equate marriage between same-sex couples with plural marriages in all respects. There may well be relevant differences that compel different legal analysis. But if there are, petitioners have not pointed to any. When asked about a plural marital union at oral argument, petitioners asserted that a State "doesn't have such an institution." Tr. of Oral Arg. on Question 2, p. 6. But that is exactly the point: the States at issue here do not have an institution of same-sex marriage, either." *Obergefell* at 22 (Roberts Dissenting)

8.  For better or worse, the four of five of the Plaintiffs simply ask that they and others be afforded the same benefits and treatment under the law based on their self-asserted sex-based identity narratives that self-identified homosexuals are permitted to enjoy or, otherwise, all five Plaintiffs demand that the Court must hold that legally recognized gay marriage is a sham and enjoin the State from legally recognizing gay marriage under the Establishment Clause for failing the prongs of *Lemon*.  The Plaintiffs admit that for the government to endorse polygamy and objectophile marriage would be a sham but no more so than the government's endorsement of gay marriage.

9.  The Majority in *Obergefell* stated: "For the history of marriage is one of both continuity and change. As new dimensions of freedom have become apparent to new generations, the institution of marriage has been strengthened by evolution over time." *Obergefell* at 6.   In applying liberal logic, if marriage "has been strengthened by evol[ving] over time," legally recognizing person-object, person-animal, and more than two people marriages will make marriage "stronger" all the more.  *Id.* at 6.  Otherwise, gay marriage is a non-secular sham flowing from the church of Secular Humanism.

10.  The Majority in *Obergefell* stated:

"The Constitution promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons, within a lawful realm, to define and express their identity." *Obergefell* at 2.

In light of that liberal logic, the Plaintiffs must be permitted to "express their identity" as objectophiles and polygamists through marriage, just as self-identified homosexuals are permitted. *Obergefell* at 1. Otherwise, gay marriage is a non-secular sham that entangles government with the religion of Secular Humanism.

11. If "marriage is essential to our most profound hopes and aspirations" for self-identified homosexuals, the same is true for self-identified polygamists and Objectophiles. *Id.* at 3.

12.   The Secular Humanist Majority in *Obergefell* stated, "[Self-identified Homosexuals] ask for equal dignity in the eyes of the law and the Constitution grants them that right." *Obergefell* at 1. If that that is true, then the "Constitution grants" the Plaintiff "that right" as well, based on their "asking."

**Fundamental Right For Polygamists And Objectophiles Too Or It's A Sham**
13.  If parody marriage is a "fundamental right" for self-identified homosexuals, it is clearly a fundamental right for self-identified polygamists and objectophiles on identical legal bases.[6] Otherwise, gay marriage is a non-secular sham crafted to establish Secular Humanism as the National religion.

14.  *Obergefell* Majority stated, "The limitation of marriage to opposite-sex couples may long have seemed natural and just, but its inconsistency with the central meaning of the fundamental right to marry is now manifest." Id. at 4. That stream of logic reasoning not only permits

---

[6] *Loving* v. *Virginia*, 388 U. S. 1, 12 (1967) *Zablocki* v. *Redhail*, 434 U. S. 374, 384 (1978), *Turner* v. *Safley*, 482 U. S. 78, 95 (1987)., *M. L. B.* v. *S. L. J.*, 519 U. S. 102, 116 (1996); *Cleveland Bd. of Ed.* v. *LaFleur*, 414 U. S. 632, 639–640 (1974);; *Skinner* v. *Oklahoma ex rel. Williamson*, 316 U. S. 535, 541 (1942); *Meyer* v. *Nebraska*, 262 U. S. 390, 399 (1923). *Obergefell* at 11.

self-identified homosexuals to marry, but self-identified polygamists and objectophiles as well.

Otherwise, gay marriage is a non-secular sham crafted to imperialistically establish Secular

Humanism as the national religion.

15. The *Obergefell* Majority stated:

"The marriage laws at issue are in essence unequal: [self-identified homosexuals] are denied benefits afforded [to individuals in man-woman marriage] and are barred from exercising a fundamental right. Especially against a long history of disapproval of their relationships, this denial works a grave and continuing harm, serving to disrespect and subordinate [self-identified] gays and lesbians." Id. at 4.

If that logic permits self-identified homosexuals to marry to normalize their ideological beliefs,

it permits self-identified polygamists and objectophiles to marry as well, who have also faced a

"long history of disapproval." Otherwise, gay marriage is a non-secular sham that establishes

Secular Humanism as the supreme national religion.

**Individual Right For Polygamists And Objectophiles Too Or It's A Non-secular Sham**
16. The Majority in *Obergefell* stated:

"The Due Process Clause of the Fourteenth Amendment long has been interpreted to protect certain fundamental rights central to individual dignity and autonomy." Id. at 12. While relying on *Loving*, the Majority also stated, "The first premise of the Court's cases is that the right to personal choice regarding marriage is inherent in the concept of individual autonomy." Id.

In applying that liberal logic here, Plaintiff Sevier is an "individual" who has the "autonomous

right" to marry an object as a matter of "dignity" and "personal choice." Id. Same goes with the

self-identified polygamists litigants as to plural marriage, which simply involves three

individuals. If self-identified polygamists and objectophiles are not allowed the individual right

to legally marry, legally recognized gay marriage is a non-secular sham.

**Existing Right For Polygamists And Objectophiles Too Or It's A Sham**
17. The *Obergefell* Majority floated:

"The dynamic of our constitutional system is that individuals need not await legislative action before asserting a fundamental right. The Nation's courts are open to injured individuals who

come to them to vindicate their own direct, personal stake in our basic charter. An individual can invoke a right to constitutional protection when he or she is harmed, even if the broader public disagrees and even if the legislature refuses to act." *Obergefell* at 25.

Just as self-identified homosexuals did not have to wait to assert the individual and fundamental

right to marry, neither do self-identified polygamists and objectophiles. Id. at 5. Since

self-identified homosexuals, didn't have to wait, that means that self-identified polygamists and

objectophiles do not have to wait either. If that is not the case, legally recognized gay marriage is

a sham being used to validate a series of naked assertions and unproven faith based assumptions

that are at best implicitly religious and not disproven. The Majority in *Obergefell* stated that "the

past alone does not rule the present," which means that the Plaintiffs and others must enjoy the

same right to marry as self-identified homosexuals at present. *Obergefell* at 11. Otherwise, gay

marriage is a non-secular sham that fails the prongs of *Lemon*.

**Intimate Choice For Polygamists And Objectophiles Too Or It's A Non-Secular Sham**
18.  The Majority in *Obergefell* stated "Like other choices protected by the Due Process Clause,

decisions concerning marriage are among the most intimate that an individual can make."

*Obergefell* at 3. Just as marriage is "intimate" for self-identified homosexuals, it follows that

marriage is is an "intimate" choice for self-identified objectophiles, zoophiles, and polygamists

too. *Lawrence*, supra, at 567. *Obergefell* at 14. Using "intimacy" as a basis to justify legally

recognized gay marriage is another emotional appeal to shoehorn the edits of the religion of

Secular Humanism into a legal reality that fails to get around the Establishment Clause under

*Holloman*, 370 F.3 1252  at 1285-1286.  (Emotional appeals do not usurp the Establishment

Clause no matter how well intended on the surface).

19.  The *Obergefell* Majority stated, "in *Lawrence v. Texas*, the Court held that private intimacy

of same-sex couples cannot be declared a crime, yet it does not follow that freedom stops there."

*Obergefell* at 14. Additionally, it "does not follow that freedom stops there either" for self-identified polygamists, zoophiles, pedafiles, and objectophiles either. Either all individuals in the non-obvious class of sexual orientation are to be provided civil rights to marry or the Secular Humanist Majority in *Obergefell* was just monkeying with the Fourteenth Amendment to the point that they can be impeached for treason. The Majority in *Obergefell* stated, "outlaw to outcast may be a step forward, but it does not achieve the full promise of liberty." Applying that liberal logic here, polygamists and objectophiles should be allowed to progress forward from "outlaw to outcast to the full promise of liberty as well." If that analysis is not true, then legally recognized gay marriage is a sham and *Obergefell* must be overruled for having been staged on the wrong Constitutional narrative.

**Sexual Orientation Is A Protected Class For All Individuals Or It's A Non-secular Sham**
20. The Majority in *Obergefell* stated, "indeed, as the Supreme Judicial Court of Massachusetts has explained the decision whether and whom to marry is among life's momentous acts of self-definition, and this is true for all persons, whatever their sexual orientation." *Goodridge v. Department of Public Health*, 440 Mass. 309, 798 N. E. 2d 941 (2003); *Goodridge,* 440 Mass., at 322, 798 N. E. 2d, at 955. *Obergefell* at 13. In applying that liberal logic "all persons, whatever their sexual orientation" includes the Plaintiff Sevier whose "sexual orientation" is that of an objectofile. For the Plaintiffs and self-identified polygamists to have the right to legally marry an object or multiple people is "among life's momentous acts of self-definition" for them too.

**Emotional Appeals**
21. The third reason why Supreme Court expanded marriage to parody forms was because "the right to marry safeguards children." *Obergefell* at 15. Yet, "many [self-identified homosexuals, polygamists, and objectophiles] provide loving and nurturing homes to their children, whether

biological or adopted" too. Just as in the case with homosexuals, there are a lot of children being raised by objectophiles and polygamists as well. "Excluding [polygamists and objectophiles] from marriage thus conflicts with the central premise of the right to marry, inflicting stigma, uncertainty, and humiliation on the children of [polygamists and objectophiles] through no fault of their own."

22.   The *Obergefell* Majority stated, "no union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice and family." If that is true for self-identified homosexuals, it is true for self-identified polygamists, zoophiles, and objectophiles too.

## B.  JURISDICTION AND VENUE

23.  This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief pursuant 28 U.S.C. § 1331.

24.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and in this State. Venue is also proper because a substantial part of the events giving rise to the claims occurred in this district.

25.  This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

## NATURE OF THE CASE

26.  Currently, the legal definition of marriage is either too underinclusive or overinclusive to survive any level of scrutiny under either the Establishment Clause or the Equal Protection and Substantive Due Process Clauses. Shy of continued judicial tyranny, there are five possible

outcomes in this action as set forth in the Plaintiffs' already written motions for summary

judgment that are summarized below:

A. **Option One**: The Court must find that all self-asserted sex-based identity narratives that are questionably (1) moral, (2) real, and (3) legal are subjected to the exclusive jurisdiction of the Establishment Clause to include homosexuality, polygamy, zoophilia, objectophilia, and others, since they are all part of the overall religion of western postmodern moral relativism, expressive individualism, evangelical atheism, and Secular Humanism. *Torcaso v. Watkins,* 367 U.S. 488 (1961) and *Edwards v. Aguillard,* 482 U.S. 578, 583 (1987). The Court must declare that the Establishment Clause is (1) the correct Constitutional narrative, (2) the ultimate DOMA § 3, and (3) the National marriage ban that tells all 50 states how they can legally define marriage. The Court must hold that legally recognized gay marriage, transgender bathroom policies, and any statute that treats sexual orientation as a civil right are a non-secular shams that fail every prong of the *Lemon* test and coercion test under the Establishment Clause by a landslide. *Lynch v. Donnelly,* 465 U.S. 668, 687-94 (1984); *Lee v. Weisman,* 505 U.S. 577 (1992); *School District v. Doe,* 530 U.S. 290 (2000); *County of Allegheny v. ACLU,* 492 U.S. 573 (1989). All that is need to force the court to enjoin is proof that gay marriage, transgender bathroom policies, and sexual orientation civil rights statutes fail just of one of three prongs. *Edwards v. Aguillard,* 482 U.S. 578, 583 (1987);; *Agostini v. Felton,* 521 U.S. 203, 218 (1997). The Plaintiff will show that legally recognized gay marriage and fake sexual orientation civil rights statutes violate all three prongs of *Lemon* from every angle. It is not a close call. Ultimately, this Court must hold that bright line rule in *State v. Holm,* 137 P.3d 726, 734 (Utah 2006) applies to all parody marriages across the board no matter who it offends. The bright line rule permits self-identified transgenders, unicorns, wizards, objectophiles, homosexuals, zoophiles, and polygamists to have wedding ceremonies in step with the Freedom Of Expression Clause but prevents the government from legally recognize those kinds of marriages because they are not secular. The Establishment Clause was never designed to only prevent the government from respecting unproven truth claims of "institutionalized religions" but of non-institutionalized religions as well. Our government was never designed to be used by moral relativists to enshrine their religious worldview in the hopes that they would feel less inadequate and ashamed about a belief system that is faith-based, obscene, and categorically subversive to human flourishing. On balance, legally recognized gay marriage is the greatest non-secular sham ever codified by the United States Judiciary, since the inception of American Jurisprudence. Legally recognized gay marriage has been a total disaster from a factual and Constitutional perspective. This Court's job is to apply the law, not make it up. The Court must overrule *Obergefell* and enjoin the state no matter who it offends. Though the heavens may fall, the Court is being asked to do justice.

