

# IN THE UNITED STATES DISTRICT COURT DISTRICT FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**JOHN GUNTER JR, WHITNEY KOHL, JOAN GRACE HARLEY, CHRIS SEVIER**
*Plaintiffs*

**V.**                                    **Case:No: 3:17-cv-177-NBB-RP**

**PHIL BRYANT, in  Governor of Mississippi, JIM HOOD, in his official capacity as Attorney General of Mississippi, MELINDA NOWICKI, in her official capacity as Circuit Clerk of Pontotoc County Mississippi**
*Defendants*

### PLAINTIFF SEVIER'S RESPONSE IN OPPOSITION TO THE DEFENDANTS MOTION TO DISMISS

### TABLE CONTENTS

I.  THE PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS
………………………………………………………………………………..5

Plaintiffs Have Standing As Taxpayers To Enforce The Establishment Clause
………………………………………………………………………………..8

The Plaintiffs Have Standing Under The Fourteenth Amendment
………………………………………………………………………………15

II. ABSENT AN INJUNCTION, THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM
………………………………………………………………………………..19

III. THE BALANCE OF HARMS WEIGHS IN FAVOR OF AN INJUNCTION
………………………………………………………………………….....21

IV. THE PUBLIC INTEREST FAVORS AN INJUNCTION
………………………………………………………………………….....22

The Amended Complaint Sets Forth An Insurmountable Cause that Gay Marriage Policy And Sexual Orientation Discrimination Statutes Violate the Establishment Clause For Failing The Prongs Of Lemon
………………………………………………………………………………24

Prong One:

………………………………………………………………………………………………………26
Prong Two:
………………………………………………………………………………………………………32
Prong Three:
………………………………………………………………………………………………………33

**Tables of Cases**

*Awad v. Ziriax,*
670 F.3d 1111 (10th Cir. 2012)
………………………………………………………………………………....................10, 11, 13, 21

*Abington Sch. Dist. v. Schempp,*
374 U.S. 203 (1963)
………………………………………………………………………………………………………10

*ACLU v. Rabun Cnty. Chamber of Commerce, Inc.,*
698 F.2d 1098 (11th Cir. 1983)
………………………………………………………………………………………………………25

*Agostini v. Felton,*
521 U.S. 203 (1997)
………………………………………………………………………………………………………25, 30

*Am. Atheists, Inc. v. City of Starke,*
2007 U.S. Dist. LEXIS 19512 (M.D. Fla. 2007
………………………………………………………………………………………………………32

*Americans United for Separation of Church &. State v. Prison Fellowship Ministries,.*
432 F. Supp. 2d 862 (S.D. Iowa 2006)
………………………………………………………………………………………………………33

*Books v. City of Elkhart,*
235 F.3d 292 (7th Cir. 2000)
………………………………………………………………………………………………………31

*Brown* v. *Buhman,*
947 F. Supp. 2d 1170 (Utah 2013)
…………………………………………………………………………....………………………………18

*Brown* v. *Buhman,*
14- 4117 (CA10)
………………………………………………………………………………………………………18

*Bowers v. Hardwick,*
478 U. S. 186 (1986)
………………………………………………………………………………………………………27

*Bookcase, Inc. v. Broderick,*
18 N.Y.2d 71, 271 N.Y.S.2d 947, 218 N.E.2d 668 (1966)
………………………………………………………………………………………………………8

*Blazer v. Black,*
196 F.2d 139 (10th Cir. 1952)
………………………………………………………………………………………………………5

*Catholic League for Religious and Civil Rights v. City and County of San Francisco,*

624 F.3d 1043 (9th Cir. 2010)
.................................................................................................................19

*Church of Scientology v. City of Clearwater,.*
2 F.3d 1514 (11th Cir. 1993)
.................................................................................................................30

*City of Boerne v. Flores,*
521 U.S. 507 (1997)
.................................................................................................................32

*Cleveland Bd. of Educ. v. LaFleur,*
414 U.S. 632 (1974)
.................................................................................................................17

*Cervelli v. Aloha Bed & Breakfast,*
No. 11–1–3103–12 ECN (Haw. Cir. Ct. Dec. 19, 2011)
...................................................................................................................6

*Colorado Civil Rights Commission v. Masterpiece Cakeshop Ltd,*
16-111 (SCT 2017)
.................................................................................................................32

*County of Allegheny v. ACLU,*
492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)
...............................................................................................8, 11, 23, 24

*Craig v. Boren,*
429 U.S. 190 (1976)
.................................................................................................................16

*Croft v. Governor of Texas,*
562 F.3d 735 (5th Cir. 2009)
..............................................................................................................8, 11

*CSE v. Bryant I,*
64 F. Supp. 3d 906 (S.D. Miss. 2015)
.....................................................................................................15, 19, 21

*CSE v. MDHS,*
2016 WL 1306202 (S.D. Miss. March 31, 2016)
.................................................................................................................19

*Dep't of Agr. v. Moreno,*
413 U.S. 528 (1973)
.................................................................................................................17

*Deerfield Medical Center v. City of Deerfield Beach,*
661 F.2d 328 (5th Cir. Unit B 1981)
...........................................................................................................15, 19

*Dred Scott v. Sandford,*
60 U.S. 393 (1857)
.................................................................................................................21

*Duffy v. State Personnel Board,*
232 Cal. App. 3d. 1 (Cal. App. 1991)
.................................................................................................................33

*Edwards v. Aguillard,*
482 U.S. 578 (1987)
..........................................................................................................4, 7, 25, 33

*Elrod v. Burns,*
427 U.S. 347(1976)
.............................................................................................................................15

*Elane Photography, LLC v. Willock,*
2013 N.M. Lexis 284 (N.M. Aug. 22, 2013)
...............................................................................................................................6

*Elrod v. Burns,*
427 U.S. 347 (1976)
.................................................................................................................15, 19

*Engel v. Vitale,*
370 12 U.S. 421 (1962)
.................................................................................................................14, 34

*Gadling-Cole v. West Chester University,*
868 F. Supp. 2d 390 (E.D.Pa. 2012)
...............................................................................................................................6

*Ginsberg v. New York,*
390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)
..............................................................................................................8, 22

*Glassroth v. Moore,*
335 F.3d 1282 (11th Cir. 2003)
.............................................................................................................................31

*Golinski v. Office of Pers. Mgmt.,*
824 F. Supp. 2d 968 (N.D. Cal. 2012)
.............................................................................................................................16

*Golden v. Zwickler,*
394 U.S. 103 (1969)
.............................................................................................................................34

*Harley v. Masterpiece Cakeshop Ltd.,*
1:17-cv-1666 (COD 2017)
.............................................................................................................................32

*Hernandez-Montiel v. INS,*
225 F.3d 1084 (9th Cir. 2000)
.............................................................................................................................16

*Holloman v. Harland,*
370 F.3 1252 (11th Cir. 2004)
...............................................................................................................................7

*In re Young,*
141 F.3d 854 (8th Cir 1998)
.............................................................................................................................33

*Jagar v. Douglas County School,*
862 F.2d 824 (11th Cir. 1989)
...............................................................................................................................7

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011)
.................................................................................................3

*KVOS, Inc., v. Associated Press*,
299 U.S. 269 (57 S.Ct. 197, 81 L.Ed. 183)
.................................................................................................7

*Lalli v. Lalli*,
439 U.S. 259 (1978)
.................................................................................................16

*Larkin v. Grendel's Den*,
459 U.S. 116 (1982)
.................................................................................................31

*Larson v. Valente*,
456 U.S. 228 (1982)
.................................................................................................13

*Lawrence v. Texas*,
539 U.S. 558 (2003)
.................................................................................................17, 27

*Lemon v. Kurtzman*,
403 U.S. 602 (1971)
.................................................................................................12, 25, 26

*Lee v. Weisman*,
505 U.S. 577 (1992)
.................................................................................................7, 23, 33

*Loving v. Virginia*,
388 U.S. 1 (1967)
.................................................................................................17

*Lynch v. Donnelly*,
465 U.S. 668 (1984)
.................................................................................................8, 11, 24

*Manuel Enterprises Inc. v. Day*,
370 U.S. 478 (1962)
.................................................................................................27

*Masterpiece Cakeshop ltd. v. Colorado Civil Rights Commission*,
16-111 (S.Ct. 2016)
.................................................................................................31

*McDonald v. Santa Fe Trail Transp. Co.*,
427 U.S. 273, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976)
.................................................................................................17

*Miller v. Davis*,
123 F. Supp. 3d 924 (E.D. Ky. 2015)
.................................................................................................6

*Miller v. Davis*
2016 WL 3755870 (6th Cir. July 13, 2016)

........................................................................................................6, 31

*Mishkin v. State of New York*,
383 U.S. 502, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966)
........................................................................................................8, 22

*Moore v. Judicial Inquiry Commission of the State of Alabama*,
200 F.Supp.3d 1328 (M.D.Ala. 2016)
........................................................................................................6

*McCreary Cnty, Ky. v. ACLU of Ky.*,
545 U.S. 844 (2005)
........................................................................................14, 25, 31, 34

*Obergefell v. Hodges*,
135 S.Ct. 2584 (2015)
.............................................1, 2, 5, 7, 15, 17, 18, 20, 21, 22, 25, 27, 28, 29, 33

*Paris Adult Theatre I v. Slaton*,
413 US 49 (1973)
........................................................................................................7

*Patterson v. Indiana Newspapers*, Inc.,
589 F.3d 357 (C.A.7 (Ind.) 2009)
........................................................................................................6

*Pedersen v. Office of Pers. Mgmt.*,
881 F. Supp. 2d 294 (D. Conn. 2012)
........................................................................................................16

*Perry v. Schwarzenegger*,
704 F. Supp. 2d 921 (N.D. Cal. 2010)
........................................................................................................16

*Planned Parenthood of Southeastern Pa. v. Casey*,
505 U.S. 833 (1992)
........................................................................................................17

*Real Alternatives, Inc. v. Burwell*,
150 F. Supp. 3d 419 (M.D. Pa. 2015)
........................................................................................................4

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*,
 2017 WL 3324690 (3d Cir. Aug. 4, 2017)
........................................................................................................4

*Reno v. Flores*,
507 U. S. 292 (1993)
........................................................................................................18

*Roe v. Wade*,
410 US 113 (1973)
........................................................................................................22

*Romer v. Evans*,
517 U.S. 620 (1997)
........................................................................................15, 16

*School Dist. v. Ball*,
473 U.S. 373 (1985)

...........................................................................................................31
*Schlegel v. United States,*
416 F. 2d 1372 (Ct.Cl.1969)
...................................................................................................7, 22, 27

*Sevier v. Davis,*
17-5654 (6th Cir. 2017)
...........................................................................................................26

*Sevier v. Hickenlooper,*
1:17-cv-1750 (COD 2017)
...........................................................................................................32

*Shapiro v. Thompson,*
394 U.S. 618 (1969)
...........................................................................................................14

*SmithKline Beecham Corp. v. Abbott Labs,*
 740 F.3d 471 (9th Cir. 2014)
...........................................................................................................16

*State v. Holm,*
137 P.3d 726 (Utah 2006)
.............................................................................................................2

*Torcaso v. Watkins,*
367 U.S. 4881 (1961)
.......................................................................................................4, 24

*Trunk v. City of San Diego,*
629 F.3d 1099 (9th Cir. 2011)
...........................................................................................................32

*United States v. Windsor,*
133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013)
..............................................................................................8, 18, 22, 28

*Van Orden v. Perry,*
545 U.S. 677 (2005)
...........................................................................................................25

*Wallace v. Jaffree,*
472 U.S. 38 (1985)
......................................................................................................12, 31

*Washington Ethical Society v. District of Columbia,*
101 U.S. App. D.C. 371, 249 F.2d 127 (1957)
.............................................................................................................4