B. **Option Two**: The Court could enjoin the state from legally recognizing gay marriage, transgender bathroom policies, and statutes that pretend that sexual orientation is a suspect class under res ipsa loquitur because the government is promoting obscenity and

eroding community standards of decency. Homosexual speech is "obscene." "Any school boy knows that a homosexual act is immoral, indecent, lewd, and obscene. Adult persons are even more conscious that this is true." *Schlegel v. United States*, 416 F. 2d 1372, 1378 (Ct.Cl.1969). Obscene speech is unprotected. *Miller v. California,* 413 U.S. 15, 3034 (1973). States have a compelling interest to uphold community standards of decency, not to erode them for political gain. *Paris Adult Theatre I v. Slaton*, 413 US 49, at 63, 69 (1973). According to the Supreme Court, community standards of decency do not evolve, and if they do, it is not always for the better. "To simply adjust the definition of obscenity to social realities has always failed to be persuasive beforethe Courts of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966).

C.   **Option Three:** the Court must enjoin the state for discrimination against "religion and religion" under the Establishment Clause. Homosexuality, zoophilia, objectophilia, polygamy are merely different denominational sects within the overall church of moral relativism, since they are all based on similar unproven faith based assumptions and naked assertions that are implicitly religious in nature. (DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶ 1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo; ¶¶ 1-21; Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski ¶¶ 1-34). See Amicus Brief of Garden State Families. As members of a minority sect within the church of moral relativism, the Plaintiffs have standing to enjoin the state so that gay marriage gets the same treatment under the law as objectophile and polygamy marriage. *McCreary Cnty. Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005); *Engel v. Vitale*, 370 12 U.S. 421, 431 (1962). Here is an illustration so that the Court and the Defendants can understand: the legislature could give tax breaks to the Lutheran Church, but it would have to give tax breaks to the Methodist Church as well, since both denominations are part of the overall religion of Christianity. Otherwise, discrimination against religion and religion results. At the moment that the State refused to endorse other forms of parody marriage while at the same time providing a constellation of benefits to married self-identified homosexuals, the State violated the Plaintiff's Constitutional rights and gave them Article III standing to enjoin for discrimination of religion and religion.

D.   **Option Four,** In order to try and save "gay marriage," the Court could grant the Plaintiffs the same marriage rights and benefits as the homosexuals under the Establishment Clause to cure the discrimination against "religion and religion." *Hobbie v. Unemployment Appeals Commission*, 480 U.S. 136, 144-45 (1987). But this option is not as valid as the first three options because it continues to place "religion over non-religion" at the expense of the Constitution. Just as government officials may not favor or endorse one religion over others, so too officials "may not favor or endorse religion generally over non-religion." *Lee v. Weissman,* 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)(Souter, Justice, concurring)(citing *County of Allegheny v.*

*ACLU*, 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). If this Court
agreed to legally recognize polygamy marriage and man-object marriage in order to save
gay marriage, the Court only only be putting "religion over non-religion" in an
unconstitutional manner that erodes valid Constitutional rights. That is, if the government
were to legally endorse all other parody marriages to restore the integrity of the
Fourteenth Amendment, it would only further entangle the government with the religion
of Secular Humanism in violation of the Establishment Clause.

E.  **Option Five:**  The Court could continue to pretend that the Fourteenth Amendment
    informs the States how to define marriage, honoring Stare Decisis and providing the
    Plaintiffs and others the same civil rights and benefits afford to self-identified
    homosexuals in accordance with the holdings in *Obergefell v. Hodges*, 135 S.Ct. 2584
    (2015).  If marriage really is an "existing right," "individual right," "fundamental right"
    based on a "personal choice" for self-identified homosexuals under the Equal Protection
    and Due Process Clause as prior courts pretended, then very obviously self-identified
    zoophiles, polygamists, and objectophiles deserve those identical rights to legally marry
    in step with their self-asserted sex-based identity narratives no matter how morally
    repugnant.  *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) (fundamental right); *Cleveland
    Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940 (1974) (personal choice); *Loving v.
    Virginia*, 388 U.S. 1, 12 (1967) (existing right/individual right); *Lawrence v. Texas*, 539
    U.S. 558 (2003) (intimate choice).  This is not a question of a "slippery slope;" this is a
    question of how the Constitution works.  If "sexual orientation" really was a matter of
    "civil rights," then all of the non-obvious classes of sexual orientation warrant those same
    civil rights to include objectophiles, zoophiles, and polygamists no matter how "morally
    disapprov[ing]" anyone found them to be.  *McDonald v. Santa Fe Trail Transp. Co.*, 427
    U.S. 273, 27879, 96 S. Ct. 2574, 2578, 49 L. Ed. 2d 493 (1976); *Lawrence v. Texas*, 539
    U.S. 558 (2003). After all, "[I]f the constitutional conception of 'equal protection of the
    laws' means anything, it must at the very least mean that a bare. . . desire to harm a
    politically unpopular group cannot constitute a legitimate governmental interest." *Romer
    v. Evans*, 517 U.S. 620, 635 (1996).  In his dissent read from the bench in *Obergefell*, the
    Honorable Chief Justice Roberts already admitted that if "gay rights" are "civil rights"
    then "polygamy rights" are also "civil rights." [7] So there you have it: "no psychoanalysis
    or dissection is *Obergefell* required here, where there is abundant evidence, including his

---

[7] "Indeed, from the standpoint of history and tradition, a leap from opposite-sex marriage to same-sex marriage is
much greater than one from a two person union to plural unions, which have deep roots in some cultures around the
world. If the majority is willing to take the big leap, it is hard to see how it can say no to the shorter one. It is
striking how much of the majority's reasoning would apply with equal force to the claim of a fundamental right to
plural marriage. If "[t]here is dignity in the bond between two men or two women who seek to marry and in their
autonomy to make such profound choices," ante, at 13, why would there be any less dignity in the bond between
three people who, in exercising their autonomy, seek to make the profound choice to marry? If a same-sex couple
has the constitutional right to marry because their children would otherwise "suffer the stigma of knowing their
families are somehow lesser," ante, at 15, why wouldn't the same reasoning apply to a family of three or more
persons raising children? If not having the opportunity to marry "serves to disrespect and subordinate" gay and
lesbian couples, why wouldn't the same "imposition of this disability," ante, at 22, serve to disrespect. *Obergefell* at
21 (Justice Roberts Dissenting).

own words, of the Chief Justice's purpose." *Glassroth v. Moore*, 335 F.3d 1282 (11th Cir. 2003). Due to the infiltration of blind Secular Humanists on the bench, there is no shortage of cases that pretend that sexual orientation is a suspect class, and surely there are other non-obvious classes that warrant the same protection as the largest minority (the homosexual class).[8]

---

[8] If gay marriage is a sham, then so are the holdings in countless other cases. See *Lalli v. Lalli*, 439 U.S. 259, 264-65 (1978);;;; *Craig v. Boren*, 429 U.S. 190, 197-98 (1976)(indicating that sexual orientation is a basis for suspect classification). Courts have stated that sexual orientation has no "relation to [the] ability" of a person 'to perform or contribute to society." *City of Cleburne*, 473 U.S. at 440-41;;;; see *Pedersen v. Office of Pers. Mgmt.*, 881 F. Supp. 2d 294, 3 18-19 (D. Conn. 2012) ("[T]he long-held consensus of the psychological and medical community is that 'homosexuality per se implies no impairment in judgment, stability, reliability or general or social or vocational capabilities.") (quoting 1973 RESOLUTION OF THE AMERICAN PSYCHOLOGICAL ASSOCIATION);;;; *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1002 (N.D. Cal. 2010) ("[B]y every available metric, opposite-sex couples are not better than their same-sex counterparts;;;; instead, as partners, parents and citizens, opposite-sex couples and same-sex couples are equal.");;;; see also *Watkins v. US. Army*, 875 F.2d 699, 725 (9th Cir. 1989) ("Sexual orientation plainly has no relevance to a person's ability to perform or contribute to society.") The Courts also contend sexual orientation is immutable. As the Supreme Court acknowledged, sexual orientation is so fundamental to a person's identity that one ought not be forced to choose between one's sexual orientation and one's rights as an individual even if one could make a choice. *Lawrence*, 539 U.S. at 576-77 (recognizing that individual decisions by consenting adults concerning the intimacies of their physical relationships are "an integral part of human freedom"). See, e.g., *Perry*, 704 F. Supp. 2d at 964-66 (holding sexual orientation is fundamental to a person's identity);;;; *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir. 2000) (holding that sexual orientation and sexual identity are immutable). Furthermore, the scientific consensus is that sexual orientation is an immutable characteristic. See *Pedersen*, 881 F. Supp. 2d at 320-21 (finding that the immutability of sexual orientation "is supported by studies which document the prevalence of long-lasting and committed relationships between same-sex couples as an indication of the enduring nature of the characteristic.");;;; *Perry*, 704 F. Supp. 2d at 966 ("No credible evidence supports a finding that an individual may, through conscious decision, therapeutic intervention or any other method, change his or her sexual orientation.");;;; see also *G.M. Herek*, et al., Demographic, Psychological, and Social Characteristics of Self-Identified Lesbian, Gay, and Bisexual Adults in a US. Probability Sample, 7 SEXUALITY REs. & Soc. POL'Y 176, 186, 188 (2010) (noting that in a national survey, 95 percent of gay men and 84 percent of lesbian women reported that they "had little or no choice about their sexual orientation.") Certain classes of sexual orientation constitute a minority group that lacks sufficient political power to protect themselves against discriminatory laws that lack political power and deserve suspect classification. See, e.g., *SmithKline Beecham Corp. v. Abbott Labs*, 740 F.3d 471, 480-84 (9th Cir. 2014) (holding use of peremptory strike against gay juror failed heightened scrutiny);;;; see also *Pedersen*, 881 F. Supp. 2d at 294 (finding statutory classifications based on sexual orientation are entitled to heightened scrutiny);;;; *Golinski v. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 314-33 (N.D. Cal. 2012) (same). See *Romer v. Evans*, 517 U.S. 620, 634-35 (1996) (citing *Dep't of Agr. v. Moreno*, 413 U.S. 528, 534 (1973)) ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare. . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.") (emphasis added). Then, in 2003, the Court held that homosexuals had a protected liberty interest to engage in private, sexual activity;;;; that homosexuals' moral and sexual choices were entitled to constitutional protection;;;; and that "moral disapproval" did not provide a legitimate justification for a Texas law criminalizing sodomy. See *Lawrence*, 539 U.S. at 564, 571. The Court held that the Constitution protects "personal decisions relating to marriage, procreation, contraception, family relationships, [and] child rearing" and that homosexuals "may seek autonomy for these purposes." Id. at 574. Most recently, in 2013, the United Supreme Court held that the Constitution prevented the federal government from treating state-sanctioned heterosexual marriages differently than state-sanctioned same-sex marriages, and that such differentiation "demean[ed] the couple, whose moral and sexual choices the Constitution protects." See *Windsor*, 133 S. Ct. at 2694.

## THE PARTIES

28. Pastor Richard Penkoski is a West Virginia taxpayer. He is Christian who in the wake of *Obergefell* has been relentlessly antagonized, persecuted, oppressed, stalked, threatened, coerced, and ostracized by the LGBTQ church and members of the Secular Humanist Religion. (See the Declaration of Pastor Penkoski ¶¶ 1-34). Pastor Penkoski is the founder of Warriors for Christ and SocialCross.org, which is an alternative to facebook for Christians. *Id.* ¶¶ 1-34. He has over 200,000 followers on his Facebook page, but Facebook routinely disables his account because he refuses to believe that homosexuality is not obscene, immoral, and subversive to human flourishing. *Id.* ¶¶ 1-34. The Superseding cause of the emotional pain, financial suffering, and other injuries imposed on Pastor Penkoski is the government's unconstitutional endorsement of the gay marriage and the wrongful entanglement with the religion of Secular Humanism. *Id.* Pastor Richard Penkoski respects an individual's right under the Freedom Of Expression Clause to form their own religious beliefs. However, Pastor Penkoski does not want a penny of his taxpayer dollars to any any way go towards the Defendants policies that entangle the government with the religion of Secular Humanism. Pastor Penkoski, having experienced unimaginable coercion as set forth in his attached declaration moves with the Plaintiffs under the Establishment Clause to enjoin to the state from legally recognizing any form of parody marriage - to include man-man and woman-woman marriage - and from enforcing any statute that treats sexual orientation as if it is a civil rights matter.