*Washington v. Glucksberg,*
521 U. S. 702 (1997)
...........................................................................................................18

*Wells v. City and Cnty. of Denver,*
57 F.3d 1132 (2001)
...........................................................................................................24

*Welsh v. U.S,*
1970398 U.S. 333 (U.S.Cal.June15)

...................................................................................................................................4

*Westchester Day School v. Village of Mamaroneck*,
504 F.3d 338 (2d Cir. 2007)
...............................................................................................................................33

*Zablocki v. Redhail*,
434 U.S. 374 (1978)
...............................................................................................................................17


**Other Authority**
Fed. R. Civ. P. 8(e)(2)
...............................................................................................................................1

Fed. R. Civ. P. 12(b)(1)
...............................................................................................................................5

Fed. R. Civ. P. 12(f)
...............................................................................................................................34

2 Encyclopaedia of the Social Sciences, 293
...............................................................................................................................4

 J. Archer, Faiths Men Live By(2ded. revised by Purinton 1958)
...............................................................................................................................4

DOMA § 3
...............................................................................................................................22, 27

 Stokes & Pfeffer
...............................................................................................................................4

NOW COMES, Chris Sevier Esq. in opposition to the Defendants' motion to dismiss. On the one hand, this is a simple case. Like in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), "this case concerns only what states may do under the Constitution" in determining (1) how the Constitution permits the States to legally define marriage and (2) which types of marriages the States can legally recognize. On the other hand, this is a complex case, the Plaintiffs have pled under Fed. R. Civ. P. 8(e)(2) which creates a "double bind" where either the Defendants have to admit that the Plaintiffs are entitled to the individual, existing, and fundamental right of marriage under the Fourteenth Amendment under *Obergefell* or that legally recognized gay marriage is a sham under the Establishment Clause that pose a threat to American Democracy. *Obergefell*, 135 S.Ct. 2584 at 1-29. One thing that all sides can agree upon is that "times can blind." *Id.* The Plaintiffs intent to change the course of law through force of intellect alone through asking this Court to determine the trajectory of the First Amendment while balancing the Freedom of Expression Clause with the  Establishment Clause.[1] "Certainty in the law" apparently tends to freakout governmental officials. But there is a freedom in having a definitive absolute answer to resolve a controversy and legal question. DE 34 Pastor Cairns ¶¶ 1-33.  There is a final answer to the ultimate question presented by this ongoing controversy that strikes the correct balance between the Freedom of Expression Clause and the Establishment Clause.  Here is the Constitutional controlling answer:

> "under the Freedom Of Expression Clause, all individuals - to include the Plaintiffs - can self-identify as anything and everything they want to include homosexual, transgender, zoophile, objectophile, polygamist, and others, and all individuals can conduct as many marriage and other ritualistic ceremonies that they would like in accordance with their faith-based worldview; however, under the Establishment Clause, the Federal and State government can - at the very most - only legally recognize man-woman marriage because

---

[1]  Respectfully, there is a serious danger in arrogantly buying into the unexamined assumption of the superiority of our cultural moment. However, the encouraging thing about the judicial branch of government is that Federal Judges are given life time appointments are are required to apply transcultural law.

it is the only natural, neutral, non-controversial, and most importantly, "secular" form of marriage.

This is the same principle set forth in the Bright Line Rule spelled out in *State v. Holm*, 137 P.3d 726 (Utah 2006). This discussion was never had in *Obergefell*, and it is the correct answer that accords with common sense and the United States Constitution. Yet, applying the Bright Line Rule and the Constitution does mean that all 50 states must no longer legally recognize gay marriage or to enforce statutes that treat sexual orientation as a suspect class. The evidence in this case shows that sexual orientation never really was a suspect class.[2]

Until the different branches of government awake from their intellectual blindness and start admitting the truth, the Nation will continue to divide and fracture under the weight of lies and the Judiciary will remain in a continual state of contempt by the the majority of people living in the United States. Our government is not a church that can be used to explain away the natural feelings of shame and inadequacy that follow in action out on sexual conduct that does not check out with the givenness of our nature and the truth about the way things are. Our government is not a redeemer. While the Plaintiffs are not out to shame anybody, the Plaintiffs do demand that the Court enforce the Constitution in the way it was written and not in the way that the Court thinks it ought to have been. The Amended complaint sets out a case which underscores the fact that the Establishment Clause was not designed to single out institutionalized religions from receiving the government's respect, the Establishment Clause also serves to bar the unproven faith-based assumptions floated by non-institutionalized religions from respect as well.

---

[2]  (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶ 1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo: ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

The Defendants motion to dismiss should be denied because the Plaintiffs pleading insurmountably meets the legal standard and because the Defendants are going to lose this case as the "egotistic...judicial putsch" continues to naturally collapse in on itself under the weight of the truth that legally recognized gay marriage and fake gay civil rights statutes are barred by the Establishment Clause, since they are non-secular shams that create an indefensible legal weapon and that cause the government to be excessively entangled with the religion of Secular Humanism to the point of undermining actually protected fundamental freedoms.

The Plaintiffs filed an amended complaint in which they seek an injunction. "The four elements a plaintiff must establish to secure a preliminary injunction are: (1) Substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted). In this case, the Plaintiffs have easily established each element with the help of four factors that were lodged in the record in support of their amended complaint. The Defendants have completely failed to address any of these factors. Factor one, the Plaintiffs provided sworn statements from former homosexuals who attest that homosexuality has nothing to do with immutability and is merely a doctrine advanced by the church of Secular Humanism.[3] Factor two, the Plaintiffs filed sworn statements from medical experts who attest that because there is no proof of a gay gene and, therefore, homosexual orthodoxy is a matter of faith that falls within the exclusive

---

[3](DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶  1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

jurisdiction of the Establishment Clause.[4]  Factor three, the Plaintiffs submitted sworn statements from licensed Ministers, who attest that homosexuality and gay marriage are part of the religion of Secular Humanism. Factor four, after marrying gay marriage and homosexuality with the religion of Secular Humanism through the use of sworn statements from expert witnesses, the Plaintiffs call to this Court's attention the fact that the United States Supreme Court has already found that Secular Humanism is a religion whose doctrine is barred from respect by the government under the Establishment Clause.  *Torcaso v. Watkins*, 367 U.S. 488, n. 11 (1961); *Washington Ethical Society v. District of Columbia*, 101 U.S.App.D.C. 371, 249 F.2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J. Archer, Faiths Men Live By 120—138, 254—313(2ded. revised by Purinton 1958); Stokes & Pfeffer,supra, n.3 ,at 560. *Welsh v. U.S,*1970398 U.S. 333 (U.S.Cal.June15).[5] Because there is no way to overcome these four factors shy of some kind of creative judicial sham and the Defendants will lose this case. [6]

---

[4] (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶ 1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

[5] The Supreme Court itself has "taken notice of the fact that recognized religions' exist that 'do not teach what would generally be considered a belief in the existence of God, to include [Atheism], Buddhism, Taoism, Ethical Culture, Secular Humanism and 'others.'"*Edwards v. Aguillard,*482 U.S. 578, 583 (1987). In *Real Alternatives,*the court stated: "we detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in Center for Inquiry, 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." Id. at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities. *Real Alternatives, Inc. v. Burwell*, 150 F. Supp. 3d 419, 440–41 (M.D. Pa. 2015), aff'd sub nom. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs*., No. 16-1275, 2017 WL 3324690 (3d Cir. Aug. 4, 2017) The LGBTQ community is "organized, full, and provide[s] a comprehensive code by which individuals may guide their daily activities." Id.8  If it walks like a duck, talks like a duck, it is a duck. LGBTQ church walks like a religion, talks like a religion, and is one.  Instead having a cross or the ten commandments, the LGBTQ church has the Gay Pride Flag and their own commandments, such as if you disagree with LGBTQ ideology you are one of "the voices of bigotry and hate" worth marginalizing, shaming into silence, and oppressing.

[6] While the Defendants say that this lawsuit is implausible, while several state legislatures are introducing legislation that was derived directly out of this litigation which (1) resolves that all parody marriages are non-secular and that (2) that all man-woman marriages are secular, which shows that the Defendants opinions are not only irrelevant but themselves without merit The last time a Defendant was dumb enough to suggest that the Plaintiffs lawsuit was "implausible" and the Courts were unwise enough to agree, it lead to 38 states and the Federal Congress introducing

The Plaintiffs have pled a cause of action under two different Constitutional prescriptions were the under Fed. R. Civ. P. 8(e)(2) that are competing under the First Amendment Establishment Clause and the Fourteenth Amendment Equal Protection and Substantive Due Process Clause. *Blazer v. Black*, 196 F.2d 139, 144 (10th Cir. 1952).  By tenaciously arguing that less popular parody marriages are implausible under Rule 12(b)(1), the Defendants admitted that the Plaintiffs have standing to enjoin the state from legally recognizing all forms of parody marriage under the Establishment Clause, while conferring subject matter jurisdiction onto the Court.  Furthermore, by vigorously arguing that *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) cannot be overruled, the Defendants admitted that the Plaintiffs have standing under the Equal Protection and Substantive Due Process Claims to force the Defendants to respect polygamy and objectophile marriage in relying on the same holding.  Either way the current legal definition of marriage enforced by the State is unconstitutional from every angle, the Plaintiffs have standing to proceed, and the Court has subject matter jurisdiction, and it is futile to pretend otherwise because many legislative bodies all ready agree.

## I.    THE PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

The Plaintiffs include four individuals - all of whom have paid various forms of sales tax, income tax, municipal tax, federal tax and other forms - while residing in the state over different periods of time as citizens of this state and the Nation.  None of the Plaintiffs subscribe to the religious beliefs and moral convictions endorsed by their State's government reflected in the gay marriage policies or in any kind of fake sexual orientation discrimination statute.  The Plaintiffs have asserted that they have observed the fact that the State is publicly issuing marriage licensed

---

legislation that brought about the very result that the Plaintiff was arguing for - see the humantraffickingpreventionact.com.  The Plaintiffs will once again prove that it is futile, if not impossible to argue with common sense and the objective truth.

to self-identified homosexuals and not to self-identified objectofiles and polygamists and that they are deeply offended by that state action. Moreover, the Plaintiffs have asserted that the supporters of gay marriage who are members of the church of Secular Humanism, who live in this state and in others have maliciously set out to harass, harangue, and harm the Plaintiffs in a manner that is grossly coercive in response to the Plaintiffs' refusal to pay respect to their narrow and exclusive unproven truth claims floated by the church off Secular Humanism. The fact that the State is issuing gay marriage licenses to self-identified homosexuals is the superseding cause of the Plaintiffs' injury.  This is especially true since the Plaintiffs are merely being treated differently under the law for not having the same level of political clout.  The Plaintiffs have set forth that a gay marriage license is not a real wedding license.  It is a license for Secular Humanists to oppress, marginalize, and demean people, who like the Plaintiffs, believe that gay marriage is self-evidently wrong, immoral, obscene, and subversive to human flourishing as a matter of common sense and transcultural Constitutional law. While "gay marriage" is "fake marriage," the persecution that stems from the state issuing a license to self-identified homosexuals is very real.[7]  The Plaintiffs, and millions of other citizens of this State and others, have good reason for not wanting their taxpayer dollars to go toward the government's efforts to excessively entangle itself with the illogical religion of Secular Humanism.  This is especially true since there has not been a landrush on gay marriage, but there has been a landrush on the LGBTQ church to infiltrate public elementary schools with the intend to indoctrinate minors to a