29. The Plaintiff Sevier was a rule of law combat Judge Advocate General. Plaintiff Sevier self-identifies as an "objectophile." He self-asserts that his sexual orientation is that of

Objectophillia.[9] He sought a marriage license from the County Clerk - having met all of the requirements - and was arbitrarily denied for procedural and other reasons that self-identified homosexuals once were. Plaintiff Sevier is a taxpayer of this state. He is a member of the Special Forces Of Liberty, which has a chapter in this State. (See Joint Declaration of Special Forces Of Liberty ¶¶ 1-34). As a taxpayer, Plaintiff Sevier moves under the Establishment Clause to enjoin the state from legally respecting any parody marriage. Plaintiff Sevier does not want self-identified homosexuals to receive special benefits and rights over self-identified objectophiles, who are all in the same ideological spectrum. However, if and only if, the Court wants to continue to pretend that marriage is a civil right or that sexual orientation is a civil rights matter, Plaintiff Sevier moves under the Fourteenth Amendment for equal treatment under the law.

30. Plaintiff Gunter self-identifies as a polygamists. He wants to marry multiple wives. He wants to add Plaintiff Kohl and Plaintiff Grace as his spouses. Plaintiff Gunter wants to have a wedding in this state. He and the other Plaintiffs approached the clerk's office in county at issue about issuing marriage licenses to reflect their self-asserted sexual orientation and sex-based identity narratives and the Clerk said no for procedural and other reasons.   Plaintiff Gunter is a taxpayer. He is a member of the Special Forces of Liberty, which has a chapter in this State. Plaintiff Gunter moves under the Establishment Clause to enjoin the State from legally respecting any form of parody marriage and from enforcing any statute that treats sexual orientation as a civil rights matter.  If and only if the Court continues to find that marriage is a civil right, Plaintiff Gunter moves under the Fourteenth Amendment to enjoy the equal protection under the law.

---

[9]  Object sexuality or objectophilia is a form of sexuality focused on particular inanimate objects. Those individuals with this expressed preference may feel strong feelings of attraction, love, and commitment to certain items or structures of their fixation.

31. Plaintiff Grace Harley was born as a woman but self-identified as a transgender for 18 years. Due to feelings of inadequacy and insecurity, she was manipulated and seduced into buying into the self-serving religious doctrine floated by the LGBTQ church under the false guise of secularism. "Joan the woman" become "Joe the man." She once married a female. In 1992, she left the transgender identity narrative behind completely converting to a totally different one having been radically transformed by the truth. She now self-identifies as a polygamist. As an African American growing up in the south she experienced discrimination because of her skin color. Once she became an ex-gay, she has been relentlessly threatened and harassed by the believers in the homosexual ideological religion. Plaintiff Grace Harley is a licensed Reverend. She is outspoken against the lies advocated by the LGBTQ church despite the personal threat to her safety and wellbeing. She now self-identifies as a polygamist. (See Declaration of Harley). Plaintiff Grace Harley is a taxpayer of this State. She is a member of the Special Forces of Liberty, which has a chapter in this State. She seeks the same relief as Plaintiff Gunter.

32. Plaintiff Kohl was straight. She was engaged to a man. But he was mean to her. So she decided to self-identify as a lesbian and then legally married a woman only to discover that it was "hell on earth." She now self-identifies as a polygamist and wants the government to pay respect to her new and modern beliefs on marriage, sex, and morality. She seeks the same relief as Plaintiff Gunter.

33. Defendant Patrick Morrisey, is the Attorney General of this State. ("Attorney General"). In his official capacity, the Attorney General is the chief legal officer of this State. It is the Attorney General's duty to see that the laws of the State are uniformly and adequately enforced. The laws that the Attorney General enforces is giving benefits to individuals who self-identify as

homosexual who marry based on their self-asserted identity narrative but not to objectophiles, zoophiles, and polygamists. The Attorney General's office is giving special treatment to individuals who self-identify as homosexual under the law but not those who have a different sex-based self-asserted identity narrative and who are members of the smaller denominational sects within the church of moral relativism. The Attorney General is violating his Article VI duty owed to the Constitution by overseeing the distribution of a constellation of benefits to self-identified homosexuals in a manner that entangles the government with the religion of Secular Humanism.[10]

34. Defendant Jim Justice is the Governor of the State of West Virginia ("Governor"). In his official capacity, the Governor is the chief executive officer of this State. It is his responsibility to ensure that the laws of the State are properly enforced. The Governor is overseeing laws that give benefits to homosexuals who are married but not objectophiles, zoophiles, and polygamists in violation of both the First and Fourteenth Amendments. The Governor is disregarding his duty under the Article VI of the United States Constitution by enforcing policies that entangles the government with the religion of Secular Humanism.

35. Defendant Jean Butcher is the Clerk of Gilmer County West Virginia. The Clerk is responsible for maintaining vital records of marriages, issuing marriage licenses, and performing civil marriage ceremonies in Gilmer County. Defendant Butcher issues marriage licenses to individuals who self-identify as homosexual but refuses to issue marriage licenses to zoophiles,

---

[10] Article VI: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding. The Senators and Representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution."

objectophiles, and polygamists on a basis that can only be described as procedurally arbitrary. By issuing marriage licenses to self-identified homosexuals, the Clerk is in violation of his duties under Article VI of the United States Constitution on top of violating the Plaintiffs' rights afford under the United States Constitution.

36.  Defendants, and those subject to their supervision, direction, and control, are responsible for the enforcement of marriage policies, transgender bathroom policies, and the enforcement of fake sexual orientation discrimination statutes that assert that gay rights are civil rights, and other laws and policies that have caused the Plaintiffs and others to be injured and socially marginalized. The relief requested in this action is sought against each Defendant, as well as against each Defendant's officers, employees, and agents, and against all persons acting in cooperation with Defendant(s), under their supervision, at their direction, or under their control.

## UNDISPUTED MATERIAL FACTS

37.  Pastor Penkoski is the founder of Warriors For Christ and SocialCross.org. He is a taxpayer living in West Virginia.  He has 225,000 followers on Facebook and youtube and conducts weekly radio interviews.  June 2017 was deemed to be "pride month," which has come about as a result of the government's decision to endorse gay marriage.  Facebook created a rainbow pride emoji and the gay pride flag emoji because Facebook is under the presumption that the United States has established Secular Humanism as the national religion in the wake of *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015).  On June 11, 2017, Pastor Penkoski posted on facebook that if anyone posted the gay pride emoji or flag on his facebook page that he would block them stating: "a rainbow emoji will get you instantly banned from our page." Many LGBTQ publications and Secular Humanist blogs put out a call to action to harass, harm, and harangue Pastor Penkoski in

response. It worked. Over 16,000 emojis were posted on his page in one day.[11] He was
bombarded with death threats,[12] disparaging comments, gay pornographic images, harassing
phone calls, harassing text messages.[13] These practices continued for months and continue at
present with no end in sight. Feces were mailed to his home. His car was keyed.[14] His house was
stalked. For safety reasons, he involved local law enforcement. He was forced to move and
relocate his family.[15] His daughter was the subject of reprisal by teachers who are devout
members of the LGBTQ church. For a more in-depth review of the coercion that Pastor Penkoski
has been subjected to see his declaration. DE_ Pastor Penkoski ¶¶ 1-34.

38. Here are a few of the threats that Pastor Penkoski received that show a state of mind that is
admissible:[16]

a. Christine Cates wrote: "Who could ever say that about anyone?....Seriously kill yourself,
please...There is a special place who have NO compassion or empathy for one another...If your
incredibly lucky...you get jail....after that I can only smile."

b. Nic Valle wrote: "These are the ones that think they are persecuted. Why the Romans fed
people like this to lions."

c. Maxwell Atkins wrote: "He's right. [Christians] all deserve to die."

d. Alice Sonlaw wrote: "Whoever runs this page needs to go eat a gun. Seriously kill yourself!
Please."

---

[11]http://www.patheos.com/blogs/friendlyatheist/2017/06/12/a-christian-facebook-page-will-ban-an
yone-posting-rainbow-emojis-guess-how-this-ends/#ULbWeRrSvKvdQABu.99
[12] https://hellochristian.com/8482-pastor-receives-death-threats-for-opposing-facebooks-rainbow-flag-emoji
[13] (http://www.activistmommyofficial.com/blog/the-activist-mommy-
mocks-personal-hit-piece-from-the-lgbt-advocate-magazine/).
[14] https://www.christianpost.com/news/pastor-receives-feces-mail-car-keyed-opposing-facebooks-r
ainbow-flag-emoji-191104/
[15] https://www.christiantoday.com/article/pastor-who-banned-rainbow-flag-emoji-from-his-faceboo
k-page-is-forced-to-flee-after-receiving-death-threats/111157.htm
[16] https://www.youtube.com/watch?v=XMMNYG9nTek.

e. Lily Lynn wrote: "Maybe you'll stop getting hate if you stop spreading hate on the LGBTQ community oh no beware my gay ass is going to fuck your wife. #lovewins #pride"

f. Darrin Betzman wrote: "You should kill yourself."

g. Jamie Lynn Myer wrote "You should do it...."

h. Peter Griffith wrote: "Can't wait for the years after the rapture...when all you believers are persecuted and beheaded!!! Ohhh joy"

i. Alexander Dimes wrote: "I literally want you to get hit by a car."

j. Bob Galvin wrote: "I'm here looking of a guy named Jesus, I just bought a new nail gun..."

k. Shane Walsh wrote "you should definitely kill yourselves...or you can keep trying to restart the crusades. Either or."

l. James Garett Chaffee wrote: "Oh my fuck you people are pathetic zealots....Like make the jump to a cyanide laced kool aid already and let the world progress without your 15th century ass views."

39.  Warriors For Christ facebook page is important for Pastor Penkoski's livelihood. Facebook has routinely shut down his page because Pastor Penkoski agrees with the Bible that homosexuality is immoral, obscene, and subversive to human flourishing. On January 3, 2018, Facebook removed the Warriors For Christ again. The Washington Times wrote the following article:

Facebook temporarily shut down the page "Warriors for Christ." Why? The official corporate line is that the page violated the social media giant's community standards. But the Christ fighters have a few other thoughts — namely, that Facebook is simply showing its pro-LGBT, anti-Christian bias. This, from the page administrator, Nellchy Kentley, in a letter to Pamela Geller: "On 29th December 2017, Facebook shut down our page because of our biblical stance on marriage. Facebook has been after our page for many years and often censored our posts simply because they contained truth articles on statistics, Bible versus and memes that exposed the hypocrisy of the left." Following a petition drive, and pressure from the public — including the page's 225,000 or so followers — Facebook reinstated the page. But what's up with a prayer

page that makes it so hated by Facebook censors? "They calculated this move and chose to remove the page at 5:00 p.m. EST on Friday December 29, 2017 right before a long holiday weekend." Kentley goes on to write, "in the hope that we would be discouraged in contacting any media about this because most businesses are closed for several days. We will not be silenced and will be pursuing legal action with Facebook." What's markedly notable about Facebook's censorship is that it gives all appearances of a double-standard.

Facebook continues to wage what the media is calling a jihad against "Warriors For Christ" and other Christians.[17]

40. Upon information, experience, and knowledge, the government's decision to endorse the homosexual orthodoxy and entangle itself with the religion of Secular Humanism sits as the catalyst for the pain and suffering that Pastor Penkoski and millions of other Christians have been subjected to. Pastor Penkoski objects to the Defendants using his taxpayer dollars to endorse gay marriage and the concept that sexual orientation is a suspect class and not religious theocratic mythology. It is the observation of Pastor Penkoski that the end result of the government's decision to endorse gay marriage is that it has cultivated an entitlement syndrome in Secular Humanists that is downright dangerous. The endorsement has cultivated an entitlement syndrome by which Secular Humanists feel entitled to marginalize and even violently oppress anyone who disagrees with their views on faith, sex, marriage, and morality.

42. For the record, in the event that Facebook does not put Pastor Penkoski's facebook page back up and leave it up indefinitely, he (and others) will haul Facebook into Federal Court to account for its breach of contract and multitude of other unlawful acts that have produced damages.[18]

---

[17]

https://conservativefiringline.com/facebook-yanks-warriors-christ-ignoring-death-threats-pastor-says-angel-armor-pie-violates-standards/

https://conservativefiringline.com/facebook-continues-jihad-warriors-christ/

https://conservativefiringline.com/jihad-continues-facebook-yanks-warriors-christ-second-time-three-days/

[18] This disclaimer is not a waiver of any form of liability.