---

[7]  *Moore v. Judicial Inquiry Commission of the State of Alabama*, 200 F.Supp.3d 1328 (M.D.Ala. 2016);;  *Patterson v. Indiana Newspapers*, Inc., 589 F.3d 357 (C.A.7 (Ind.) 2009);; *Gadling-Cole v. West Chester University*, 868 F.Supp.2d 390, (E.D.Pa. 2012);; *Miller v. Davis*, 123 F. Supp. 3d 924 (E.D. Ky. 2015), appeal dismissed, Nos. 15-5880, 15-5978, 2016 WL 3755870 (6th Cir. July 13, 2016);; *Elane Photography, LLC v. Willock*, 2013 N.M. Lexis 284 at (N.M. Aug. 22, 2013);; *Cervelli v. Aloha Bed & Breakfast*, No. 11–1–3103–12 ECN (Haw. Cir. Ct. Dec. 19, 2011).

religious worldview on sex, faith, morality, and marriage that is questionably moral, obscene, ethical, and probably should have remained illegal.[8] While there may be emotional reasons that some in government want to promote Secular Humanism and homosexual ideology, those reasons are invalidated under the reasoning in *Holloman v. Harland*, 370 F.3 1252 (11th Cir. 2004).[9] *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) is nothing more than a bag of intellectual dishonesty and shallow emotional appeals that lacks a single sentence of logic reasoning. Stare Decisis does not save *Obergefell* from being overruled because (1) the evidence shows that the Establishment Clause has exclusive jurisdiction over all parody marriages and self-asserted sex-based identity narratives that fail to check out with the human design and because (2) the Establishment Clause claims were "lurking in the shadows" but not ruled upon in *Obergefell*. *KVOS, Inc., v. Associated Press*, 299 U.S. 269, 279 (57 S.Ct. 197, 81 L.Ed. 183).[10]

---

[8] The Supreme Court has emphasized that there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools," *Lee v. Weisman*, 505 U.S. 577, 592 (1992), and the federal courts have thus "been particularly vigilant in monitoring compliance with the Establishment Clause" in the public-school context, see *Edwards,*482 U.S. 578- 583. There are millions of taxpayers who are fed up with the Federal court's pretending that LGBTQ community is secular. These taxpayers do not want the LGBTQ community proselytizing their gospel message that promotes obscenity and the erosion of community standards of decency inside of public schools.

[9] In *Holloman v. Harland*, 370 F.3 1252 (11th Cir. 2004), a public school teacher defended a daily moment of silent prayer by arguing that she intended to teach students compassion, pursuant to character education plan mandated by the state. Id. at 1285. The court concluded that this emotional explanation did not constitute a valid secular purpose because the teacher's most basic intent unquestionably was to offer her students an opportunity to pray. "While [the teacher] may also have had a higher-order ultimate goal of promoting compassion, we look not only to the ultimate goal or objective of the behavior, but also to the more immediate, tangible, or lower-order consequences a government actor intends to bring about." Id. The unmistakable message of the Supreme Court's teaching in *Holloman* is that the state cannot employ a religious means to serve an otherwise legitimate secular interests." Id. at 1286. The *Holloman* court further concluded that "a person attempting to further an ostensibly secular purpose through avowedly religious means is considered to have a Constitutionally impermissible purpose." Id., citing *Jagar v. Douglas County School*, 862 F.2d 824, 830 (11th Cir. 1989). ("An intrinsically religious practice cannot meet the secular purpose prong of the Lemon test.")

[10] The Plaintiffs agree with the long standing jurisprudence that the states have a compelling interest to uphold community standards of decency. *Paris Adult Theatre I v. Slaton*, 413 US 49 (1973). The Plaintiffs agree with the Court in *Schlegel v. United States*, 416 F. 2d 1372, 1378 (Ct.Cl.1969) when it found "Any school boy knows that a homosexual act is immoral, indecent, lewd, and obscene. Adult persons are even more conscious that this is true." The Court should return to the long standing rule that "to simply adjusts the definition of obscenity to social realities has always failed to be persuasive before the Courts of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958,

### Plaintiffs Have Standing As Taxpayers To Enforce The Establishment Clause

The Plaintiffs have standing to pursue their Establishment Clause claims.  The

Defendants confirmed this fact by vigorously arguing that less popular forms of parody marriage

require a huge amount of faith to believe that they are actually real and not a mask to cover for

self-evident immorality and to promote a particular narrow religious worldview.  Among other

things, the Plaintiffs are citizens, residents, and taxpayers who do not subscribe to the religious

beliefs and moral convictions that follow from the church of Secular Humanism and that are

endorsed in gay marriage policies and fake civil rights statutes that falsely that assert that sexual

orientation is a suspect class, which it never was.  The Plaintiffs are offended by the State's

endorsement and special protection of those beliefs and convictions that ex-gays have admitted is

nothing more than part of the religion of secular humanism, which is a worldview is emotionally,

intellectually, sexually, and racially exploitative from an objective reasonable person standpoint.

In at least two of the crèche-menorah cases, the plaintiffs were described by the United States

Supreme Court simply as "residents" of the county and the city in which the religious symbols

were displayed. *County of Allegheny v. ACLU, 492 U.S. 573, 587-88 (1989); Lynch v. Donnelly*,

465 U.S. 668, 671 (1984). In *Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir. 2009), the Fifth

Circuit addressed standing in an Establishment Clause challenge to a moment of silence:

---

16 L. Ed. 2d 56 (1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668,
671 (1966).  Obviously, for the Defendants to disagree with this line of logical thinking only proves that "times can
blind." The very idea that the Secular Humanists on the *United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d
808 (2013) court merely pretended that the legal basis behind the State's decision to impose marriage bans that
targeted all forms of parody marriage was "bigotry" and not because the states were trying to uphold community
standards of decency demonstrates that the Secular Humanist on the Court are untrustworthy. The fact that the
Secular Humanists falsely blamed bigotry for the marriage bans instead of acknowledging the obvious fact that the
Constitutional legal basis for the bans were to keep the government from excessively entangling itself with the
religion of secular humanism is proof that Secular Humanists on the Supreme Court fail to objectively know the
difference between right and wrong, real and fake, and secular and non-secular. More than that, it is direct proof that
they should be removed from the bench by Congressional oversight action.   America deserves better than to have
unfit Judges in office who do not even believe in any solid basis for justice and morality to begin with.

> The Crofts have alleged that their children are enrolled in Texas public schools and are required to observe the moment of silence daily. . . . The Crofts' children are definitely present for the moment of silence, and . . . we can assume that they or their parents have been offended—else they would not be challenging the law. That is enough to establish standing at this [summary judgment] stage of the suit. Id. at 746.

The Plaintiffs here exercised their fundamental right to travel and approached the clerk's office where they saw the clerk admit that it provides marriage licenses to self-identified homosexuals only to refuse to treat self-identified polygamists and objectofiles the same under the law.  That is, the Plaintiffs observed the Defendants treat self-identified homosexuals with a different degree of favorable treatment, which reduced the Plaintiffs to second class citizens. The Plaintiffs have not only been for their willingness to call gay marriage a non-secular sham that violates the Lemon test nationally but locally as well because the Plaintiffs have sufficient connection and nexus to this State.[11]

A gay marriage license issued by the state to self-identified homosexuals, is itself  a religious display because it enshrines a religious worldview that a reasonable observer would find to be removed from reality.  Insofar as a gay marriage license is not a symbol or an indefensible legal weapon - and it is - the fact that the Plaintiffs here are challenging a religious endorsement expressed through the implementation of policies and statutes rather than through a symbolic, physical object like a crèche, an oral event like a prayer, or a moment of silence, does

---

[11] Tens of thousands of residents in this state spent time discussing the Plaintiffs' lawsuit because the Defendants unconstitutional misconduct has as much of a direct effect on them as it does the Plaintiffs.
1. http://www.clarionledger.com/story/news/politics/2017/09/21/polygamists-filed-federal-lawsuit-over-gay-marriage-mississippi/688892001/
2. http://wjtv.com/2017/09/21/polygamists-and-machinist-file-lawsuit-over-gay-marriage/
3. http://www.theglobaldispatch.com/mississippi-man-chris-sevier-wants-to-marry-computer-joins-polygamists-to-sue-15232/
4. https://www.newsmax.com/TheWire/polygamists-gay-marriage-mississippi-lawsuit/2017/09/22/id/815169/
5. http://www1.cbn.com/cbnnews/politics/2017/october/one-man-rsquo-s-fight-to-marry-his-laptop-an-obscure-lawsuit-rsquo-s-challenge-to-gay-marriage
6. https://www.lifesitenews.com/news/polygamists-lawsuit-if-gay-marriage-is-legal-then-polygamy-marriage-should
7. https://www.thedailybeast.com/meet-the-anti-lgbt-bigot-marrying-his-computer
The media coverage that was of and concerning the Plaintiffs and their injuries alone goes to establish a nexus. The Plaintiffs and their claims and interaction which this state are of great importance to this state and to Constitutional integrity.

not matter for purposes of standing. In *Awad v. Ziriax,* 670 F.3d 1111 (10th Cir. 2012), the Tenth

Circuit held that a Muslim plaintiff had standing to challenge an Oklahoma referendum to amend

the state constitution to prohibit state courts from considering or using international law or

Shariah law. In so doing, the Court noted that the "personal and unwelcome contact" the plaintiff

had with the constitutional amendment was no different for standing purposes than the "personal

and unwelcome contact" other plaintiffs had with government sponsored religious symbols. Id. at

1122

> In some respects, Mr. Awad's alleged injuries are similar to those found sufficient to
> confer standing in our religious symbol Establishment Clause cases. Like the plaintiffs
> who challenged the highway crosses in *American Atheists [v. Davenport,* 637 F.3d 1095
> (10th Cir. 2010)], Mr. Awad suffers a form of 'personal and unwelcome contact' with an
> amendment to the Oklahoma Constitution that would target his religion for disfavored
> treatment. As a Muslim and citizen of Oklahoma, Mr. Awad is 'directly affected by the
> law [ ] ... against which [his] complaints are directed.' See *Valley Forge [Christian
> College v. Americans United for Separation of Church and State*], 454 U.S. [464] at 487
> n. 22 [(1982)] (quoting, *Abington Sch. Dist. v. Schempp,* 374 U.S. 203, 224 n. 9 (1963)).
> As further spelled out below, that is enough to confer standing. See *Schempp,* 374 U.S. at
> 224 n. 9.