43. Plaintiff Sevier self-identifies as a objectophile, who married an object in New Mexico with female like features.[19]  He approached the Clerk's office in County at issue and asked that the clerk either legally recognize his out-of-state marriage or that the Clerk issue him a new marriage license. The clerk refused to do so, just as the Clerk's in Utah, Colorado, Alabama, Arkansas, Mississippi, and Kentucky refused for procedural and moral reasons. See *Sevier et. al. v. Herbert et. al,* 2:16-cv-00659 (C.D. U.T. 2016);; *Sevier et. al. v. Hickenlooper et. al., 17-cv-1750 (C.O.D. 2017);; Sevier et. al. v. Ivey et. al.,* 2:17-cv-01473 (N.D. A.L. 2017);; *Gunter et. al. v. Bryant et. al.,* 3:17-cv-00177-NBB-RP *(N.D M.S 2017);; Sevier et. al. v. Brown et. al.,* 3:17-cv-05046 (N.D. C.A. 2017);; *Kohl et. al. v. Hutchinsen et. al.,* 4:17-cv-00598 (E.D. A.R. 2017);[20]

44. Plaintiffs Kohl, Gunter, and Grace Harley self-identified as polygamists. They approached the County Clerk about having a marriage issued to them that reflected their self-asserted sexual orientation. The clerk refused to do so. (DE _ Kohl ¶¶ 1-12; DE _ ¶¶ Grace Harley 1-25; DE _ Gunter ¶¶ 1-9).

45. In this state, the Clerks are issuing marriage licenses to self-identified homosexuals based on their sexual orientation or self-asserted sex-based identity narrative. (Even if they do not want to).[21]   The Governor and State officials are providing full marriage benefits and privileges to

---

[19] http://www.wnd.com/2017/07/man-marries-computer-demands-cake-by-christian-baker/
[20] Two self-identified homosexuals successfully prevailed against Masterpiece Cakeshop and Jack Phillips in Colorado administrative court and before the Colorado Court of Appeals for discrimination under Colo. Rev. Stat. § 24-34-601 et. seq. That action is pending before the United States Supreme Court. Four of the Plaintiffs here have a lawsuit pending against Masterpiece Cakeshop and Jack Phillips for refusing to design and provide wedding cakes in support of their wedding ceremonies held in accordance with their self-asserted sexual orientation. *Harley v. Masterpiece Cakeshop ltd.* 17-cv-1666 (C.O.D 2017) (See Exhibits) The Plaintiffs moved to intervene before the United States Supreme *Court in Colorado Civil Rights Commission v. Masterpiece Cakeshop ltd.* 16-1111 (2016), as intervening respondents.
[21] http://www.wdtv.com/content/news/Same-sex-couple-files-lawsuit-in-Gilmer-County-over-marriage-license-dispute-419738063.html

legally married self-identified homosexuals but not to self-identified polygamists and objectophiles for procedural and moral reason.

46. No one can really prove or disprove that they were "born in the wrong body," just as there is no proof that there is a "rape gene," there is a dispute in the medical profession whether there is a "gay gene." (DE _ Dr. King ¶¶ 1-20;  DE _ Dr. Cretella  ¶¶ 1-20).[22] Therefore, the idea that someone is gay and thereby entitled to special benefits and treatment is a faith based position that is not proven.

47. There are former gay activists who self-identified as homosexual and who indoctrinated themselves with the LGBTQ ideology only to completely leave the lifestyle behind converting to a totally different sex-based identity narrative. (DE _ Quinlan ¶¶ 1-37;  DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20;  DE _Dr. Cretella  ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶  1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo;  ¶¶ 1-21;  Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski  ¶¶ 1-34). See Amicus Brief of Garden State Families.[23] Many former homosexuals have testified under oath that homosexuality has nothing to do with immutability and that it is a religious doctrinal belief system that is part of the religion of Secular Humanism.

48.  Licensed ministers who are experts in religion are attesting that homosexuality is part of the religion of Secular Humanism.  DE_ Pastor Cuozzo  ¶¶ 1-21;  Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski  ¶¶ 1-34.

49. The Supreme Court found that institutionalized religions are regulated by the Establishment Clause in *Torcaso v. Watkins*, 367 U.S. 488 (1961) stating that "among religions in this country,

---

[22] http://www.cnsnews.com/blog/michael-w-chapman/johns-hopkins-psychiatrist-there-no-gay-gene
[23] Besides Michael Jackson, no one in human history changed their skin color as an act of will, and even the king of pop had to undergo a series of chemical peels.

which do not teach what would generally be considered a belief in the existence of God, are
Buddhism, Toaism, Ethical Culture, Secular Humanism, and others." See also *Edwards v.
Aguillard*, 482 U.S. 578, 583 (1987);;  *Washington Ethical Society v. District of Columbia*, 101
U.S.App.D.C. 371, 249 F.2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J. Archer,
Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & Pfeffer,
supra, n. 3, at 560. *Welsh v. U.S.* 1970398 U.S. 333 (U.S. Cal. June 15)

50.  The LGBTQ community is "organized, full, and provide[s] a comprehensive code by which
individuals may guide their daily activities." *Real Alternatives, Inc. v. Burwell*, 150 F. Supp. 3d
419, 440–41 (M.D. Pa. 2015), aff'd sub nom. *Real Alternatives, Inc. v. Sec'y Dep't of Health &
Human Servs.*, No. 16-1275, 2017 WL 3324690 (3d Cir. Aug. 4, 2017).[24]

51. Plaintiff Sevier, as a self-identified objectophile, moved to intervene in these same-sex
marriage actions under Fed. R. Civ. P. 24: *Bradacs v. Haley*, 58 F.Supp.3d 514 (2014);; *Brenner
v. Scott*, 2014 WL 1652418 (2014);; *General Synod of The United Church of Christ v. Cooper*,
3:14cv213 (WD. NC 2014);; *Kitchen v. Herbert*, 755 F. 3d 1193, 1223 (CA10 2014);;;; *Bostic v.
Schaefer*, 760 F.3d 352 (4th Cir. 2014);; *Majors v. Horne*, 14 F. Supp. 3d 1313 (Ariz. 2014);;;;
*Deleon v. Abbott*, 791 F3d 619 (5th Cir 2015);; *Tanco v. Haslam*, 7 F. Supp. 3d 759 (MD Tenn.

---

[24] In *Real Alternatives*, the court stated: "we detect a difference in the "philosophical views" espoused by [the
plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge
Easterbrook describes in *Center for Inquiry*, 758 F.3d at 873. There, the Seventh Circuit references organized groups
of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism,
all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. These systems are
organized, full, and provide a comprehensive code by which individuals may guide their daily activities. Instead
having a cross or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments,
such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims
evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body,
that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and
that (5) people come out of the closet baptized gay consists of  a series of unproven faith based assumptions that are
hyper religious and take a huge amount of faith to believe are even real, since these truth claims buck common sense
and are more likely than not shallow qualifiers hoping to justify immoral sexual conduct that is indecent, immoral,
and questionably legal.

2014);; *Bourke v. Beshear*, 996 F. Supp. 2d 542 (WD Ky. 2014);; and *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015). Every time Plaintiff Sevier moved to intervene, the homosexual litigants opposed his intervention. (DE 11 Sevier ¶¶ 1-18). In *Brenner*, Judge Hinkle found that the legal basis for man-object marriage "removed from reality." (See Exhibits)

52. States have a compelling interest in upholding community standards of decency. See *Paris Adult Theatre I v. Slaton*, 413 US 49, at 63, 69 (1973).

53. Two years after *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) and there has hardly been the "land rush" in gay marriage that was promised. The raw numbers tell the tale. Prior to the *Obergefell* decision two years ago, the 7.9 percent of gays who were married would have amounted to 154,000 married gay couples. Two years later, this had grown to 10.2 percent or 198,000 married couples. (See exhibits and public record).

54. Following the *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), Christians throughout the United States have been socially ostracized and hauled into court for not supporting gay marriage - see public record. Ex-gays have been targeted by the LGBTQ community. (DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶ 1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo; ¶¶ 1-21; Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski ¶¶ 1-34). See Amicus Brief of Garden State Families.; *Moore v. Judicial Inquiry Commission of the State of Alabama,*, 2016200 F.Supp.3d 1328 (M.D. Ala.August 04);; *Patterson v. Indiana Newspapers, Inc.*, 2009589 F.3d 357 (C.A.7 Ind.December 08);; *Gadling-Cole v. West Chester University*, 2012868 F.Supp.2d 390 (E.D. Pa.March 30). These Christians believe that to support sexual

immorality is itself an act of immorality and they do not want their taxpayer dollars going

towards the government's entanglement with the religion of Secular Humanism.

55. Man-man, woman-woman, person-object, person-animal, and polygamy marriage are all

equally not part of American heritage and tradition.[25]

56.  Following *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), the LGBTQ community has been

entering public schools to advocate its ideology on sex, gender, faith, marriage, and morality.

(See DE_ Pastor Penkoski  ¶¶ 1-34). "State issued gay married licenses" has amounted to a

"license" for the LGBTQ church to infiltrate elementary schools with the purpose of

indoctrinating minors to their worldview on sex that was illegal until recently.  *Lawrence v.*

*Texas*, 539 U.S. at 579  overturned *Bowers v. Hardwick*, 478 U.S. 186 (1986).

57. There are Christians and other non-obverses of LGBTQ ideological narratives living in the

United States who will not support any form of gay marriage no matter how much government

pressure is put on them.  (See public record). See *Sevier v. Davis* 17-5654 (6th Cir. 2017) and

*Harley v. Masterpiece Cakeshop*, 17-cv-1666 (C.O.D. 2017). These Americans believe that

silence in the face of evil is to cooperate with it.   They believe that homosexuality is subversive

to human flourishing and that it fails to check out with the human design as a member of

self-evident common sense and truth. (DE _ Quinlan ¶¶ 1-37;  DE _ Pastor Cothran ¶¶ 1-50; DE

---

[25] https://conservativetribune.com/mans-lawsuit-gay-marriage/ ver since the Supreme Court ruled that gay marriage was a right protected under the Constitution, there have been a number of lawsuits and attempts to push back this ruling. The Houston Chronicle reported that Chris Sevier, a Tennessee lawyer, has sued the Harris County District Clerk, Texas Gov. Greg Abbott and Texas Attorney General Ken Paxton in federal court in Houston, claiming that his right to marry has been violated. Sevier wasn't trying to marry another person, however. He was attempting to marry his laptop, and has argued that the 14th Amendment is "proof" that he should be allowed to do so.  Sevier has attempted to counter the Supreme Court's ruling that the 14th Amendment extends to same-sex couples by saying that if it extends to them, it should extend to other bizarre applications just as well. Texas Attorney General Ken Paxton has tried to get the lawsuit thrown out, stating that it had no basis in reality.  "The right to marry one's computer is not an interest, objectively, deeply rooted in the nation's history and tradition such that it qualifies as a protected interest," Paxton's brief explained. And same-sex marriage is? That's going to be a hard argument to follow.

_ Dr. King ¶¶ 1-20;  DE _Dr. Cretella  ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶

1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo;  ¶¶ 1-21;  Pastor Farr ¶¶ 1-33; DE 24 Pastor

Cairns ¶¶ 1-30; and DE_ Pastor Penkoski  ¶¶ 1-34). See Amicus Brief of Garden State Families.

58. To say that "there are no absolutes" is an "absolute." Without "faith," there is no basis for

"morality," and without "morality," there is no basis for "law."(See DE_ Pastor Cuozzo  ¶¶ 1-21;

Pastor Farr ¶¶ 1-33)

59.  In the Wake of the *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) and *United States v.*

*Windsor,* 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), (1) fire Chiefs have been fired;[26] (2) The

Chief Justice of the Alabama Supreme Court has been subjected to prosecution by the ethics

commissions and suspended;[27] (3) County Clerks have been thrown in jail and subjected to

merciless civil litigation;[28] (4) Christian Florists have been sued for providing artistic services in

support of gay marriage ceremonies;[29]  (5) Christian Bakers have been sued for refusing to use

their artistic talents to design wedding cakes for gay marriage ceremonies;[30] (6) Law Professors

have been harassed, bullied, and threatened for believing that gay marriage is immoral and

unconstitutional;[31]  (7) Ex-gay conventions have been disrupted by people who will not tolerant

the idea that homosexuality is not immutable due to a spectacular state of denial;[32] (8) Christian

ranchers have been sued in civil court for refusing to host gay weddings on their farms.[33]

60. In the wake of *Obergefell*, the transgender teen suicide rate is out of control. Politicians who

push for gay rights and transgender rights are encouraging citizens to open the door to a lifestyle

---

[26] http://www.nationalreview.com/corner/428779/federal-court-keeps-atlanta-fire-chiefs-case-alive
[27] http://www.cnn.com/2016/09/30/politics/alabama-chief-justice-suspended/index.html
[28] www.npr.org/sections/thetwo-way/2017/05/03/526615385/gay-couples-lawsuit-against-kentucky-clerk-is-back-on-after-appeals-court-ruling
[29] http://www.theblaze.com/news/2017/02/17/christian-florist-who-refused-to-make-gay-wedding-arrangements-to-take-case-to-u-s-supreme-court
[30] https://www.nytimes.com/2017/06/26/us/politics/supreme-court-wedding-cake-gay-couple-masterpiece-cakeshop.html
[31] http://www.vanderbiltpoliticalreview.com/the-carol-swain-peutton-hurts-the-cause-more-than-it-helps-but-theres-a-better-way/
[32] https://www.lifesitenews.com/blogs/if-gays-are-so-tolerant-why-are-they-disrupting-an-ex-gay-conference
[33] http://www.theblaze.com/news/2014/08/21/judge-fines-christian-farm-owners-13000-for-refusing-to-host-gay-wedding/

and ideology that could lead to suicide and suffering. The Obergefell decision encourages our citizens to open the door to an unhealthy decision that fails to check out with the givenness of our nature.