*Awad,* 670 F.3d at 1122.  In discussing further the plaintiffs' standing in the case, the Tenth

Circuit also noted that "Mr. Awad is facing the consequences of a statewide election approving a

constitutional measure that would disfavor his religion relative to others." Id. at 1123.  Like the

plaintiffs in Croft enduring a moment of silence to which they were subjected, the Plaintiffs here

are required to endure an endorsement of religion in the law of their own state to which they

object. And like the plaintiff in Awad, the Plaintiffs here are "facing the consequences" of a

statutory and policy enactment and enforcement "that would disfavor [their beliefs] relative to

others." *Awad,* 670 F.3d at 1122. More than that, the policy in dispute subjects the Plaintiffs and

other non-observers who are not a part of a specific denomination of Secular Humanism to

continued harassment and oppression, which fundamentally erodes actually protected liberty interests, not pretend ones like the idea that "gay rights" are "civil rights." This is especially true when ex-gays admitted that when all people of common sense know that the fake gay rights movement is merely a pathetic attempt to explain away inherently immoral sexual perversion that erodes community standards of decency.[12] Just as standing was established in cases like *Awad, County of Allegheny, Lynch, Croft*, so it is here.[13]

In addition to the standing of the Plaintiffs as people whose beliefs are disfavored because they do not subscribe to the state-endorsed beliefs and convictions set forth in the state's gay marriage policies and practices, the Plaintiffs are among the groups who are targeted by the State's endorsement of the beliefs and convictions. The fact that Plaintiff Harley is an former self-identified ex-transgender and that Plaintiff Kohl is a former self-identified lesbian makes their testimony and very existence an imminent threat to the radicalized cheerleaders of the fake gay civil rights movement.[14]

There is a substantial likelihood - if not total certainty - that the Plaintiffs will prevail on the merits because gay marriage policy is an emotionally charged religious sham that violates all three prongs of Lemon.   By issuing gay marriage licenses to self-identified homosexuals alone clearly "conveys a message of endorsement" of those beliefs. *Wallace v. Jaffree*, 472 U.S. 38, 57 n. 42 (1975) (quoting *Lynch v. Donnelly*, 465 U.S. at 690 (O'Connor, J., concurring)).  There are

---

[12] (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶  1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families
[13]  See also *Flast v. Cohen*, 392 U.S. 83 (1968).
[14]  Just about all of the Plaintiffs have received the same kinds of death threats and harassment as Pastor Rich Penkoski, who is the founder of the social media network socialcross.org. (See Declaration of Penkoski). Congressman Lowenthal called the Plaintiffs the "voices of hatred and bigotry" for their demand that Secular Humanist in office be subjected to obeying the Constitution, instead of rewriting it to fit their narrow religious worldview which manages to be utterly irrational.

millions of taxpayers who sincerely believe that gay marriage is immoral and an insult to

self-evident truth and that for their money to go towards advancing the doctrines of Secular

Humanism would itself be a grave act of immorality. These taxpayers will simply not stand for

this continued unethical abuse of government powers by intellectually inept officials who are too

intellectually blind and cowardly to understand the differences between secular and non-secular

and right and wrong.  For example, it is Plaintiffs who are defending the integrity of the civil

rights movement lead by Pastor Martin Luther King Jr., not the LGBTQ community who are

exploiting it in a manner that is unbelievably offensive and dishonest.  Moreover, the actual

purpose of gay marriage is clearly to endorse and promote those specific religious beliefs in the

off chance that those who choose to bank their entire life on the idea that there is no such thing as

absolute truth will perhaps feel less ashamed and inadequate about a worldview that the

Defendants themselves insist is implausible in light of their criticism of the believability in less

popular forms of parody marriage promoted by the Plaintiffs. Thus, the Plaintiffs have standing

to argue gay marriage policies insurmountably violates the Establishment Clause of the First

Amendment for being nothing more than a non-secular sham that tries to explain away sexual

conduct that does not even accord with the natural human design any more than man-object or

man-animal marriage does, as the Defendants have vigorously argued and admitted into the

record. *Wallace Jaffree,* 472 U.S. 38, 57 (1985):; *Lemon v. Kurtzman,* 403 U.S. 602, 612-13

(1971). [15]

---

[15] If the Attorney General of Mississippi actually understood how to do his job - and he does not - he would know
that while the States have a compelling interest to uphold community standards of decency - which all parody
marriages erode - the States have a supreme duty to comply with the Constitution with the Establishment Clause is
part of. This State has failed to meet that duty due to the Defendants propensity for "go along get along" and have
managed to excessively entangling itself with the religion of Secular Humanism in a manner that has caused
confusion, coercion, and conditions that are sexually, emotionally, racially, and intellectually exploitative.  The

In *Awad v. Ziriax*, 670 F.3d at 1126-1129, the Tenth Circuit affirmed the grant of a preliminary injunction and noted that the plaintiff was likely to prevail on the merits in his Establishment Clause challenge to the Oklahoma constitutional referendum to prohibit state courts from considering international law or Shariah law. The Tenth Circuit examined the merits under the analysis employed by the Supreme Court for "explicit and deliberate distinctions between different religious organizations." *Larson v. Valente*, 456 U.S. 228, 247 n. 23 (1982). Such a law is constitutional only if it is "closely fitted to the furtherance of any compelling interested asserted." Id. at 255. The Tenth Circuit held that the proposed Oklahoma constitutional amendment was not justified by any compelling state interest (and also that all of the other preliminary injunction factors favored the plaintiff). 670 F.3d at 1129-1132.

While the present case does involve what *Larson* calls an "explicit and deliberate distinction[] between different religious organizations," it also involves an explicit and deliberate distinction between different religious beliefs. There certainly is no compelling interest, or indeed any legitimate interest, that justifies this distinction. At any rate, whether the analysis in this case is more appropriate under *Larson* or under *Lemon* and subsequent cases, the result is the same: the practice of issuing marriage licenses to self-identified homosexuals and the enforcement of any statute that asserts that sexual orientation is a civil rights matter violates the Establishment Clause from every angle by placing "religion over non-religion."[16] The self-identified polygamists and objectophile Plaintiffs admit that while there is nothing

---

people of Mississippi and elsewhere are simply not going to tolerate the Defendants intolerance towards the enforcement of the correct Constitutional narrative.

[16]  Just as government officials may not favor or endorse one religion over others, so too officials "may not favor or endorse religion generally over non-religion." *Lee v. Weissman,* 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)(Souter, Justice, concurring)(citing *County of Allegheny v. ACLU,* 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)

inherently religious about man-woman marriage, the Plaintiffs do agree with the Defendants that there is something inherently religious about the different forms of parody marriage - to include man-man and woman-woman marriage.

The Defendants completely fail to understand that the Plaintiffs have standing under the Establishment Clause to enjoin the Defendants despite their taxpayer status on a different legal basis. By arguing that polygamy and man-object marriage are implausible, the Defendants are admitting that polygamy and objectophilia are religious in nature. Homosexuality, zoophilia, polygamy, and objectophilia are different denominations within the overall church of Secular Humanism or western postmodern moral relativism and expressive individualism.[17]  Polygamy, zoophilia, objectophilia, transgenderism, and homosexuality are all self-asserted sex-based identity narratives whose believability can only be taken on faith that fall within the same umbrella of belief. (See the Defendants 12(b)(1) arguments).  One thing that is certain is that the government cannot discriminate against "religion and religion" by treating different sects or denominations within the same religious spectrum with disproportionate degrees of favorable treatment. *McCreary Cnty, Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005);; *Engel v. Vitale*, 370 12 U.S. 421, 431 (1962).  For example, the government cannot give tax write offs to the Baptist denomination but not the Methodist denomination when both sects are part of the overall church of Christianity. The amended complaint sets forth that all parody marriage part of the same ideological spectrum of expressive individualism and secular humanism.  The Plaintiffs have the fundamental right to travel. *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969).  While inside this state and in the face of the Plaintiffs marriage requests, the Defendants admitted that they were

_____

[17] (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶  1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

treating self-identified homosexuals with favorable treatment by providing them with the

"constellation of benefits" referred to in *Obergefell*, while denying those benefits to the Plaintiffs

based on their self-asserted sex-based identity narratives only because the Plaintiffs have less

political clout. Id. 1-28.  It is the Defendants' rejection of the Plaintiffs request that gives the

Plaintiffs standing to enjoin the state from legally recognizing any form of parody marriage

under the First Amendment as applied to the state under the Fourteenth Amendment for unequal

treatment under the law by treating one denomination with more respect than others.[18]  The

injury took place in this state, and because "it is well settled that the loss of First Amendment

freedoms even for minimal periods of time constitutes irreparable injury justifying the grant of a

preliminary injunction" the Plaintiffs have standing to proceed. *Deerfield Medical Center v. City*

*of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B 1981) (citing *Elrod v. Burns,* 427 U.S.

347, 373 (1976)). *See also CSE v. Bryant I,* 64 F.Supp.3d 906, 950 (S.D. Miss. 2015).  The

Defendants have completely failed to address this argument because they cannot.

### The Plaintiffs Have Standing Under The Fourteenth Amendment

If the First Amendment Establishment Clause does not control or apply - and it does -

then the State's policies and procedures in denying the Plaintiffs the individual and fundamental

right to marriage violates the Fourteenth Amendment's Equal Protection Clause and Substantive

Due Process Clause under the holding in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), which is

a case that the Defendants insist cannot be overruled.  Even if the Defendants were right, the

current marriage policies and restrictions, post *Obergefell,* continues to reflect an animus toward

---

[18] Self-asserted sex-based identity narratives that fail to check to out with the self-evident truth are inherently religious in nature. DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33. While these identity narratives differ, they are all still part of the same ideological spectrum associated with expressive individualism and western postmodern moral relativism.

those who are disfavored because it is too underinclusive. Id. Moreover, there is not even a rational basis to justify the distinctions that are drawn in favoring the beliefs of self-identified homosexuals over self-identified polygamists and objectophiles, *see Romer v. Evans,* 517 U.S. 620, 632-635 (1997).[19]  Heightened scrutiny is appropriate in light of this targeting.

There are a huge number of cases where the courts, albeit for malicious ulterior purposes, have asserted that "sexual orientation" is a suspect class.[20]  The Court chaired by Secular

---

[19] "[i]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare. . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."

[20]  See *Lalli v. Lalli,* 439 U.S. 259, 264-65 (1978);;;; *Craig v. Boren,* 429 U.S. 190, 197-98 (1976)(indicating that sexual orientation is a basis for suspect classification). Courts have stated that sexual orientation has no "relation to [the] ability" of a person 'to perform or contribute to society." *City of Cleburne,* 473 U.S. at 440-41;;;; see *Pedersen v. Office of Pers. Mgmt.,* 881 F. Supp. 2d 294, 3 18-19 (D. Conn. 2012) ("[T]he long-held consensus of the psychological and medical community is that 'homosexuality per se implies no impairment in judgment, stability, reliability or general or social or vocational capabilities.") (quoting 1973 RESOLUTION OF THE AMERICAN PSYCHOLOGICAL ASSOCIATION);;;; *Perry v. Schwarzenegger,* 704 F. Supp. 2d 921, 1002 (N.D. Cal. 2010) ("[B]y every available metric, opposite-sex couples are not better than same-sex counterparts;;;; instead, as partners, parents and citizens, opposite-sex couples and same-sex couples are equal.");;;; see also *Watkins v. US. Army,* 875 F.2d 699, 725 (9th Cir. 1989) ("Sexual orientation plainly has no relevance to a person's ability to perform or contribute to society.") The Courts also contend sexual orientation is immutable. As the Supreme Court acknowledged, sexual orientation is so fundamental to a person's identity that one ought not be forced to choose between one's sexual orientation and one's rights as an individual even if one could make a choice. *Lawrence,* 539 U.S. at 576-77 (recognizing that individual decisions by consenting adults concerning the intimacies of their physical relationships are "an integral part of human freedom"). See, e.g., *Perry,* 704 F. Supp. 2d at 964-66 (holding sexual orientation is fundamental to a person's identity);;;; *Hernandez-Montiel v. INS,* 225 F.3d 1084, 1093 (9th Cir. 2000) (holding that sexual orientation and sexual identity are immutable). Furthermore, the scientific consensus is that sexual orientation is an immutable characteristic. See *Pedersen,* 881 F. Supp. 2d at 320-21 (finding that the immutability of sexual orientation "is supported by studies which document the prevalence of long-lasting and committed relationships between same-sex couples as an indication of the enduring nature of the characteristic.");;;; *Perry,* 704 F. Supp. 2d at 966 ("No credible evidence supports a finding that an individual may, through conscious decision, therapeutic intervention or any other method, change his or her sexual orientation.");;;; see also *G.M. Herek,* et al., Demographic, Psychological, and Social Characteristics of Self-Identified Lesbian, Gay, and Bisexual Adults in a US. Probability Sample, 7 SEXUALITY REs. & Soc. POL'Y 176, 186, 188 (2010) (noting that in a national survey, 95 percent of gay men and 84 percent of lesbian women reported that they "had little or no choice about their sexual orientation.") Certain classes of sexual orientation constitute a minority group that lacks sufficient political power to protect themselves against discriminatory laws that lack political power and deserve suspect classification. See, e.g., *SmithKline Beecham Corp. v. Abbott Labs,* 740 F.3d 471, 480-84 (9th Cir. 2014) (holding use of peremptory strike against gay juror failed heightened scrutiny);;;; see also *Pedersen,* 881 F. Supp. 2d at 294 (finding statutory classifications based on sexual orientation are entitled to heightened scrutiny);;;; *Golinski v. Office of Pers. Mgmt.,* 824 F. Supp. 2d 968, 314-33 (N.D. Cal. 2012) (same). See *Romer v. Evans,* 517 U.S. 620, 634-35 (1996) (citing *Dep't of Agr. v. Moreno,* 413 U.S. 528, 534 (1973)) ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare. . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.") (emphasis added). Then, in 2003, the Court held that homosexuals had a protected liberty interest to engage in private, sexual activity;;;; that homosexuals' moral and sexual choices were entitled to constitutional protection;;;; and that "moral disapproval" did not provide a

Humanists have set forth that marriage is an "existing," "individual," and "fundamental" right based on a personal and autonomous choice.[21] Now that the Plaintiffs have sought have person-object and polygamy marriage legally respected in this State by exercising those "existing rights," the Court here cannot turn around and say "well the prior courts really didn't mean it." The Court has the same Subject Matter Jurisdiction to determine if gay marriage is a right as it has over deciding if other parody forms of marriage are. The Plaintiffs are not making a "slippery slope" argument. The way the Constitution works is that all individuals in a suspect class to include individuals in non-obvious categories are given the same civil rights. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 27879, 96 S. Ct. 2574, 2578, 49 L. Ed. 2d 493 (1976). Otherwise, the suspect class is a sham.[22] The Courts must make that determination.