61. The Plaintiffs file a lawsuit without at the same time asking the Court to find the very law that they are authoring for the state and federal legislature. They have learned their lesson on that.  The first piece of legislation that has already been birthed from this action is a resolution that declares that  all self-asserted sex-based identity narratives that are questionable moral, legal, and real are to be classified as "non-secular" and part of the religion of Secular Humanism, Atheism, Moral Relativism, and Expressive Individualism and the second is act to be entitled "The  Marriage and Constitution Restoration Act," which redefines marriage in a manner that accords with the Constitution.[34] Plaintiff Sevier and Gunter have already secured sponsors to carry this bill. By 2019 a majority of States and the Federal Congress will carry the act.

62. Plaintiff Sevier filed a lawsuit against Congressman Alan Lowenthal, Susan Davis, Donald S. Beyer, and Earl Blumenauer.  See *Sevier v. Lowenthal*, 17-cv-0570 (D.C. 2017). Gunter, Kohl, and Grace Harley have moved to intervene as Plaintiffs in that action.  In response to the lawsuit Congressman Davis and Lowenthal took to the media and falsely stated:

"I fly the Pride Flag outside my office in support of every LGBTQ individual—those in my district, those in our nation, and those around the world," Congressman Lowenthal said. "It is a symbol of both how far we have come on equality for all Americans and, as these incidents illustrate, how far we still have to go. It is a symbol of love, of peace, and diversity. I will fight this hateful attempt to silence equality and justice. We have come too far to allow the voices of bigotry and hate to win." [35]

63.  Congresswoman Susan Davis took to the media and maliciously published:

---

[34] With all due respect, the Plaintiffs never file a lawsuit without writing the very law that they are litigating at the same time.

[35]

http://www.joemygod.com/2017/07/20/man-sued-marry-laptop-sues-us-house-democrats-pride-flags-outside-offices

As the proud representative of the heart of LGBTQ San Diego, the rainbow flag in front of my DC office is a source of pride for me and my constituents," she explained. "It is a symbol of our commitment to full equality. It is especially offensive to see this type of hateful behaviour right after our city celebrated Pride with a record high turnout," she added. "It's disheartening that in this day and age this is still an issue. Be assured that hateful lawsuits are not going to stop me from celebrating our nation's diversity. If anything, this lawsuit is a reminder of the need for us to work even harder for full equality for all Americans.

Congresswoman Susan Davis and Congressman Lowenthal's statements were "of and concerning" Plaintiff Sevier. The statements were shallow, inept, hateful, dishonest, and maliciously published. The Congressmen used their offices to publish statements that were designed to cause people to avoid and shun him and put him in a disfavorable light and this did occur. Congressmen violated the Congressional Code of Conduct and constituted libel per se.

## STATEMENT OF THE EVIDENCE, STATEMENT OF GENERAL BACKGROUND FACTS, PROPOSED LEGISLATIVE FINDINGS FOR THE SENATE SPECIAL INVESTIGATIONS AND STATE LEGISLATIVE BODIES

64.   WHEREAS, when a person says that "love is love" or  "love wins" in support of legally recognized gay marriage what they really mean is that they are perfectly "ok" with government assets being used to socially ostracize, marginalize, and oppress anyone who dares to think that gay marriage is obscene, immoral, and subversive to human flourishing; *Masterpiece Cakeshop ltd. v. Colorado Civil Rights Commission,* 16-111 (S.Ct. 2016); *Miller v. Davis*, No.15-5880 (6thCir.2016);

65.  It is axiomatic that " (1) people who are intolerant of intolerant people are intolerant; (2) people who are judgmental of judgmental people are judgmental; and (3) people who are dogmatic about not being dogmatic are dogmatic;"

66.  Just as there is no proof of "rape gene," there is no proof of a "gay gene" either, and therefore, homosexuality is a matter of religion and faith;

67. No one can necessarily prove or disprove that they were "born the wrong gender;"

68. Man-man, woman-woman, man-animal, man-object, and man-multiperson marriages are controversial, unneutral, and non-secular; (*Brenner v. Scott*, 2014 WL 1652418 (2014))

69. All self-asserted sex-based identity narratives that do not check out with self-evident truth and are predicted on a series of unproven faith-based assumptions and naked assertions that are implicitly religious; (DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶ 1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo; ¶¶ 1-21; Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski ¶¶ 1-34). See Amicus Brief of Garden State Families.

70. The bright line rule in *State v. Holm,* 137 P.3d 726, 734 (Utah 2006) perfectly balances the Freedom Of Expression Clause with the Establishment Clause by permitting self-identified homosexuals, polygamists, objectophiles, unicorns, wizards, pixies, pixies, furries, and zoophiles to have wedding ceremonies based on their beliefs about sex, marriage, and morality as a matter of free expression, while prohibiting the government from legally recognizing, endorsing, and respecting any of those parody marriages under the Establishment Clause as applied to the States by the Fourteenth Amendment;

71. In the wake of *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) either all self-identified sex-based identity narratives warrant equal protection or due process or the holding is a sham for purposes of the Establishment Clause for being non-secular under prong one of *Lemon*; ( *Lemon v. Kurtzman*, 403 U.S. 602 (1971))

72. In the wake of *Obergefell v. Hodges.* 135 S.Ct. 2584 (2015) all clerks in all 50 states are providing marriage licenses and the state and federal government are subsequently providing

special benefits and protections to self-identified homosexuals based on their self-asserted sex-based identity narrative but are refusing to give those same benefits to self-identified zoophiles, objectophiles, and polygamists for reasons that can only be described as "arbitrary" from every angle:

73.  Polygamy, zoophilia, objectophilia, and homosexuality are different denominational sects within the same church of moral relativism who deserve equal treatment under the law for better or worse:  (DE _ Quinlan ¶¶ 1-37;  DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20;  DE _Dr. Cretella  ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶  1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo;  ¶¶ 1-21;  Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski  ¶¶ 1-34). See Amicus Brief of Garden State Families.

74. Courts have held that "atheism is a religion for purposes of the Establishment Clause," *Wells v. City and Cnty. of Denver*, 257 F.3d 1132 (2001), and the Supreme Court has already held in *Torcaso v. Watkins*, 367 U.S. 488 (1961) that "among religions in this country, which do not teach what would generally be considered a belief in the existence of God, are Buddhism, Toaism, Ethical Culture, Secular Humanism, and others;"[36]

75. The trajectory of the First Amendment in light of insurmountable evidence shows that self-asserted sex-based identity narratives that do not check out with self-evident truth are part of the religion of atheism or Secular Humanism and are unrecognizable for purposes of the First Amendment Establishment Clause;

---

[36] See also *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987);*Washington Ethical Society v. District of Columbia*, 101 U.S. App. D.C. 371,  249 F .2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & Pfeffer, supra, n. 3, at 560. *Welsh v. U.S*, 1970398 U.S. 333 (U.S. Cal. June 15)

76. Homosexuality is a religious ideology that is part of the religion of Secular Humanism according to the testimony of ex-gays who lived the lifestyle for decades before totally leaving it behind, since it is a series of unproven faith based assumptions and naked assertions that can only be taken on faith; (DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶ 1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo; ¶¶ 1-21; Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski ¶¶ 1-34). See Amicus Brief of Garden State Families.

77. The fact that ex-gays exist demonstrates that trying to shoehorn "gay rights" into the Equal Protection Clause based on immutability is an act of Constitutional malpractice, political malpractice, and intellectual dishonesty stemming from the false belief that the ends justify the means; Id.

78. Man-man, woman-woman, person-object, person-animal, multi-person marriage have never been part of American Tradition and, therefore, the attempt to shoehorn "gay rights' into a Substantive Due Process narrative is an act of Constitutional malpractice and actionable fraud that should subject evolutionist judges to prosecution by the Department of of Justice under 18 U.S.C. § 2381 for treason and impeachment under the United States Judicial Code of Conduct, JCUS-APR 73 and Judicial Improvements Act of 2002, and Art. I, § 3, cl. 6 and 7;

79. Legally recognized gay marriage by the State and federal government violates all three prongs of the *Lemon* test and the Courts must enjoin upon the showing of the failure of just one prong;

80. Legally recognized gay marriage is a "non-secular sham" for purposes of the Establishment Clause that constitutes an indefensible weapon, a license to crush non-observers, and a permit to

introdrinate minors in public schools under a dogma that remains categorically obscene and questionably legal;

81. The Majority in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) was absolutely correct in finding that the Constitution is not silent as to how all 50 states must legally define marriage;

82. The Dissent in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) was dead wrong in arguing that the individual states should be allowed to legally define marriage for themselves, since the Constitution is not silent as to how the states must all legally define marriage;

83. The Majority in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) was dead wrong in finding that the Fourteenth Amendment Equal Protection and Substantive Due Process Clauses told all fifty States how to legally define marriage;

84. The First Amendment Establishment Clause is the correct Constitutional prescription that, at most, permits all 50 states - regardless of whether they are blue or red states - to only legally define marriage between "one man and one woman," since "man-woman" marriage is the only secular form and all parody forms of marriage are equally "non-secular" for purpose of the Establishment Clause;

85. Man-woman marriage arose out of the "the nature of things" and did not arise out of a desire to acquire political power and to use government as a tool to show the irresponsible gospel of moral relativism down the throats of our citizens. See G. Quale, A History of Marriage Systems 2 (1988); cf. M. Cicero, De Officiis 57 (W. Miller transl. 1913). *Obergefell* at 5 (Roberts Dissenting).

86. The dictionary is a secular text and "in his first American dictionary, Noah Webster defined marriage as "the legal union of a man and woman for life," which served the purposes of

"preventing the promiscuous intercourse of the sexes, . . . promoting domestic felicity, and . . . securing the maintenance and education of children." 1 An American Dictionary of the English Language (1828). Id.

87. Legally recognized man-woman marriage accomplishes its legal purpose and does not promote any religion any more than the Bill Of Rights does;

88. The United States is not a "pure Democracy;" the United States is a "Constitutional Republic," and the First Amendment Preemption applies to blue states that voted to legally recognize gay marriage; *Obergefell* at 5 (Roberts Dissenting)

89. What really happened in *Obergefell* was that the fake tolerant homosexuals imperialistically argued that "nobody's version of morality as a basis for law mattered except for theirs;"

90. Cases are not litigated in a vacuum, and they have real world consequence that impact the quality of freedom - especially confusing and harming minors;

91. The moral relativist on the bench replaced a moral code that is predicated on self-evident truth that the Nation was founded on with a their personal "private moral code" which is predicated on pride and does not check out with "the way things are" and "the way we are," which has facilitated moral superiority complexes that cause harm;

92. To suggest that "doctrine as a basis for law does not matter" is itself a doctrine that suggest that "it matters the most" and to say that "there is no absolute truth" is an "absolute that claims to be true;"

93. "Without faith," there is "no basis for morality," and "without morality," there is "no basis for law;"

95.  All "religion" amounts to is a set of unproven answers to the greater questions, like "why are we here" and "what should we should be doing as humans;"

96.  The Establishment Clause does not only guard against the government enshrining "institutionalized religions" but it also guards against the government from respecting doctrines advocated by "non-institutionalized religions;"

97. It takes a huge amount of religious faith to believe that "a man" can actually marry "a man" and make "him" "his wife," just as it takes a lot of faith to believe that a man can really marry his object of affection and make it his wife, as Judge Hinkle in *Brenner v. Scott*, 2014 WL 1652418 (2014) found when he attacked the legal basis for "man-object" marriage in response to Plaintiff Sevier's rule 24 motion to intervene by declaring that parody marriages were "removed from reality;" (See Exhibits)