Since the Defendants want to spineless pretend that *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) is good law because they are feckless invertebrates who lack the character for honesty and leadership, then it must be true that the Defendants' rejection of the Plaintiffs' marriage request violated the Substantive Due Process Clause because it robbed the Plaintiffs of the

---

legitimate justification for a Texas law criminalizing sodomy. See *Lawrence v. Texas,* 539 U.S. 558, 564-571 (2003). The Court held that the Constitution protects "personal decisions relating to marriage, procreation, contraception, family relationships, [and] child rearing" and that homosexuals "may seek autonomy for these purposes." Id. at 574. Most recently, in 2013, the United Supreme Court held that the Constitution prevented the federal government from treating state-sanctioned heterosexual marriages differently than state-sanctioned same-sex marriages, and that such differentiation "demean[ed] the couple, whose moral and sexual choices the Constitution protects." See *Windsor*, 133 S. Ct. at 2694. If *Obergefell* is invalid law, then so is all of the above mentioned law. Id. 1-29.

[21] *Zablocki v. Redhail,* 434 U.S. 374, 384 (1978) (fundamental right); *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 63940 (1974) (personal choice); *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (existing right/individual right); *Lawrence v. Texas,* 539 U.S. 558 (2003) (intimate choice)

[22] The idea that sexual orientation is a suspect class is clearly a sham, where the Secular Humanists on the bench attempted to entangle the government with the religion of Secular Humanism, just as they tried in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 84748 (1992) when Justice Kennedy attempted to enshrine the modern cultural mindset when he said "at the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe." Secular Humanists in office can play pretend on their own time, but they cannot expect the taxpayers who do not agree with their worldview to allow them to use government to attempt to coercively prosthelytize them in the name of freedom and tolerance.

constellation of benefits that are otherwise provided to legally married self-identified

homosexuals as a result of the imperialistic decisions in *Obergefell v. Hodges*, 135 S.Ct. 2584

(2015) and *United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013). "Substantive

Due Process" is an eternal flame that melts away any and all procedure that standards in the way

of what the lawmakers - namely Judges - have decided is a fundamental and individual civil

right.[23]  If *Obergefell* is good law - and not pure fiction - then it would mean that restrictions like

limiting marriage to "two people" or requiring the object to "consent" are melted away by the

unquenchable flame of Substantive Due Process.  Chief Justice Roberts could not have made that

any clearer in his dissent in *Obergefell*, when he logically pointed out as a matter of common

sense that any procedural basis to limit marriage to two people was arbitrary if gay marriage is a

civil right.[24] If Secular Humanist on the bench want anyone to take them seriously, they cannot

have it both ways.  "The legitimacy of the courts ultimately rests upon the respect accorded to its

---

[23] *Washington v. Glucksberg*, 521 U. S. 702, 720 (1997):; *Reno v. Flores*, 507 U. S. 292, 302 (1993)

[24]  "One immediate question invited by the majority's position is whether States may retain the definition of marriage as a union of two people. Cf. *Brown v. Buhman*, 947 F. Supp. 2d 1170 (Utah 2013), appeal pending, No. 14- 4117 (CA10). Although the majority randomly inserts the adjective "two" in various places, it offers no reason at all why the two-person element of the core definition of marriage may be preserved while the man-woman element may not. Indeed, from the standpoint of history and tradition, a leap from opposite-sex marriage to same-sex marriage is much greater than one from a two-person union to plural unions, which have deep roots in some cultures around the world. If the majority is willing to take the big leap, it is hard to see how it can say no to the shorter one.  It is striking how much of the majority's reasoning would apply with equal force to the claim of a fundamental right to plural marriage. If "[t]here is dignity in the bond between two men or two women who seek to marry and in their autonomy to make such profound choices," *ante*, at 13, why would there be any less dignity in the bond between three people who, in exercising their autonomy, seek to make the profound choice to marry? If a same-sex couple has the constitutional right to marry because their children would otherwise "suffer the stigma of knowing their families are somehow lesser," *ante*, at 15, why wouldn't the same reasoning apply to a family of three or more persons raising children? If not having the opportunity to marry "serves to disrespect and subordinate" gay and lesbian couples, why wouldn't the same "imposition of this disability," *ante*, at 22, serve to disrespect and subordinate people who find fulfillment in polyamorous relationships? See Bennett, Polyamory: The Next Sexual Revolution? Newsweek, July 28, 2009 (estimating 500,000 polyamorous families in the United States); Li, Married Lesbian "Throuple" Expecting First Child, N. Y. Post, Apr. 23, 2014; Otter, Three May Not Be a Crowd: The Case for a Constitutional Right to Plural Marriage, 64 Emory L. J. 1977 (2015). I do not mean to equate marriage between same-sex couples with plural marriages in all respects. There may well be relevant differences that compel different legal analysis. But if there are, petitioners have not pointed to any. When asked about a plural marital union at oral argument, petitioners asserted that a State "doesn't have such an institution." Tr. of Oral Arg. on Question 2, p. 6. But that is exactly the point: the States at issue here do not have an institution of same-sex marriage, either."

judgments." *Republican Party of Minn. v. White*, 536 U. S. 765, 793 (2002) (KENNEDY, J.,

concurring).  This Court is being asked to (1) act like a grown up, (2) break rank, and (3) tell the

truth.

## II. ABSENT AN INJUNCTION, THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM

"It is well settled that the loss of First Amendment freedoms even for minimal periods of

time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield*

*Medical Center*, 661 F.2d at 338 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). *See also CSE*

*v. Bryant I*, 64 F.Supp.3d 906, 950 (S.D. Miss. 2015) (citation omitted) ("[I]t is well- established

that the deprivation 'of constitutional rights constitutes irreparable harm as a matter of law.'").

As explained in the discussion of standing above, the State's decision to legally recognize the

most popular form of parody marriage clearly violates the constitutional rights of the Plaintiffs

and causes them harm. Among other things, gay marriage and policies that treat sexual

orientation as a suspect class conveys an impermissible, state-sponsored message of disapproval

and hostility to those who do not share the beliefs and convictions, and to those who are

condemned as part of those beliefs, and indicates that their status is disfavored in the social and

political community of their own home state. *See, e.g., CSE v. MDHS*, 2016 WL 1306202, *14

(S.D. Miss. March 31, 2016) (finding irreparable harm from "stigmatic and more practical

injuries"). *See also Catholic League for Religious and Civil Rights v. City and County of San*

*Francisco*, 624 F.3d 1043, 1053 (9th Cir. 2010) (holding that the plaintiffs had sufficiently

pleaded injury in their Establishment Clause challenge to a city resolution that "conveys a

government message of disapproval and hostility toward their religious beliefs" and "'sends a

clear message' 'that they are outsiders, not full members of the political community'").  Unless it

is enjoined by this Court, the Defendants' endorsement and special protection of the narrow religious beliefs and moral convictions set forth in gay marriage policies and in provisions that treat sexual orientation as a suspect class will continue to violate the Constitution and have the effect of creating an indefensible legal weapon against non-observers.  The harms faced by the Plaintiffs and other Mississippians who do not share those favored religious beliefs and moral convictions, and those Plaintiffs and other Mississippians whose relationships and identities are condemned by those beliefs and convictions, is imminent and irreparable. The amended complaint and the facts set forth that establishes imminent and irreparable in an insurmountable way.

### III. THE BALANCE OF HARMS WEIGHS IN FAVOR OF AN INJUNCTION

The amended complaint persuasively sets forth that no irreparable harm will result from a preliminary injunction to preserve the status quo. It has been nearly two year since the Supreme Court's decision in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), and there has been no landrush on gay marriage but there has been a landrush on Secular Humanists to imperialistically bash non-observers due to a moral superiority complex that is dangerous. (See Declaration of Penkoski).  America is not more unified and tolerant in the wake of *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), it is so divided that if this fake trend promoted by Secular Humanist within the Judiciary does not stop it literally could escalate to civil war, sedition, and violent oppression.

[25]

---

[25] What legally recognizing gay marriage has actually accomplished is not peace, equality, and tolerance but it has plugged Secular Humanists deeper into a intellectual darkness and a state of entitlement that is intellectually, racially, emotionally, and sexually exploitative, not to mention dehumanizing, depersonalizing, and damaging. The Plaintiffs are here to testify as the to the truth because the truth sets everyone free. DE 34 Pastor Cairns ¶¶ 1-33. There are millions of people living in this state and in others who firmly believe as Dr. Martin Luther King Jr. and Dietrich Bonhoeffer did that to encourage immorality is itself an act of immorality. There is absolutely no amount of government coercion that can be imposed on these people of character, faith, and honor to compel them to take a

In short, there is no indication that irreparable harm will result from restoring the legal definition of marriage and the integrity of the Constitution to the status quo prior to the sham decision in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) that is as equally asinine as the decision in *Dred Scott v. Sandford*, 60 U.S. 393 (1857). Moreover, as the Tenth Circuit said when upholding a preliminary injunction against a comparable law: "when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh [the Plaintiffs'] in having [their] constitutional rights protected."*Awad*, 670 F.3d at 1131.[26]

## IV. THE PUBLIC INTEREST FAVORS AN INJUNCTION

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132. *See also, CSE v. Bryant I*, 64 F. Supp. 3d at 951 (same).[27] An injunction should be issued because the citizens of the United States and of this State benefit by living in a country that is based on the rule of law and not the whims of evolving the church of secular humanism.[28] The laws and policies of the United States are only functional when their

---

scalpel to the Bible to cut out the parts that is allegedly primitive and out of tune with the shallow culture. These people of a different faith are not bigots but they do believe as a matter of self-evident observation that homosexuality is deeply immoral and so are all other forms of parody marriages. They absolutely do not want their taxpayer dollars going to further entangle the government with the religion of Secular Humanism. The Plaintiffs understand and respect that and also do not want their taxpayer dollars going toward advancing the government's decision to promote gay marriage above all other parody forms.