98.  A man and woman, in a marriage, are different biologically but are inherently equal, possessing corresponding sexual parts that when coalesced have the prospective procreative potential to create human life itself with an unbroken ancestral chain making that specific relationship factually and legally distinct from all other prospective parody forms of marriage and the only "secular," "neutral," "non-controversial," and "self-evident" form of marriage for purposes of the Establishment Clause;

99. All individuals have the First Amendment Freedom Of Expression right to self-identify as anything that they want to; This includes the fundamental right to self-assert a sex-based identity narrative that takes faith to believe it is real;

100. Man-object, man-animal, man-man, and woman-woman marriages all have the same non-existent procreation potential equally but are being treated differently under the law for arbitrary reasons at present;

101. There are millions of Americans who believe that to support a parody marriage is itself an act of incredible immorality, and they will never convert to the narrow and exclusive religion of moral relativism no matter how much coercion the government imposes on behalf of the LGBTQ church, despite the invalid collusion with moral relativists on the bench which continues to make the Judiciary look untrustworthy and intellectually dishonest;

102. The States have a compelling interest in upholding community standards of decency. *Paris Adult Theatre I v. Slaton*, 413 US 49, at 63, 69 (1973);

103. Man-man, woman-woman, man-object, man-animal, and man-multiperson marriages all amount to obscenity in action and the promotion of obscenity;

104. The Governor and Attorney General are charged with enforcing obscenity codes, not promoting obscenity, which is itself a crime;

105.. Community standards of decency do not "evolve" but societies can become more sexually addicted and ultimately desensitized, developing for the worse;[37] (See declarations to come)

106. Societies do not always evolve for the better and a the living Constitution approach is an absolute threat to American Democracy and must be treated as such by the Congress and Executive branches;

107. In reference to the Eighth Amendment, Chief Justice Warren's elegant axiom that "the Amendment must draw its meaning from the evolving standards of decency that mark the

---

[37] In the words of Perry Farrell Jane's Addiction's front man - "Nothing's Shocking"

progress of a maturing society" is completely contradicted by the Supreme Court's position that "to simply adjust the definition of obscenity to social realities" has always failed to be persuasive before the Courts of the United States in *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S.Ct. 958, 16 L.Ed.2d 56, and *Bookcase, Inc. v. Broderick,* 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966);

108. Justice Holmes said that "the life of the law has not been logic, it has been experience" but Justice Holmes was wrong: if the Courts are "incapable of logical reasoning," they are "incapable" of being respected;

109. For the state and federal government to declare all forms of parody marriage "obscene" and "morally repugnant" is Constitutionally permissible;

110. No one is getting arrested or losing their business because the state issues marriage licenses to man-woman couples;

111. Man-woman marriage is the only secular, neutral, natural, and non-controversial form that the States can legally recognize without failing the *Lemon* Test;[38]

112. Man-woman marriage, between adults, is not questionably legal, real, and moral;

113. For any government official, like the Defendants, to pretend that "self-asserted sexual orientation rights" are "civil rights," like "race-based are "civil rights," whereas "race-based

---

[38] As Chief Justice Roberts pointed out, "man-woman" marriage is the only secular dictionary definition that is natural, neutral, and non-controversial: Traditional marriage arose out of the "the nature of things" and did not arise out of a desire to acquire political power and to use government as a tool to show the irresponsible gospel of moral relativism down the throats of our citizens. (Roberts dissent page 5). See G. Quale, A History of Marriage Systems 2 (1988); cf. M. Cicero, De Officiis 57 (W. Miller transl. 1913). *Obergefell* at 5 (Roberts Dissent). Roberts in his dissent in *Obergefell* also stated: "In his first American dictionary, Noah Webster defined marriage as "the legal union of a man and woman for life," which served the purposes of "preventing the promiscuous intercourse of the sexes, . . . promoting domestic felicity, and . . . securing the maintenance and education of children." 1 An American Dictionary of the English Language (1828). Id.

rights" are actually predicated on "immutability," only to not really meaning it, constitutes an act of actionable fraud and racial animus in kind that manages to be both sexually and racially exploitative. Therefore, the Defendants are guilty of actual "bigotry" and not the phony kind as maliciously advocated by "Justice Kennedy types" in a childish effort to silence objectors to his personalize religious worldviews that are irrational, dangerous, and faith-based; (See *United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) and *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015)).

114.   The Plaintiffs are defending the integrity of the Constitution, the rule of law, and the race-based civil rights movement advanced by Dr. Martin Luther King Jr., not the Defendants who are threatening race-based civil rights for self-serving political reasons in exchange for political capital in a manner that is completely fraudulent and sexually exploitative;

115.   The Plaintiffs and others have standing to proceed under their First Amendment Claims as a taxpayer, regardless of how any state or federal official feels about the plausibility of their self-asserted sex-based identity narrative which is only relevant if sexual orientation rights are civil rights - which they are not; *Engel v. Vitale,* 370 U.S 421, 430 (1962); *Holloman v. Harland,* 370 F.3 1252 (11th Cir. 2004); *Newdow v. Congress,* 292 F.3d 597, 607, n. 5 (9th Cir. 2002)

116.   The codification of the fake gay civil rights movement through the courts has constituted the greatest act of judicial malpractice, since the inception of American Jurisprudence, but this Court (and others) can go back and get it right, removing these matters out of the "civil rights box" and into the "Establishment Clause box," where they always belonged;

117.  Stare Decisis does not always apply in cases that are built on fraud, intellectual dishonesty and that are on the wrong side of reality and transcultural law (see *Dred Scott v. Sandford*, 60 U.S. 393 (1857));

118.  The Plaintiffs do not have to show actual coercion to proceed under the Establishment Clause, but the Plaintiffs have personally been subjected to horrific persecution by the LGBTQ church and its supporters;

119.  These matters involve heightened concerns because the LGBTQ church is infiltrating public schools on a great commission to indoctrinate and evangelize minors to their religious worldview on sex that is self-evidently immoral, faith-based, obscene, self-serving, sexually exploitative, depersonalizing, dehumanizing, desensitizing, and subversive to human flourishing;

120.  Men and women are equal but different: a man's greatest need in a relationship is "respect" and a woman's greatest need is "unconditional love" and the government is eroding freedom by persisting in a spectacular state of denial.  Men see the world through blue sunglasses and women see the world through pink sunglasses; the government needs to grow up and deal with the truth instead of inventing fictions that erode freedom and proliferate confusion that leads to sexual exploitation that inflicts harm to minors and endangers the public's health;

121. Whatever or whoever a person has sex with, they bond with in accordance with the straightforward science of oxytocin, dopamine, serotonin, beta-fosb, and classical conditioning, and a government that cares for its people will pass laws that encourage its citizens to channel their sexual energy in manner that accords with self-evident transcultural truth in accordance with the givenness of our nature;[39]

---

[39]  The LGBTQ church and planned parenthood are advocates for internet pornography and child pornography being distributed to minors because it proliferates promiscuity, normalizes false permission giving beliefs about sex, erodes consent, and cultivates sympathy for the homosexual lifestyle;

## CAUSES OF ACTION

## I. ENJOINING THE STATE FROM LEGALLY RECOGNIZING ANY PARODY MARRIAGE

### A. FIRST AMENDMENT ESTABLISHMENT CLAUSE "*LEMON* TEST AND COERCION TEST"

122. The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. This provision, among other things, "prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" *County of Allegheny v. ACLU,* 492 U.S. 573, 594 (1989) (quoting *Lynch v. Donnelly,* 465 U.S. 668, 687 (1984)(O'Connor, J., concurring)). The government must "remain secular" and must "'not favor religious belief over disbelief.'" Id. at 610.[40]

123. The Establishment Clause was never designed to just single out "institutionalized religions," like Christianity and Judaism, which tends to parallel transcultural self-evident truth

---

[40] *Cnty. of Allegheny v. ACLU,* 492 U.S. 573, 593-94 (1989). To pass muster under the Establishment Clause, a practice must satisfy the Lemon test, pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion. Id. at 592 (citing *Lemon v. Kurtzman,* 403 U.S. 602 (1971)). Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard,* 482 U.S. 578, 583 (1987); *Agostini v. Felton,* 521 U.S. 203, 218 (1997). All that is needed to enjoin the state from issuing marriage licenses to self-identified homosexuals to show that gay marriage policy violates at least one prong of the lemon tests. Gay marriage fails all three. In addition to this so-called Lemon test, "[t]he Supreme Court has . . . advanced two other approaches by which an Establishment Clause violation can be detected." *Doe ex rel. Doe v. Elmbrook Sch. Dist.,* 687 F.3d 840, 849 (7th Cir. 2012)(en banc), cert. denied, 134 S. Ct. 2283 (2014). One approach—termed the "endorsement test"—has its roots in Justice O'Connor's concurrence in *Lynch,* 465 U.S. at 690 (O'Connor, J., concurring), and was subsequently adopted by the entire *Court in County of Allegheny,* 492 U.S. at 592-93. Under this test, courts: "ask[] whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. When [a court] find[s] that a reasonable person could perceive that a government action conveys the message that religion or a particular religious belief is favored or preferred, the Establishment Clause has been violated." *Freedom From Religion Foundation v. City of Marshfield,* 203 F.3d 487, 493 (7th Cir. 2000)(internal quotation and citation omitted) (emphasis in original). Some Circuit have observed that the endorsement test is "a legitimate part of Lemon's second prong." *Elmbrook,* 687 F.3d at 850.

that serves as the master narrative of the Constitution itself. The Establishment Clause also was designed - if not more so - to prohibit the government from legally codifying the truth claims floated by "non-institutionalized religions," to include the truth claims asserted by the religion of postmodern western moral relativism, expressive individualism, and Secular Humanism.  After all, the religion of moral relativism, Secular Humanism, and evangelical atheism  has been the catalyst for most of the worst atrocities since the inception of humanity.

125. Homsexuality, transgenderism, zoophilia, objectophilia, polygamy are all part of the same religious ideology, only they are in different sects. Homosexuality orthodoxy is the largest denomination of a religion that involves the dogma of sexual orientation.

126.  Homsexuality, transgenderism, zoophilia, objectophilia, polygamy are self-asserted sex-based identity narratives that are predicated on unproven faith based assumptions and naked assertions that are implicitly religious which invokes the Establishment Clause, as having exclusive jurisdiction. The government is barred from respecting the dogma floated by these faith based groups.

127. The state's legal recognition of gay marriage takes a prospective non-reality and establishes it as irrefutable truth in order to make individuals who are engaging in a homosexual lifestyle feel less inadequate and ashamed about their conduct and to garner support for the Democratic Party and their exploitative and toxic platform of identity politics in exchange for political power in the cultivation of an indefensible weapon to be used against non-observers.

128. The codification of sexual identity narratives and identity politics and postmodern relativism has a chilling effect on speech that violates all three prongs of the lemon test.[41]

---

[41] *Lynch v. Donnelly*, 465 U.S. 668, 68794 (1984).

129.  To pass muster under the Establishment Clause, a practice must satisfy the Lemon test, pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion. Id. at 592 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v.Aguillard*, 482 U.S.578,583(1987); *Agostini v. Felton*,521 U.S.203, 218 (1997).

130.  Legally recognized gay marriage violates the *Lemon* test by a landslide. The codification of sexual identity narratives and identity politics and postmodern relativism has a "chilling effect" on the Plaintiffs' speech and freedom of expression that violates the coercion test - both indirect and direct coercion.[42] The Plaintiffs have been subjected to widespread pressure, libel, and harassment for asserting their rights even if it makes the fake gay civil rights plight appear to be removed from reality, invalid, frivolous, and implausible.  People of other religions, like Christians living in West Virginia, have been subjected to persecution from homosexuals for refusing to think about marriage, sex, and morality, like they do.

131. The State knows or should have known that by legally recognizing gay marriage, it would subject Christians and others - to include the Plaintiffs - to religious persecution for not subscribing to or supporting and enabling the homosexual worldview.  The Plaintiffs and others have standing to proceed under this claim as taxpayers. Their self-asserted sex-based identity narrative does not matter when it comes to seeking an injunction under this cause.

132. The First Amendment Establishment Clause has exclusive jurisdiction over all self-asserted sex-based identity narratives. The bright line rule of *State v. Holm*, 137 P.3d 726, 734 (Utah

---

[42] *Lee v. Weisman*, 505 U.S. 577 (1992); *School District v. Doe*, 530 U.S. 290 (2000); *County of Allegheny v. ACLU*, 492 U.S. 573 (1989).

2006) should apply to all non-secular marriages to include man-man, woman-woman, man-object, man-animal, and man-multiperson marriages.

133.  The codification of legally recognized gay marriage is a non-secular sham for purposes of the First Amendment Establishment Clause.