[26] The United States is not a pure Democracy. The United States is a Constitutional Republic. This means that even the handful of states that actually voted to have the government respect gay marriage can no longer do so. The Plaintiffs have brought an Article III case and controversy that does not merely overrule *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) and create a scenario where the individual states get to decide how to define marriage and whether or not sexual orientation is a civil right. No indeed! The Plaintiffs lawsuit effectively demands that all fifty states to include this one must immediately cease from legally recognizing gay marriage, from enforcing any transgender bathroom policy, and from enforcing any statute that asserted that sexual orientation is a civil rights matter, when it never was. This Court has the power, authority, and duty to find in favor of the Plaintiffs regardless if the heavens may fall. And even if this Court wants to try to circle the wagons to protect the current charade another court will along with different legislative bodies because the Plaintiffs are on the side of the truth.

[27] Enjoining it and maintaining the pre-Obergefell status quo will be in the public interest. It took one hundred years before *Brown* overturned *Plessy*. It should take no more than a three years for not only *Obergefell* to be overruled but for all 50 states to do away with the entire fake gay civil rights entanglement.

[28] Afterall, love without truth is shallow sentimentality and the idea that "love is love" is circular reasoning that has no basis in reality

parallel natural universal law that is woven into the fabric of the universe and cannot be done away with by the propensity of Secular Humanists on the bench to engage in collusion with the ACLU in a collective agreement to deliberately engage in intellectual squinting for reasons that are idiotic, immature, and self-serving.  Any reasonable government official knows that the States have a compelling interest to uphold community standards of decency. All forms of parody marriage erode and threaten those standards. A reasonable observer would agree with the Court in *Schlegel* when it found "Any school boy knows that  a homosexual act is immoral, indecent, lewd, and obscene. 416 F. 2d 1372 at 1378.  Adult persons are even more conscious that this is true."  Community Standards of decency do not evolve, and they do not change. Standards are unmovable.  "To simply adjusts the definition of obscenity to social realities has always failed to be persuasive  before the Courts of the United States."[29]   It would be in the public's best interest if the Mississippi Attorney General grew a backbone, stopped pandering, and refused to defend against the Plaintiffs' Establishment Clause claims just as Attorney General Holder refused to defend DOMA  § 3 in *United States v. Windsor*,  133 S. Ct. 2675, 186

---

[29] *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966). Basically the Secular Humanists on the bench have given us the decisions in *Dred Scott v. Sandford*, 60 U.S. 393 (1857),  *Roe v. Wade*, 410 US 113 (1973), and *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) under this phony "living Constitution" approach that that amounts to an absolute abuse of the Substantive Due Process Clause of the Fourteenth Amendment. The Substantive Due Process Clause was not designed to be an unchecked well spring of judicial policy making. Secular Humanist Judges who are misusing Substantive Due Process Clause to shoehorn fake rights into a reality that are based on unproven faith based assumptions that are at the very least implicitly religious are hijacking the Constitution, disregarding the Establishment Clause, and engaging in verifiably punishable acts of seditious treason that both the Department of Justice and Congress must be responsive to with force.

L. Ed. 2d 808 (2013).[30]  That way the Plaintiffs would not have to continue to do the Attorney

General's job for him in this controversy and several others.

### The Amended Complaint Sets Forth An Insurmountable Cause that Gay Marriage Policy And Sexual Orientation Discrimination Statutes Violate the Establishment Clause For Failing The Prongs Of Lemon

Just to underscore the fact that the Defendants will not prevail, the Plaintiffs will address

whether or not the Court has subject matter jurisdiction here under the Establishment Clause

claims. The Defendants positions that the complaint fails to state a claim in view of the high

burden legal standard are impertinent, insubstantial, imperialistic, and unprofessional at best.

Besides promoting obscenity, legally recognized marriage and the faith-based assertion that

"sexual orientation is a matter of civil rights" are religious concepts flowing from the church of

moral relativism and secular humanism.  The Court must at the very least enjoin the State

because legally respected gay marriage puts "religion over non-religion."[31] The First Amendment

to the United States Constitution, as applied to the States through the Fourteenth Amendment,

---

[30] The Plaintiffs in this action - and in others -  are without apology openly calling upon the Governor and Attorney General of this state to do as Attorney General Holder did in *United States v. Windsor*,  133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013).  Just as Attorney General Holder refused to defend DOMA § 3 upon request, the Plaintiffs request that the Defendants refuse to defend against the Plaintiffs claims under the Establishment Clause. The difference with the distinction is that DOMA § 3 was at all times Constitutional because the Establishment Clause is the legal basis for it and gay marriage is entirely unconstitutional under the Establishment Clause.  The greater lie involved in this controversy is that the gay rights movement is parallel to the civil rights movement lead by Dr. Martin Luther King Jr.. Dr. King was not asking that the United States be less Christian; he was demanding that the United States move back towards a deeper Christianity.  The master narrative of the Equal Protection and Substantive Due Process Clause as it relates to the race-based civil rights movement is Genesis 1:27.  The Master Narrative of the fake gay civil rights movement is economic opportunists who deeply believe that there is no such thing as absolute truth, just like the Nazis' did as they set out to implement the "final solution to the jewish question." If the Defendants managed to muster the character to tell the truth instead of floating inconsistent and self-defeating arguments by agreeing that gay marriage has been a complete disaster for the state, it would then mean that Judiciary would itself have to emerge as the defacto attorney for the ACLU and appear as defense counsel to defend its baby "gay marriage" from being aborted under a straightforward application of the Establishment Clause. But of course, it is the job of the Judiciary to at least pretend to be neutral, but it is completely obvious that the secular humanists on the bench are incapable of doing that because they have banked their entire lives and identity on the arrogant assumption that there is no such thing as absolute truth.

[31] *Lee v. Weissman*, 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)(Souter, Justice, concurring)(citing *County of Allegheny v. ACLU*, 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)

provides that "Congress shall make no law respecting an establishment of religion." U.S.

CONST. amend. I.[32]  The Establishment Clause was never designed to just single out

"institutionalized religions," like Christianity and Judaism, which tends to parallel transcultural

self-evident truth that serves as the master narrative of the Constitution itself.[33]  The

Establishment Clause also was designed - if not more so - to prohibit the government from

legally codifying the truth claims floated by "non-institutionalized religions" as well, to include

the truth claims asserted by the religion of postmodern western moral relativism and expressive

individualism. [34]

---

[32]  This provision, among other things, "prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" *County of Allegheny,* 492 U.S. at 574 (quoting *Lynch v. Donnelly,* 465 U.S. 668, 687 (1984)(O'Connor, J., concurring)).  The government must "remain secular" and must "'not favor religious belief over disbelief.'" Id. at 610.  All "religion" amounts to is a a set of answers to the greater questions, like "why are we here" and "what should humans be doing." "Religion" is, therefore, a set of unproven truth claims and naked assertions that can only be taken on faith. (See DE 60 Pastor Cuozzo;  ¶¶ 1-21;  DE 77 Pastor Farr ¶¶ 1-33).

[33]  The Defendants imperialistically alleged in their motion to dismiss that "issuing marriage licenses is secular conduct that does not have a predominantly religious purpose, it does not have the effect of advancing or inhibiting religion, and it does not foster any entanglement with religion."  "Secularism" is having a full blown crisis because as it turns out there is hardly anything "secular" about "secularism." Just because "Secular Humanism" i.e. postmodern western individualistic moral relativism has the word "secular" in the title, does not make it "non-religious." The Establishment Clause was never designed to simply single out institutionalized religions. No indeed! The Establishment Clause was also designed to prevent moral relativists from enshrining their idiotic, implausible, and faith-based policies as if they were part of an immutable reality. The Plaintiffs agree with the Defendants that it takes a huge amount of faith to believe that a man can marry a man or that a man can marry an object and it is not questionably moral, real, obscene, and legal. The faith it takes the same kind of religious faith to believe that man-man marriage is real, moral that it takes to believe that plural marriage and man-object marriages are. This precisely one of the reasons why the Plaintiffs have standing to make the case that gay marriage policy and practices violate the Establishment Clause

[34]  After all, the religion of moral relativism has been the catalyst for most of the worst atrocities since the inception of humanity.  Currently, "secularism" is having a full blown crisis because "secularism" is a "religion" in most respects that only pretends to be neutral. The testimony of ex-gays proves that "homosexuality" is a religion. (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶  1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families. Just as there is no real proof of a "rape gene," there is no proof of a "gay gene" either.  No one can really prove or disprove that they were born in the wrong body, which makes such an assertion religious in nature.  Even the idea of a person "coming out of an invisible closest" to be baptised as "gay" is totally faith based.  Just as "atheism is a religion for First Amendment purposes" under *Wells v. City and Cnty. of Denver,* 257 F.3d 1132 (2001), homosexuality, zoophilia, polygamy, and machinism are a different variation of the atheist religion and are categorically unrecognizable for "First Amendment purposes." The Supreme Court has already weighed in on this issue in *Torcaso v. Watkins,* 367 U.S. 488 (1961) holding that "among religions in this country, which do not teach what would generally be considered a belief in the existence of God, are Buddhism, Toaism, Ethical Culture, Secular Humanism, and others.

As set forth in the amended complaint, the Lemon test is the absolute death nail to legally recognized gay marriage and the enforcement of any civil right statute that pretends that "gay-rights" are "civil rights," like "race-rights" are. [35] "To pass muster under the Establishment Clause, a practice must satisfy the Lemon test, pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602 (1971)).  Government action "violates the Establishment Clause if it fails to satisfy *any* of these prongs." *Edwards*, 482 U.S. 578 at 583; *Agostini v. Felton*, 521 U.S. 203, 218 (1997)(Emphasis added).   The Plaintiffs' amended complaint taken with the public record - alone - shows that legally recognized marriage fail all three, which forces this Court to enjoin regardless of its personal values. [36]

**Prong One:**  The government's legal recognition of gay marriage violates prong one of lemon because it is not "secular" and because it is the ultimate "sham" for purposes of the Establishment Clause. [37]   As set forth in the amended complaint, there are at least <u>seven</u> reasons why legally recognized gay marriage violates prong one of Lemon.  <u>First</u>, nobody is going to jail or losing their job in protest of Clerks, like Kim Davis, issuing marriage licenses to "one man

---

So there you have it. The LGBTQ church, just like the Polygamy, Zoophile, and Machinism, denominations are part of the religion of secular humanism, atheism, postmodern western moral relativism, expressive individualism, and "others."# By legally recognizing gay marriage, this state is violating the Establishment Clause.

[35] The Lemon test in this action is applicable because this is not one of those "borderline cases" like in *Van Orden v. Perry*, 545 U.S. 677 (2005).  In the face of insurmountable evidence, legally recognized gay marriage manages to fail all three prongs of lemon by a landslide.

[36] The Court's job is to apply the law to the evidence and not apply the law in a way that it feels it ought to have been written.

[37] At the core of the "Establishment Clause is the requirement that a government justify in secular terms its purpose for engaging in activities which may appear to endorse the beliefs of a particular religion." *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*, 698 F.2d 1098, 1111 (11th Cir. 1983).  This secular purpose must be the "pre-eminent" and "primary" force driving the government's action, and "has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary Cnty*, 545 U.S. at 844 - 864.  (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶ 1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

and one woman" because "man-woman" marriage is the only secular, real, natural, neutral, and non-controversial form of marriage. *Sevier v. Davis* 17-5654 (6th Cir. 2017). As Chief Justice Roberts pointed out in his Dissent in *Obergefell*, "man-woman" marriage is the only secular dictionary definition that is natural, neutral, and non-controversial.[38] No amount of intellectual squinting will convert the secular dictionary into a religious doctrine. The Plaintiffs stipulate that "man-animal," "man-object," "man-multiperson," "man-man," and "woman-woman" marriage are all equally controversial and are all equally <u>not</u> secular from a legal and factual perspective rendering substantive due process justification intellectually dishonest.[39] Man-man and person-object marriage are at the very least equally implausible, faith-based, and non-secular from a legal perspective.