134. The fact that all government officials who pretended that gay rights are civil rights are lying - alone - shows that gay marriage is a non-secular sham for purposes of the First Amendment. The fact that there has not been a land rush on gay marriage in the wake of *Obergefell* shows that it is a non-secular sham for purposes of the First Amendment.

135. The fact that that legally recognized gay marriage constitutes an indefensible weapon in the hands of moral relativists that no non-observer can defend against proves that gay marriage is a non-secular sham for purposes of the First Amendment.

136. The goal of legally codifying a non-secular form of marriage, i.e. gay marriage, was to promote tolerance, dignity, and unity, instead it has accomplished the very opposite because it's enshrinement into law is a non-secular sham for purposes of the First Amendment.[43]

137. The fact that homosexuality was basically illegal until *Lawrence v. Texas*, 539 U.S. at 579 overturned *Bowers v. Hardwick*, 478 U.S. 186 (1986) shows that legally recognize gay marriage is a non-secular sham for purposes of the First Amendment.

138. The fact that homosexuality remains defined as "obscene" by the obscenity codes and that it is a material threat to community standards of decency proves that gay marriage is a non-secular sham for purposes of the First Amendment.

---

[43] Marriage licenses issued by the Clerk's office to self-identified homosexuals have constituted a license to harangue and oppress the Plaintiffs and anyone who finds homosexuality to be obscene, immoral, and subversive to human flourishing. Legally recognized gay marriage is an indefensible weapon in the hands of moral relativist who affiliate with the homosexual denomination.

139. Under this claim, the Plaintiffs do not have to show actual coercion imposed on them, but the Plaintiffs here have been subjected to ruthless persecution by the LGBTQ gestapo for refusing to respect to their self-serving ideology.

140. Legally recognized gay marriage has given the LGBTQ church to infilrate public schools with the intent of indoctrinating minors to their worldview that is categorically obscene and questionably legal. The Plaintiffs and others do not want their taxpay dollars going towards the LGBTQ church nor to the promotion of the edicts that flow out of the religion of Secular Humanism.

## B.  FIRST AMENDMENT ESTABLISHMENT CLAUSE TREATS DIFFERENT SECTS OF THE SAME RELIGION WITH DISPROPORTIONAL FAVOR: DISCRIMINATION OF "RELIGION AND RELIGION"

141. By issuing marriage licenses and giving transgender bathroom rights to homosexuals but not zoophiles, polygamists, and objectophiles, the State is discriminating against the Plaintiffs and others under the First Amendment Establishment Clause, which is applicable to the states under the Fourteenth amendment, for discriminating against "religion and religion."

142. The government lacks a narrowly tailored and compelling interest to treat homosexual denomination with disproportional favor in relationship to the zoophile, polygamist, and objectophile sect.[44] All self-asserted sex-based identity narratives are different denominational sects within the overall church of Western postmodern relativism and expressive individualism.

143. The Court must either force the state to give the Plaintiffs the same rights, benefits, and treatment as homosexuals "for better or worse," under the law, or alternatively, the Court must enjoin the State from giving rights, benefits, and privileges to individuals, just because they

---

[44] *McCreary Cnty, Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005); *Engel v. Vitale*, 370 U.S. 421, 431 (1962).

self-identify as homosexual, polygamist, zoophile, and machinist. Either way, the status quo is unjust and unconstitutional.

144.  The Plaintiffs were injured by the fact that individuals who are homosexuals and who marry based on that identity get to have the "state's imprimatur"[45] on their marriage licenses and ceremonies, whereas the Plaintiffs and others do not merely because they are in a less popular and different sect of the same ideology that the Democrats have written off. The Plaintiffs and others are arbitrarily denied all kinds of benefits by the state because they are merely in a minor sect in the church of moral relativism.

145.  There is absolutely nothing secular about self-asserted sex-based identity narratives that are not predicated on neutral and self-evident truth.

146. The Plaintiffs and others have been injured by the fact that they are not allowed to exercise their existing right, individual right, and fundamental right to marriage that homosexuals are permitted merely because self-identified homosexuals have a more popular ideology worldview about sex and marriage and have the support of the liberal media and Hollywood elite.

147. The Plaintiffs demands that the Court either (1) enjoin the state from giving and rights and benefits to individuals based on their sex-based self-asserted identity and religious ideology or (2) enjoin the State from withholding rights and benefits from the Plaintiffs merely because he is in a different sect other than homosexual.

## C.  RES IPSA LOQUITUR (The Thing Speaks For Itself)

148.  The Defendants (individually and collectively) have a "duty" to act "reasonably." The states have a compelling interest to uphold community standards of decency.[46]

---

[45] *Obergefell* at 10 (Thomas Dissenting).
[46] *Paris Adult Theatre I v. Slaton,* 413 US 49, at 63, 69 (1973)

149. Obscenity is unprotected harmful speech.[47]

150. Homosexual, polygamy, and objectophilia lifestyle are equally obscene.[48]

151. Community Standards of decency do not evolve, and if they did, it would violation the standard. Standards do not move or they are not standards.

152. There is something inherently wrong with the state promoting obscenity and furthering the LGBTQ ideology that is not just faith based by is questionably moral and questionably legal.

153. The fake gay civil rights movement has naturally lead to the transgender bathroom public health crisis and the LGBTQ groups infiltrating elementary schools to indoctrinate children to a sexualized worldview that does not even check out with the human design.

154. The homosexual lobby is supporting human trafficking and child exploitation and the normalization of false permission giving beliefs about sex that are exploitative.

155. Evangelical LGBTQ gospel narratives objectively promote transferrable intellectual darkness that is objectively sexually, intellectually, emotionally, and racially exploitative, while being depersonalizing, dehumanizing, desensitizing, and damaging from the perspective of a reasonable observer.

## II. ALTERNATIVE CLAIMS FOR INJUNCTIVE RELIEF
### FORCING THE STATE TO LEGALLY RECOGNIZE ALL FORMS OF PARODY MARRIAGE SOUGHT BY GUNTER, KOHL, HARLEY, AND SEVIER

### A. SUBSTANTIVE DUE PROCESS

---

[47]"Obscenity is not within the area of protected speech or press." *Court v. State*, 51 Wis. 2d 683, 188 N.W.2d 475 (1971) vacated, 413 U.S. 911, 93 S. Ct. 3032, 37 L. Ed. 2d 1023 (1973) and abrogated by *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991);;;; *State v. Weidner*, 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684 (2000);;;; *Ebert v. Maryland State Bd. of Censors*, 19 Md. App. 300, 313 A.2d 536 (1973). Obscenity is not protected expression and may be suppressed without a showing of the circumstances which lie behind the phrase "clear and present danger" in its application to protected speech. *Roth v. United States*, 354 U.S. 476 (1957);;;; *United States v. Gendron*, S24 :08CR244RWS (FRB), 2009 WL 5909127 (E.D. Mo. Sept. 16, 2009) report and recommendation adopted, S2 4:08CR 244 RWS, 2010 WL 682315 (E.D. Mo. Feb. 23, 2010);;;; *Chapin v. Town of Southampton*, 4 57 F. Supp. 1170 (E.D.N.Y. 1978);;;; *Sovereign News Co. v. Falke* , 448 F. Supp. 306 (N.D. Ohio 1977);;;; *City of Portland v. Jacobsky*, 496 A.2d 646 (Me. 1985).

[48] *Manuel Enterprises Inc. v. Day*, 370 U.S. 478 (1962)

156. If "gay rights" are "civil rights," then the Plaintiffs want the same substantive due process and equal protection rights afforded to the same-sex litigants in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015). The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const Amend XIV, § 1. Individuals are protected by the Due Process Clause from arbitrary government intrusion into life, liberty and property.

157. The Plaintiffs seek the same substantive due process and equal protection rights afforded to the same-sex litigants by the United States Supreme Court in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) in a straightforward manner.

158. The Clerk's arbitrary exclusion policy (especially after the decision in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), violate fundamental liberties that are protected by the Due Process Clause of the Fourteenth Amendment, both on its face and as applied to the Plaintiffs and others with different-sexual orientations who self-identify as something other than "gay" and "straight."

159. Homosexuality, transgenderism, objectophilia, zoophilia, and polygamy are all equally not a part of American tradition. To give favor to just one sect is Constitutionally unsound under substantive due process analysis.

160. If *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) is good law, the freedom to marry is one of the fundamental liberties protected by the Due Process Clause of the Fourteenth Amendment. The current policies advanced by the Governor and Attorney General following *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), and the Marriage Discrimination Statutes violate this fundamental right protected by the Due Process Clause because it prevents the Plaintiffs and

others from marrying the persons, creatures, and things based on their personal and individual choice and from having their marriages entered into in other states and countries from being recognized in this State; and the choice of marriage is sheltered by the Fourteenth Amendment from this State's unwarranted usurpation of that choice, if and only if the legal recognition of man-man and woman-woman marriage is to remain legally recognizable.

161.  The Clerk's arbitrary marriage exclusion policy infringe on fundamental liberties protected by the Due Process Clause by discriminating against people in the non-obvious classes of sexual orientation (like the Plaintiffs), denying all of them the opportunity to marry civilly, to have their civil marriage in another jurisdiction legally recognized, and to enter into or maintain the same officially sanctioned family relationship with their preferred spouse as opposite-sex and same-sex individuals are currently permitted. For example, by denying those individuals the same "marriage" designation afforded to opposite-sex and same-sex individuals who married, this State is stigmatizing beastialist, objectophiles, and polygamists, as well as their children and families, and denying them the same dignity, respect, and stature afforded officially recognized opposite-sex and same-sex family relationships.

162.  Yet under the current definition of marriage where the First Amendment has been discarded, the marriage discrimination denies those in the different-sex class the legal protections afforded by West Virginia law to opposite-sex and same-sex married individuals on a completely arbitrary basis which amounts to a bare desire to harm a politically unpopular group.

163.  Because the Plaintiffs and others seek to exercise their fundamental right to marry or to have an out of state marriage legally recognized, their claim that the Marriage Discrimination policies and statutes violated their Due Process rights are subject to strict scrutiny. Further, it is

irrelevant that the West Virginia voters voted to keep the Government from legally recognizing parody marriages. Election outcomes do not determine fundamental rights protected by the Fourteenth Amendment nor the First Amendment.

164.  The Clerk's arbitrary marriage exclusion policy and any marriage discrimination statute are unconstitutional under the Due Process Clause because they are not narrowly tailored to a compelling government interest, as applied to all variations of sexual orientation, not just the majority and true minority.

165.  As a result, the Court, pursuant to 28 U.S.C. § 2201,  enter a declaratory judgment stating that the Clerk's discrimination policy and any other West Virginia law that bars different-sex marriage, including the Marriage Discrimination Statutes and Clerk's policies, violate the Due Process Clause of the Fourteenth Amendment, and should enter a permanent injunction enjoining enforcement or application that those laws and any other West Virginia laws that once barred same sex-marriage and now continues to bar different-sex marriages of all variety without a legal bases, and compelling Defendants to legally recognize the Plaintiffs' out of state marriages or to issue a new marriage license.

## B.  EQUAL PROTECTION RIGHTS VIOLATION

166.  The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV ,§ 1. The Fourteenth Amendment's equal protection guarantee embodies the constitutional ideal that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The laws in dispute once discriminated

against same-sex individuals now continues to discriminate against the Plaintiffs and others without any valid basis whatsoever, especially if gay marriage is actually legally valid.

167. The Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies violate the Equal Protection Clause of the Fourteenth Amendment, both on their face and as applied to the Plaintiffs and others.

168. For purposes of the Equal Protection Clause, the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies should be subject to heightened scrutiny because individuals, beyond just gay and straight, are the type of minority strict scrutiny was designed to protect in the first place - that is only if sexual orientation is actually a basis for suspect class status. Sexual orientation is a factor that "generally provides no sensible ground for differential treatment," *Cleburne*, 473 U.S. at 440-41, and sexual orientation meets all four factors requiring heightened scrutiny for a classification: (1) other-oriented people have suffered a significant history of discrimination in this country; (2) sexual orientation generally bears no relation to ability to perform or contribute to society - this is true beyond gay and straight; (3) discrimination against other-oriented people is allegedly based on an immutable or distinguishing characteristic that defines them as a group; and (4) not withstanding a measure of recent progress, other-oriented people are minorities with limited power to protect themselves from adverse outcomes in the political process, as demonstrated by Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies, the Marriage Discrimination Statutes, and the Clerk's arbitrary marriage exclusion policy.

169. Under the heightened scrutiny standard, Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies in their post *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015)

altered form violate the Equal Protection Clause because they are not "substantially" related to an important governmental purpose. There are no distinctions among lesbians, gay men, objectophiles, beasitalists, polygamists, and heterosexuals that amount to undeniable and real differences that the government might need to take into account in legislating. The real purpose behind the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies is animus if and only if these matters are actually civil rights ones.