---

[38] Traditional marriage arose out of the "the nature of things" and did not arise out of a desire to acquire political power and to use government as a tool to show the irresponsible gospel of moral relativism down the throats of our citizens. (Roberts dissent page 5). See G. Quale, A History of Marriage Systems 2 (1988); cf. M. Cicero, De Officiis 57 (W. Miller transl. 1913). *Obergefell* at 5 (Roberts Dissent). Roberts in his dissent in *Obergefell* also stated: "In his first American dictionary, Noah Webster defined marriage as "the legal union of a man and woman for life," which served the purposes of "preventing the promiscuous intercourse of the sexes, . . . promoting domestic felicity, and . . . securing the maintenance and education of children." 1 An American Dictionary of the English Language (1828). Id.

[39] In truth, legally recognized gay marriage came about as a result of a series of irrelevant emotional appeals advanced by homosexuals in collusion with evolutions on the bench and the liberal media who at all times had ulterior political and religious motives in the execution of unprecedented abuse of process that has cultivated in catastrophic results to the public's health and to fundamental liberty interests, advancing a sexual holocaust in an effort to marginalize Christians and other non-observers of the latest en vogue version of moral relativism. A civil religion based upon majoritarian principles floated by the LGBTQ church is precisely an evil that the Establishment Clause prohibits. Yet, one argument that the Defendants could make comes under *Lemon v. Kurtzman*, 403 U.S. 602 (1971). In attempting to justify the legal recognition of gay marriage, the Defendants could argue that the gay marriage union fulfills a secular purpose to honor certain beliefs about sex, marriage, and morality to cultivate "ennoblement," and to make homosexuals feel less guilty and inadequate about their lifestyle which many reasonable people see as depersonalizing and dehumanizing for self-evident reasons, just like rape by trick is. Yet, the Constitution does not care if individuals feel secure about their faith-based religious beliefs on morality. Our government was never designed to be used to make people feel better about their religious worldview. Our "Government" is not a "redeemer." Our government is not a "church." Secular Humanist can take their guilt elsewhere and stop looking to government for religious affirmation. Attempts to achieve ultimate secular objectives, however, though inherently religious means, do not satisfy the Constitutional secular purpose requirement of Lemon. This argument has consistently been rejected, including in *Holloman v. Harland*, 370 F.3 1252 (11th Cir. 2004). The Majority in *Obergefell* did not even attempt to hide their objective in their opinion, which was built completely on emotion and not sound legal reasoning.

Second, the fact that homosexuality was basically illegal until the 2003, when *Lawrence* overturned *Bowers* is a history that shows that gay marriage is nothing more than a non-secular sham for purposes of the Establishment Clause.[40]  The history of homosexuality cuts against legally recognized gay marriage under lemon in a manner that is fatal.[41] The fake gay civil rights movement has no historical significance in America other than it has always been classified as categorically obscene. "Any school boy knows that  a homosexual act is immoral, indecent, lewd, and obscene.  Adult persons are even more conscious that this is true."*Schlegel*, 416F.2d 1372 at 1378. The Plaintiffs agree with the Defendants that all forms of parody marriage are equally obscene and that the states have a compelling interest to uphold community standards of decency, which all parody forms of marriage threaten equally.  This is why the marriage bans, DOMA § 3, and the Establishment Clause bar the government from honoring any form of parody marriage, not just gay marriage.

Third, the fact that (1) religious persecution has been on the rise in the wake of *Obergefell* at an unprecedented rate of "salt of the earth" Christians and that (2) there has not been this land rush for homosexuals to marry insurmountably demonstrates that gay marriage is a "political power play" and a "non-secular sham" to keep persons of conviction - namely Christians who vote Republican - out of the public square and silenced in step with a calculated "chilling effect" that cannot stand and serves as a basis for sedition. [42] The amended complaint

---

[40] *Lawrence v. Texas*, 539 U.S. at 579  overturned *Bowers v. Hardwick*, 478 U. S. 186 (1986)
[41] Likewise, the fact that homosexuality remains obscene under the obscenity codes cuts against homosexuality. *Manuel Enterprises Inc. v. Day*, 370 U.S. 478 (1962).  Legally recognized gay marriage and fake gay civil rights statutes are an arrogant act of moral superiority that are the poster child of nonsecular shams for purposes the First Amendment Establishment Clause from the perspective of any "reasonable observer." *Trunk v. City of San Diego*, 629 F.3d 1099 (9th Cir. 2011).
[42] Two years after *Obergefell* and there has hardly been the "land rush" in gay marriage that was promised. The raw numbers tell the tale. Prior to the *Obergefell* decision two years ago, the 7.9 percent of gays who were married would have amounted to 154,000 married gay couples. Two years later, this had grown to 10.2 percent or 198,000 married couples.  This is not the land rush we were told to expect by the manipulative Majority in *Obergefell* who

sets forth that in the wake of the *Obergefell* and *Windsor* judicial putsch:  (1) Fire Chiefs have

been fired;[43] (2) The Chief Justice of the Alabama Supreme Court have been subjected to

prosecution by the ethics commissions and suspended;[44] (3) County Clerks have been thrown in

jail and subjected to merciless civil litigation;[45] (4) Christian Florists have been sued for

providing artistic services in support of gay marriage ceremonies;[46] (5) Christian Bakers have

been sued for refusing to use their artistic talents to design wedding cakes for gay marriage

ceremonies;[47] (6) Law Professors have been harassed, bullied, and threatened for believing that

gay marriage is immoral and unconstitutional;[48]  (7) Ex-gay conventions have been disrupted by

people who will not tolerant the idea that homosexuality is not immutable due to a spectacular

state of denial;[49] (8) Christian ranchers have been sued in civil court for refusing to host gay

weddings on their farms.[50] In view of rampant Nationwide persecution of Christians, the

evidence shows that legally recognized gay marriage might be the greatest "non-secular sham" to

ever offend the Establishment Clause, since the inception of American Jurisprudence. *Obergefell*

*v. Hodges,* 135 S.Ct. 2584 (2015) must immediately be overruled or the United States can no

longer call itself a Constitutional Republic. <u>Fourth</u>, also in terms of statistics, the transgender

suicide rate is spiraling out of control and gay marriage codification has made it worse.[51] The

---

always had dishonest, self-serving, and religious motives to begin with, as they attempt to misappropriate
government to enshrine their own private moral code that is truly
asinine.http://www.washingtonexaminer.com/two-years-after-obergefell-no-land-rush-on-gay-marriage/article/2629
142
[43] http://www.nationalreview.com/corner/428779/federal-court-keeps-atlanta-fire-chiefs-case-alive
[44] http://www.cnn.com/2016/09/30/politics/alabama-chief-justice-suspended/index.html
[45] www.npr.org/sections/thetwo-way/2017/05/03/526615385/gay-couples-lawsuit-against-kentucky-clerk-is-back-on-after-appeals-court-ruling
[46] http://www.theblaze.com/news/2017/02/17/christian-florist-who-refused-to-make-gay-wedding-arrangements-to-take-case-to-u-s-supreme-court
[47] https://www.nytimes.com/2017/06/26/us/politics/supreme-court-wedding-cake-gay-couple-masterpiece-cakeshop.html
[48] http://www.vanderbiltpoliticalreview.com/the-carol-swain-petition-hurts-the-cause-more-than-it-helps-but-theres-a-better-way/
[49] https://www.lifesitenews.com/blogs/if-gays-are-so-tolerant-why-are-they-disrupting-an-ex-gay-conference
[50] http://www.theblaze.com/news/2014/08/21/judge-fines-christian-farm-owners-13000-for-refusing-to-host-gay-wedding/
[51] Dr. Cretella, The American College of Pediatricians (ACPeds), is a declarant in this action who just stated in an
interview on Tucker Carlson that the teen transgender surgery is child abuse;  DE 8 Dr. King ¶¶ 1-20;  DE 4 Dr.
Cretella  ¶¶ 1-20:  https://youtu.be/WP2OAS1nRio

State's decision to issue gay marriage license and to enforce fake sexual orientation civil right statutes is not an act of "love" but an omission that they support transgender teen suicide because it childishly ratifies the plugging of our citizens into deeper darkness.[52]  Meanwhile, the ex-gays and ex-transgenders who are present in this action as ambassadors of the truth want others to know - especially minors - that they can leave the LGBTQ lifestyle, like they did - if they want to.[53]  For the Government to pretend that homosexuality is "immutable" and the idea that "if someone opens the door to the lifestyle, they can never leave it behind" amounts to an act of government sanctioned sexual exploitation and child abuse.[54] Secular Humanists simply fail to understand the difference between right and wrong, real and fake, and secular and non-secular because rational thought goes against their destructive objectives which has at all times been implausible as themselves Defendants argued ad nauseam.  Fifth, the fact that moral relativist on the bench pretended that "gay rights" were "civil rights" in order to shoehorn homosexual moral relativism into a government recognized reality - alone - proves that legally recognized gay marriage is a "non-secular sham" for purposes of the Establishment Clause.[55]  It is the "lie" floated by intellectually dishonest homosexuals in collusion with atheistic justices that totally renders gay marriage a "nonsecular sham" for purposes of the Establishment Clause.  Just as it was "'self-evident' that Chief Justice Moore's purpose in displaying the [religious] monument [of the ten commandments] was non-secular," it is self-evident that the reason why the judges on *Obergefell* Court shoehorned that gay marriage into a Fourteenth Amendment narrative was

---

[52] https://williamsinstitute.law.ucla.edu/wp-content/uploads/AFSP-Williams-Suicide-Report-Final.pdf
[53] (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶  1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families
[54] DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20
[55] (DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50;  DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶ 1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo;  ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

because they were trying to misuse government themselves to enshrine the religion of moral relativism that they too believe in step with their faith-based worldview. *Glassroth,* 335 F.3d at 1287.  <u>Sixth</u>, the State's legal recognition of gay marriage absolutely proliferates pervasive monitoring by public authorities to ensure that citizens are indoctrinated in the religion of moral relativism and that they do not find homosexuality to be immoral, obscene, and subversive to human flourishing.  *Agostini,* 521 U.S. 203 at 206.  The Plaintiffs and other non-observers have been subjected to relentless social and governmental harassment for not believing in homosexual orthodoxy, as they pled in their amended complaint.

   <u>Seventh</u>, legally recognized gay marriage is a "non-secular sham" because it has not created more tolerance and unity but rather more division and persecution.[56]   Because that "stated purpose [has] not [been] actually furthered…then that purpose [must be] disregarded as being insincere or a sham." *Church of Scientology v. City of Clearwater,.* 2 F.3d 1514, 1527 (11th Cir. 1993).  The reason why fake tolerant gays are protesting ex-gay conventions in step with their persistent intellectual blindness is because the testimony of ex-gays is fatal to the their phony civil rights narratives predicated on "immutability" and "equal protection." [57]  While homosexuals started the fake gay civil rights plight, it is the testimony of ex-gays that will destroy it for all 50 states to include this one.[58] Self-identified homosexuals can play pretend on their own time and keep our government out of it.  Our government is not a redeemer. It is not a church to explain away the nature feelings of inadequacy and shame that flow to those who open

---

[56]  Legally recognized gay marriage has promoted (1) intellectual darkness, (2) sexual exploitation, (3) the normalization of false permission giving beliefs about sex that erodes consent, and (4) a moral superiority complex in imperialistic moral relativist that is as equally dangerous, depersonalizing, and dehumanizing as the moral superiority complex manifested by Islamic jihad. Go figure.