170.  Even if the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies are not analyzed under the heightened scrutiny standard, they still violate the Equal Protection Clause because the classification drawn by the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies between opposite-sex, same-sex, and different-sex individuals is not rationally related to a legitimate state interest. A state does not have a legitimate interest in disadvantaging an unpopular minority group under the sexual orientation class merely because the group is unpopular, or the private views that different-sex individuals hold are morally inferior to same-sex and opposite-sex individuals or are inferior because there is something psychiatrically wrong and inept with individuals who want to marry something other than a member of the same or opposite sex.

171.  In fact, the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies harm the state interest in equality because it requires that men and women be treated differently only based on discredited and antiquated notions of gender.[49]

---

[49] Of course, man-man marriage discriminates against women on the basis of gender by telling them that they are not good enough to be a wife and mother. And woman-woman marriage discriminates against men by telling them that they are not good enough to be a father and husband. Man-object marriage does the same but at least the object is gender neutral. And man-object marriage is more discriminator on the basis of gender than legalized man-man and woman-woman marriage is.  At least the polygamists married is not as discriminatory against men and women, and at least there is actual procreative potential and a more plausible bases to suggest that polygamy is part of American tradition and history.

172.  The Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies policy violate the Equal Protection Clause in their post *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) amended form because they discriminate against objectophiles, beastialists, and polyamists by arbitrarily denying them a right to marry the item or items of their choice based on their feelings and identity narrative, whereas those who self-identify as homosexual and heterosexual may do so freely and receive legal recognition and government benefits. These laws also continue to disadvantage suspect classes in preventing only objectophiles, beastialists, and polygamists, not heterosexuals, from marrying, if and only if gay marriage is actually legally valid. The Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies also violate the Equal Protection Clause because they onced discriminated against gay men and lesbians legally married in another state but continue to discriminate against different-sex individuals who married in another jurisdiction by denying them the official sanction of their marriage in the State of West Virginia and the rights and benefits that flow from marriage. Whereas those who self-identify as heterosexual and homosexual men and women legally married in another state have their marriage officially sanctioned by the State of West Virginia, and receive, by operation of law the rights and benefits that flow from marriage, the true minority of sexual orientation has been arbitrarily denied these rights. And this wrongful denial disadvantages a suspect class in preventing only man-object, man-animal, and man-multiperson individuals, not heterosexuals and homosexuals, from having out-of-state marriages recognized in this State and in-state marriages authorized.

173.  Following *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) and *United States v. Windso*r,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), the Marriage Discrimination Statutes and the Clerk's

arbitrary discrimination policies restrict civil marriage to individuals of the opposite sex and same-sex, while those who self-identify as different-sex are unable to marry the persons, animals, and objects of their choice or have their different-sex marriage in another jurisdiction legally recognized in this State. Thus, this State law treats similarly-situated people differently by providing civil marriage to same-sex and opposite-sex individuals, but not to different-sex individuals who remain discriminated against without a valid justifiable basis.  As a consequence, different-sex individuals are not provided the tangible benefits and privileges of marriage. Even if these benefits and privileges were through some other mechanism besides civil marriage, it still would be unequal because the designation "marriage," enjoys a long history and uniform recognition. Like the gays of old, different-sex individuals are therefore unequal in the eyes of the law, and their families are denied the same respect and legal rights as officially sanctioned families of opposite sex and of same sex individuals. By purposefully denying civil marriage to different-sex individuals, State's ban on other-oriented marriage continues to discriminate on the basis of sexual orientation against the real minority.

174.  The disadvantage the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies marriage denial policy in their amended form upon different-sex individuals is the result of disapproval or animus against a politically unpopular group.  The Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies impose a special disability upon those persons alone and deprive them of specific legal protections afforded to opposite-sex and same-sex married couples without any legal justification whatsoever. Accordingly, the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies violate the Equal Protection Clause of the Fourteenth Amendment in their

altered form because they used to single out individuals who self-identify under the culturally created labels of gay and lesbians but continue to single out the remaining non-obvious classes of sexual orientation, which continues to unjustifiably impose a disfavored legal status, thereby creating a category of "third-class citizens," not merely "second class citizens" that those who self-identify as homosexual claim to have. *United States v. Windsor,* 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013); *Windsor v. United States,* 699 F.3d 169 (2d Cir. 2012).

### C.  VIOLATION OF 42 U.S.C. § 1983

175.  The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.  Insofar as they are enforcing the terms of the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies Defendants, acting under color of state law, are depriving and will continue to deprive the Plaintiffs and other different-sex individuals of numerous rights secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983 for reasons that are completely arbitrary - if and only if gay marriage is also to remain legally cognizable.  The State's denial of marriage rights to polygamists, zoophiles, and objectophiles is totally arbitrary if homosexuals can enjoy those rights lawfully.

176.  As a result, the Court, pursuant to 28 U.S.C. § 2201, should enter a declaratory judgment stating that the law in their amended form and any other law in this State that onced barred same-sex marriage but continues to bar the other non-obvious classes of sexual orientation marriages, violate 42 U.S.C. § 1983, and should enter a permanent injunction enjoining enforcement or application of the Marriage Discrimination Statutes and the Clerk's arbitrary

discrimination policies that bars different-sex marriage, and to compel Defendants to legally recognize the marriage of all different-sex individuals who relocate to this State.

177. Alternatively, pursuant to 28 U.S.C. § 2201 the Court should enter a declaratory judgment stating that the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies should be completely revived to their original form enjoining the enforcement of the Supreme Court's decision in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) under 42 U.S.C. § 1983 for (1) violating the first amendment and (2) because sexual orientation is not really a basis for suspect classification like race is. It is unfair and discriminatory against the Plaintiffs and others for the Government to allow those who self-identify as homosexual to marry but not those who self-identify as objectophiles and polygamists to do so. There is no rational basis to say that one is ok but the other is not. It communicates to the Plaintiffs and others that their religious beliefs about marriage are inferior to those who have bought into the gay ideology.

178.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

A. Enter a declaratory judgment that all forms of marriage other than "man-woman" marriage are "non-secular" as a part of the religion of Secular Humanism, evangelical atheism, western postmodern moral relativism, and expressive individualism;

B. Enter a declaratory judgment and issue a preliminary and permanent injunction against the state because the legal codification of any form of parody marriage - to include gay marriage - violates the First Amendment Establishment Clause under the *Lemon* test for (1) lacking a

secular purpose, (2) creating an indefensible legal weapon against non-observers, and (3) for the excessive entanglement of government with the religion of Secular Humanism;

C. Issue an injunction and a declaration that resolves that legally recognize gay marriage and the enforcement of statutes that advance gay rights as civil rights puts religion over non-religion in a manner that is unconstitutional;

D. Issue a declaration that all forms of parody marriage are part of the religion of Secular Humanism; (DE _ Quinlan ¶¶ 1-37;  DE _ Pastor Cothran ¶ 1-50; DE _ Dr. King ¶¶ 1-20;  DE _Dr. Cretella  ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶  1-25; DE 9 Kohl ¶¶ 1-12; DE_ Pastor Cuozzo;  ¶¶ 1-21;  Pastor Farr ¶¶ 1-33; DE 24 Pastor Cairns ¶¶ 1-30; and DE_ Pastor Penkoski  ¶¶ 1-34). See Amicus Brief of Garden State Families)

E. Issue a preliminary and permanent injunction enjoining the State from legally recognizing any form of marriage other than man-woman marriage and from enforcing any statute that concerns transgender rights and gay rights and that treats sexual orientation as if it is a matter of civil rights;

F. Enter a Declaratory Judgment that polygamy, zoophilia, objectophilia, and homosexuality are different denominational sects within the the the church of postmodern western moral relativism, expressive individualism, and Secular Humanism;

G. Issue a preliminary and permanent injunction, enjoining the Defendants from issuing marriage licenses to self-identified homosexuals and from enforcing statutes that suggest that sexual orientation is a civil rights matter for discrimination on the basis of religion and religion;

H. Resolve whether the coercion test is part of prong two of the *Lemon* test;

I. Enter a Declaratory Judgment that man-woman marriage is the only secular form of marriage, and thereby, the State can legally recognized it since it is not a non-secular sham;

J. Enter a Declaratory Judgment and issue a preliminary and permanent injunction that reflects that man-man, woman-woman, man-object, man-animal, and man-multiperson marriages are all equally obscene and threatening to community standards of decency in step with transcultural universal law and common sense;

K. Enter a preliminary and permanent injunction that enjoins the state from legally recognizing gay marriage and from enforcing statutes that treat sexual orientation as a civil right for constituting government condoned promotion of obscenity;

L. Enter a Declaration that *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) is overturned for being an egotistic judicial putsch that is a threat to American Democracy cultivated by Black Robed Supremacists in collusion with the LGBTQ lobby and the Democratic Party;

M. Enter a  Declaration that "love is love" is circular reasoning and that "love" without "truth" is just "shallow sentimentality;"

N. Issue a preliminary and permanent injunction that prevents the LGBTQ church from entering into public schools and indoctrinating minors to their religious ideological worldview;

O. Issue a declaration that all forms of parody marriage are not secular;

P. Issue a declaration that the gay pride rainbow colored flag is the paramount religious symbol of the LGBTQ church which is under the religion of Secular Humanism.

Q. Issue a declaration that all parody marriages are all equally not part of American heritage and tradition.

R. Issue a declaration that allows all self-identified homosexuals, polygamists, and objectophiles to have wedding ceremonies but that the state cannot legally respect or recognize them as actual marriage in step with the Bright Line Rule in order to balance the Freedom Of Expression Clause with the Establishment Clause;

S. Issue a declaration that tolerance is a two way street and that people who are intolerant of intolerant people are intolerant; that people who are judgmental of judgmental people are judgmental; that people who are dogmatic about not being dogmatic are dogmatic;

ALTERNATIVE RELIEF SOUGHT BY KOLH, HARLEY, SEVIER, AND GUNTER

T. Enter a declaratory judgment that the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies violate the Due Process, Equal Protection, Freedom of Association, Full Faith and Credit, Supremacy, and/or other clauses of the United States Constitution as it relates to barring objectophile and polygamy marriage requests or recognizing man-object and polygamy marriage requests to the same extent that it once barred and man-man and woman-woman marriage requests and marriage recognition;

U. Enter a declaratory judgment that the Clerk violated Plaintiffs' Equal Protection and Substantive Due Process rights afforded under Fourteenth Amendment in keeping with the holding in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) by denying the Plaintiffs their existing, individual, and fundamental right to marry based on their personal choice;

V. Enter a declaratory judgment that the Marriage Discrimination Statutes and the Clerk's arbitrary discrimination policies violate the Due Process, Equal Protection, Freedom of Association, Full Faith and Credit, Supremacy, and/or other clauses of the United States

Constitution as applied to man-multi-person and man-object requests or recognition to the same extent that they barred same-sex marriage requests and recognition;

W. Enter an order directing Defendants to recognize, respect, and endorse marriage request and marriages beyond man-man, woman-woman, and man-woman entered into outside of this State;

V. Enter a Declaration that all statutes that treat sexual orientation as a civil right serve to also protect self-identified polygamists and Objectophiles, not just self-identified homosexuals;

Y. Award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988;

Z. Enter all further relief to which Plaintiffs may be justly entitled.

Respectfully Submitted,

/s/Chris Sevier Esq./
SPECIAL FORCES OF LIBERTY
BPR#026577
(615) 500 4411
ghostwarsmusic@gmail.com
9 Music Square South
Nashville, TN 37203
420 w 42
New York, NY
1LT 13th ECF Echo Delta
ROL Alpha Bravo Foxtrot

/s/Richard Penkoski/
pastor@wfcchurch.org
(973) 941 2871
9 Music Square South
Nashville TN 37203
Roger Papa

Pastor Richard Penkoski
Founder of Warriors For Christ
And SocialCross.org

/s/John Gunter Jr./
SPECIAL FORCES OF LIBERTY
215 Bulter Court Apt.
Chapel Hill, NC 27514
techlawjohn123@gmail.com
(801) 654 5973
SMG Kilo Yankee

John Gunter, Founder of Clean Services Foundation

/s/Whitney Kolh/
SPECIAL FORCES OF LIBERTY
215 Bulter Court Apt.
Chapel Hill, NC 27514
techlawjohn123@gmail.com
(801) 654 5973
SMG Kilo Yankee

Whitney Kohl

/s/Joan Grace Harley./
SPECIAL FORCES OF LIBERTY
215 Bulter Court Apt.
Chapel Hill, NC 27514
joanpolygamyloveislove@gmail.com
(801) 654 5973
SMG Kilo Yankee

Joan Grace Harley