[57]  https://www.lifesitenews.com/blogs/if-gays-are-so-tolerant-why-are-they-disrupting-an-ex-gay-conference

[58](DE 3-5 Quinlan ¶¶ 1-37;  DE 3-4 Pastor Cothran ¶¶ 1-50; DE 3-1 Dr. King ¶¶ 1-20;  DE 3-3 Dr. Cretella  ¶¶ 1-20; DE 3-6 Goodspeed ¶¶ 1-20; DE 3-2 Grace Harley ¶¶ 1-25; DE _ Kohl ¶¶ 1-12; DE 10 Pastor Cuozzo; ¶¶ 1-21;  DE 11 Pastor Farr ¶¶ 1-33;;  DE 34 Pastor Cairns ¶¶ 1-33). See Amicus Brief of Garden State Families

the door to the LGBTQ ideology and lifestyle. In light of these factors, to pretend that legally recognized gay marriage is secular and not a total sham "bucks common sense." *McCreary Cnty.*, 545 U.S. at 866; see also *Books v. City of Elkhart*, 235 F.3d 292 (7th Cir. 2000). For all of the reasons that legally recognized gay marriage violates the Establishment Clause. It is not a close call. The Court's inquiry could end here because the lack of secular purpose "is dispositive." *Wallace*, 472 U.S. at 56; see, e.g., *McCreary*, 545 U.S. at 873-74; *Glassroth v. Moore*, 335 F.3d 1282, 1297 (11th Cir. 2003). The more the courts continue to play pretend and to read fake rights into the Constitution, the more the court metaphorically cuts its own throat in terms of its legitimacy.

**Prong Two:**   Legally recognized gay marriage violates the second prong of the lemon test because it constitutes a legal "tomahawk" in the hands of moral relativist and who feel licensed to hack-down, harass, and harangue anyone who has the decency, humility, and common sense to acknowledge that homosexual ideology is immoral, obscene, faith-based, and subversive to human flourishing.[59]  Under this second prong of the Lemon test, courts ask, "irrespective of the . . . stated purpose, whether [the state action] . . has the primary effect of conveying a message that the [government] is advancing or inhibiting religion." *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 771 (7th Cir. 2001).[60] There is no question that "a reasonable observer

---

[59] Just ask Jack Phillips, who is a defendant in *Masterpiece Cakeshop ltd. v. Colorado Civil Rights Commission*, 16-111 (S.Ct. 2016) or Kim Davis, who is a defendant in *Miller v. Kim Davis*, No. 15-5880 (6th Cir. 2016).
[60] The "effect prong asks whether, irrespective of government's actual purpose," *Wallace*, 472 U.S. at 56 n.42, the "symbolic union of church and state...is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *School Dist. v. Ball*, 473 U.S. 373, 390 (1985); *see also Larkin v. Grendel's Den*, 459 U.S. 116, 126-27 (1982)(even the "mere appearance" of religious endorsement is prohibited). By the states' arbitrarily giving marriage licences to self-identified homosexuals based on their self-asserted beliefs on morality, sex, and marriage and not to machinists, zoophiles, and polygamists based on theirs, the states go beyond "mere appearance" and fails the effects test of lemon entirely. The gay marriage licenses - themselves - amount to the government's stamp of approval of the religion of moral relativism as irrefutable and supreme.

would perceive [the marriage license provided to self-identified homosexuals] as projecting a message of religious endorsement," especially when marriage licenses are not provided to polygamists and machinists for reason that can only be described as arbitrary. *Trunk*, 629 F.3d at 1118. The same line of reasoning invalidates any transgender bathroom policy and fake sexual orientation civil rights statute, like CADA which is the statute that Jack Phillips has been sued under and which is incredibly unconstitutional under this prong of Lemon.[61] The unconstitutional codification of the fake gay civil rights movement amount to an indefensible "legal weapon that no [Christian] or [non-believer in moral relativism] can obtain." *City of Boerne v. Flores*, 521 U.S. 507 (1997). A "gay marriage license" issued by the state amounts to a government issued "license to oppress" non-observers to the latest version of Human Secularism. So does fake civil rights statutes that this state may have lurking in the code. Furthermore, the "starkly religious message of the [LGBTQs] supporters would not escape the notice of the reasonable observer," especially, when machinists and polygamists are arbitrarily denied a marriage license because their beliefs n marriage, sex, and morality are less popular or due to restrictions that are arbitrary, if gay marriage is legally recognizable.[62] In short, the government's effort to codify the truth claims floated by the LGBTQ church through legally recognized gay marriage and sexual orientation discrimination statutes fail the the lemon test by a landslide.

**Prong Three:** In terms of prong three, the amended complaint shows that the Defendants have violated it. The government's legal recognition of gay marriage fosters

---

[61] See *Colorado Civil Rights Commission v. Masterpiece Cakeshop Ltd*, 16-111 (SCT 2017);; see *Sevier v. Hickenlooper*, 1:17-cv-1750 (COD 2017);; *Harley v. Masterpiece Cakeshop Ltd.*, 1:17-cv-1666 (COD 2017).
[62] *Trunk v. City of San Diego*, 629 F.3d 1099, 1120 (9th Cir. 2011). *See also Am. Atheists, Inc. v. City of Starke*, 2007 U.S. Dist. LEXIS 19512 (M.D. Fla. 2007).

excessive entanglement with religion because it enshrines one version moral relativism as the supreme national religion.[63]   No reasonble person could possibly deny that the LGBTQ church's decision to provide kindergartens in public schools with LGBTQ coloring books following the wrongful codification of the fake gay civil rights movement is motivated by the LGBTQ church's paramount desire to recruit the youth to join their church that remains categorically obscene, irrational, sexually exploitative, and does not even check out with the human design. The LGBTQ church's goal is to "convert and target children while they are young and impressionable." The Supreme Court has emphasized that there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools." *Lee*, 505 U.S. at 592, and the federal courts have thus "been particularly vigilant in monitoring compliance with the Establishment Clause" in the public-school context, see *Edwards*,482 U.S. 578- 583. Distributing marriage licenses to self-identified homosexuals has given license to the LGBTQ church to infiltrate public schools to (1) promote sexual confusion; (2) normalize false permission giving beliefs about sex; (3) erode consent, (4) reverse right and wrong, and (5) indoctrinate minors who have overly conformed to societies messages on homosexuality dogma that once they join the LGBTQ church, they can never leave. Such intellectually dishonest amounts to government sponsored child abuse that is intellectually,

---

[63] *In re Young*, 141 F.3d 854 (8th Cir 1998); *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007).   A decision about whether the Establishment Clause is violated cannot entail a decision about the ultimate usefulness of the of religion of moral relativism flowing from the LGBTQ church; the sole question must be whether the State's aid and endorsements can be squared with the dictates of the Constitution.  *Americans United for Separation of Church &. State v. Prison Fellowship Ministries,.*432 F. Supp. 2d 862 (S.D. Iowa 2006). They cannot.  Doctrinal entanglement involves government in religion's very spirit, in its core decisions on matters of belief cannot be justified. *Duffy v. State Personnel Board*, 232 Cal. App. 3d. 1, 17 (Cal. App. 1991).  For the government to unilaterally enshrine one form of parody marriage and to promote the LGBTQ religion does more than "end debate" and "close minds" as the Honorable Justice Roberts found, it is uses a based for coercion and to use government to proselytize minors and the unwary into joining the LGBTQ's congregation, cultivating in hardcore opportunity costs and a reduced quality life that arguably is marked by settling for less, suffering, and even death. *Obergefell* at 27 (Roberts Dissenting).

emotionally, spiritually, and sexually exploitative. There are millions of Americans who do not want their taxpayer dollars going towards the LGBTQ church's efforts to indoctrinate at elementary schools.[64]  Further, the Defendants are guilty of providing a "constellation of benefits" to self-identified homosexuals based on their identity narratives that pays respect to the religion of secular humanism and absolutely entangles the government with Secular Humanism[65] In short, the state's legal recognition of gay marriage and the state enforcement of fake sexual orientation civil rights statutes violates the Establishment Clause every which way one looks.

## CONCLUSION

The Defendants motion to dismiss is frivolous and should be stricken under Fed. R. Civ. P. 12(f) for being impertinent. This is an "actual controversy" that meets the standard in *Golden v.*

---

[64] Legally recognized gay marriage and fake sexual orientation civil rights statutes are not really providing dignity to self-identified homosexual adults, but they are causing the government itself to promote the sexual exploitation of minors in violation of its own obscenity codes that Governor and Attorney General are charged to enforce. Yet, if gay marriage is legally valid, then so are other forms of parody marriage, and the Plaintiffs will naturally want machinism and polygamy coloring books in elementary schools as well  as a matter general equality: then it can be said that "love wins."  By all measures, the Defendants' recognition of gay marriage at the expense of other parody forms constitutes impermissible direct support or the establishment of the narrow and exclusive religion of moral relativism advocated by the LGBTQ church.  Whether participation is coerced in supporting the plausibility of gay marriage, the government's legal recognition of gay marriage is a measure that taxpayers cannot be compelled to support.

[65] The final reason that gay marriage was imposed was because the Majority found that the self-identified homosexuals deserved a "constellation of benefits" to pay respect to their ideological faith-based identity narratives. Yet, because self-identified homosexuals are afforded benefits based on their self-asserted sex-based identity narrative which is predicated on a series of unproven faith based assumptions, the Plaintiffs as self-identified polygamists and machinists have absolute standing under a second basis under the Establishment Clause to enjoin the state for discriminating against "religion and religion," since the Plaintiffs are denied that same "constellation of benefits" based on their implicitly religious self-asserted sex-based identity narrative for reasons that can only be described as arbitrary.  *Obergefell* at 4 and 17;; *McCreary Cnty*, 545 U.S. at 844 - 864; *Engel*. 370 12 U.S.  431 - 436.   Homosexuality, polygamy, zoophilia, and machinism are all merely different denominational sects within the overall church of secular humanism, western postmodern moral relativism, and expressive individualism.# The Plaintiffs are entitled to the same "constellation of benefits" that homosexuals are but a Constitutional problem remains. The evidence shows that to legally recognize polygamy and machinism marriage in order to save legally recognized gay marriage would only further violate the Establishment Clause by continuing to put "religion over non-religion."  As members of the true minority of the church of secular humanism, the Plaintiffs have standing to move - and do move - to enjoin the state from legally recognizing gay marriage in the restoration of the Constitution, to untangle the government's attachment to the religion of Secular Humanism. There are millions of Americans who object to their tax dollars going to support the LGBTQ ideology. The fact that benefits are going to the LGBTQ believers who legally marry violates prong three of lemon for excessive entanglement.

*Zwickler*, 394 U.S. 103, 110 (1969). The Plaintiffs' amended complaint meets the legal standard.

The Defendants are asked to concede that the Plaintiffs Establishment Clause claims are

Constitutionally controlling and to stop offering irrational and self-defeating arguments.


/s/Chris Sevier Esq./
THE SPECIAL FORCES OF LIBERTY
9 Music Square South, 247
Nashville, TN 37203
(615) 500 4411
BPR#026577
6064 Marshalee Drive,
Elkridge, Maryland 21075
ghostwarsmusic@gmail.com
OP Bravo Two Zero

## CERTIFICATE OF SERVICE

A true copy of the foregoing will be served electronically via ECF upon all counsel of record and is also being served via First Class Mail and/or electronic mail upon the following on this the 10th day of December 2017: Monica N. Kovaci Arapahoe County Attorney's Office-Littleton 5334 South Prince Street Littleton,CO 80120-1136303-795-4636 Fax: 303-738-7836 Email: mkovaci@arapahoegov.com;; MatthewDavid Grove Colorado Attorney General's Office Ralph L.Carr Colorado Judicial Center 1300 Broadway Denver, CO 80203 720-508-6000 Fax: 720-508-6032 Email: matt.grove@coag.gov


/s/Chris Sevier Esq./