IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKBSURG

**RICHARD PENKOSKI,**
**JOHN GUNTER, Jr.,**
**WHITNEY KOHL,**
**JOAN GRACE HARLEY,**
**and CHRIS SEVIER,**

        **Plaintiffs,**

v.                                         Civil Action No. 1:18-CV-10
                                               (JUDGE KEELEY)

**JIM JUSTICE, in his official capacity**
**as Governor of West Virginia,**
**PATRICK MORRISEY, in his official**
**Capacity as Attorney General of West**
**Virginia, and**
**JEAN BUTCHER, in her official**
**capacity as the Clerk of Gilmer County,**

        **Defendants.**

## REPORT & RECOMMENDATION

This matter is before the undersigned pursuant to the Order of Referral entered by Senior Judge Irene M. Keeley on January 18, 2018. (ECF No. 13). Pending before the court is Plaintiffs' Amended Complaint, filed March 9, 2018, (ECF No. 62), and Defendants Justice and Morrisey's motion to dismiss same for "lack of jurisdiction and lack of service, or [failure to] state a claim for which relief can be granted" (ECF No. 69) and a supporting memorandum of law. (ECF No. 70). On April 27, 2018, Plaintiffs filed an unopposed motion for additional time to respond to the motion to dismiss, (ECF No. 74), which was granted as to Plaintiffs Harley, Penkoski, Kohl, and

1

Sevier. (ECF No. 83). Subsequently, on April 30, responses were filed by Plaintiffs Penkoski (ECF No. 77), Kohl (ECF No. 79), and Sevier (ECF No. 80).[1] On May 29, 2018, Defendants Justice and Morrisey filed a reply. (ECF No. 85). Accordingly, all briefing now concluded, this matter is now ripe for a report and recommendation to the District Judge.

With this case, the Northern District of West Virginia becomes the latest in a long line of district courts Plaintiffs have burdened by filing substantially similar complaints[2] prior to and in the wake of Obergefell v. Hodges. 576 U.S. ___, 135 S.Ct. 2584 (2015). In Obergefell, the Supreme Court held that same-sex couples may not be denied the right to marry on both Due Process and Equal Protection grounds, and that states must recognize lawful same-sex marriages performed in other states. Most of those cases are now resolved; though – notably – none in Plaintiffs' favor. Some were dismissed for failure to prosecute or follow local rules; some for

---

[1] Plaintiff Harley also filed a response on April 30, 2018, (ECF No. 75), which was stricken for failure to conform with the requirements of this Court's local rules. Harley was granted additional time (ten days) in which to file a response in conformity with the Local Rules, but failed to do so. (ECF No. 83 at 3-4).

[2] See, e.g., the following cases, which is not an exhaustive list:

| Civil Action No. | Caption | District Court | Date Filed | Date Closed |
|---|---|---|---|---|
| 1:14-CV-5380 | Sevier v. Cuomo et al. | New York Southern Dist. | 07/15/2014 | 10/07/2014 |
| 3:2016cv00134 | Sevier v. Haslam et al | Tennessee Middle District | 02/03/2016 | 04/27/2016 |
| 4:2016cv00347 | Sevier v. Abbott et al | Texas Southern District | 02/09/2016 | 06/08/2016 |
| 2:2016cv00124 | Sevier v. Herbert et al | Utah District | 02/16/2016 | 06/20/2016 |
| 3:2016cv00665 | Sevier v. Haley et al | South Carolina District | 03/01/2016 | 08/11/2016 |
| 2:2016cv00386 | Sevier v. Herbert et al | Utah District | 05/09/2016 | 09/21/2016 |
| 1:2016cv03633 | Sevier v. Jewell et al | New York Southern Dist. | 05/16/2016 | 08/25/2016 |
| 1:2016cv03701 | Sevier v. Jewell et al | New York Southern Dist. | 05/18/2016 | 05/23/2016 |
| 2:2016cv00659 | Sevier v. Thompson et al | Utah District | 06/20/2016 | 03/16/2018 |
| 0:2016cv00080 | Sevier v. Davis et al | Kentucky Eastern District | 07/01/2016 | 03/31/2017 |
| 1:2017cv00570 | Sevier v. Lowenthal et al | District Of Columbia Dist. | 03/23/2017 | 03/26/2018 |
| 1:2017cv01666 | Harley et al v. Masterpiece Cake… | Colorado District | 07/10/2017 | 01/18/2018 |
| 1:2017cv01750 | Sevier et al v. Hickenlooper et al | Colorado District | 07/19/2017 | 01/18/2018 |
| 2:2017cv01473 | Sevier et al v. Ivey et al | Alabama Northern Dist. | 08/30/2017 | 04/30/2018 |
| 3:2017cv05046 | Sevier et al v. Brown et al | California Northern Dist. | 08/30/2017 | 02/26/2018 |
| 3:2017cv00177 | Gunter et al v. Bryant et al | Mississippi Northern Dist. | 09/14/2017 | |
| 4:2017cv00598 | Kohl et al v. Hutchinson et al | Arkansas Eastern District | 09/15/2017 | |
| 1:2017cv00700 | Sevier v. Gov. of Ohio | Ohio Southern District | 10/20/2017 | 05/18/2018 |
| 1:2017cv00255 | Sevier v. Bergum et al | North Dakota District | 10/23/2017 | 11/27/2017 |
| 5:2017cv01154 | Sevier v. Fallin et al | Oklahoma Western Dist. | 10/24/2017 | 11/29/2017 |
| 3:2017cv03073 | Harley v. Abbott et al | Texas Northern District | 11/07/2017 | 02/23/2018 |
| 1:2018cv00010 | Penkoski v. Justice et al | West Virginia Northern | 01/16/2018 | |
| 2:2018cv00019 | Goodspeed v. Wyoming | Wyoming District | 01/26/2018 | 02/01/2018 |

disobeying court orders, and some for frivolity or lack of merit. Like the many district courts who have come before, the undersigned recommends that Defendant's motion to dismiss Plaintiffs' amended complaint be granted, and Plaintiffs' amended complaint dismissed with prejudice, for the reasons explained in more detail below.

### I. The Parties' Contentions and Factual Background

**1. Plaintiffs' Amended Complaint**

In their Amended Complaint, all five Plaintiffs seek "a declaration and injunction to enjoin the state from legally recognizing gay marriage for violating the first amendment establishment clause [sic] for (1) constituting a non-secular sham, for (2) serving as an [sic] defensible legal weapon against non-observers, and for (3) excessive entanglement of government with the religion of secular humanism." (ECF No. 62 at 3-4).

In the alternative, "under FRCP 8(e)(2) [] Plaintiffs [Sevier, Harley, Kohl, and Gunter] seek to force the government to legally recognize polygamy and man-object marriage, if marriage is a matter of civil rights." Id. at 4. This claim in the alternative stems from the alleged refusal of the Clerk of Gilmer County to issue marriage licenses for which Plaintiffs Sevier and Gunter applied. (ECF No. 62 at 5). Sevier sought to have his purported New Mexico marriage to an object recognized by the State of West Virginia; or in the alternative, to be issued a new license for same. (ECF No. 62 at 5, fn. 1). Gunter sought to be issued a marriage license to marry two people (Harley and Kohl). (ECF No. 62 at 5, fn. 2).

Plaintiffs' Amended Complaint included a list of eighteen specific requests for declaratory and injunctive relief, labeled by alphabetical letter. (ECF No. 62 at 34-36). This list contains items A – M, two items both labeled as "I," and on the following page, items U – X:

3

    A. Enter a declaratory judgment that all forms of marriage other than "man-woman" marriage are "non-secular" as a part of the religion of secular humanism, evangelical atheism, western postmodern moral relativism, and expressive individualism;

    B. Enter a declaratory judgment and issue a preliminary and permanent injunction against the state because the legal codification of any form of parody marriage - to include gay marriage - violates the First Amendment Establishment Clause under the *Lemon* test for (I) lacking a secular purpose, (2) creating an indefensible legal weapon against non-observers, and (3) for the excessive entanglement of government with the religion of secular humanism.

    C. Issue an injunction and a declaration that resolves that legally recognize gay marriage and the enforcement and making of transgender bathroom ordinances and statutes that treat sexual orientation as civil right puts religion over non-religion in a manner that is unconstitutional;

    D. Issue a declaration that all forms of parody marriage are part of the religion of Secular Humanism;

    E. Issue a preliminary and permanent injunction enjoining the State from legally recognizing any form of marriage other than man-woman marriage and from enforcing any statute that concerns transgender rights and gay rights and that treats sexual orientation as if it is a matter of civil rights;

    F. Enter a Declaratory Judgment that polygamy, zoophilia, objectophilia, and homosexuality are different denominational sects within the the [sic] church of postmodern western moral relativism, expressive individualism, and secular humanism;

    G. Issue a preliminary and permanent injunction, enjoining the Defendants from issuing marriage licenses to self-identified homosexuals and from enforcing statutes that suggest that sexual orientation is a civil rights matter for discrimination on the basis of religion and religion;

    H. Resolve whether the coercion test is part of prong two of the *Lemon* test;

    I. Enter a Declaratory Judgment that man-woman marriage is the only secular form of marriage, and thereby, the State can legally recognized it since it is not a non-secular sham;

    I. [sic] Enter a Declaratory Judgment and issue a preliminary and permanent injunction that reflects that man-man, woman-woman, man-object, man-animal, and man-multiperson marriages are all equally obscene and threatening to community standards of decency;

    J. Enter a preliminary and permanent injunction that enjoins the state from legally recognizing gay marriage and from enforcing statutes that treat sexual orientation as a civil right for constituting government condoned promotion of obscenity;

    K. Enter a Declaration that *Obergefell v. Hodges.* 135 S.Ct. 2584 (2015) is overturned for being an egotistic judicial putsch that is a threat to American Democracy cultivated by Black Robed Supremacists in collusion with the LGBTQ lobby and the Democratic Party;

    L. A Declaration that "love is love" is circular reasoning and that "love" without "truth" is just "shallow sentimentality;"

    M. Issue a preliminary and permanent injunction that prevents the LGBTQ church from entering into public schools and indoctrinating minors to their religious ideological worldview.

popular parody marriage requests or recognition to the same extent that they barred same-sex marriage requests and recognition;

    U. Enter an order directing Defendants to recognize, endorse, and respect marriage request and marriages beyond man-man, woman-woman, and man-woman entered into outside of this State;

    V. Enter a Declaration that all statutes that treat sexual orientation as a civil right serve to also protect self-identified polygamists and objectophiles, not just self-identified homosexuals;

    W. Award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988;

    X. Enter all further relief to which Plaintiffs may be justly entitled.

(ECF No. 62 at 34-36). The undersigned assumes Plaintiffs have either inadvertently omitted

4

items N – T, or simply mislabeled some of the items of relief sought.

### 2. Defendants Justice and Morrisey's Motion to Dismiss

Defendants argue that this case should be dismissed for "four independent reasons:"

*First*, the Eleventh Amendment excludes Plaintiffs' claims against the Governor and Attorney General from the jurisdiction of the federal courts.
*Second*, [because] Plaintiffs have failed to meet the standing requirement of Article III of the Constitution[], these claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).
*Third*, Plaintiffs' press frivolous legal arguments and fail to state any claim for which relief can be granted. Accordingly, all claims should be dismissed with prejudice under Federal Rule 12(b)(6).
*Fourth*, and contrary to Plaintiffs' representations, the Governor and Attorney General have not been served with process or with the amended complaint. The claims against them should therefore be dismissed under Federal Rule 12(b)(5).

(ECF No. 70 at 3-4).[3] Defendant Butcher has neither appeared nor made any attempt to defend in this case to date.

### 3. Plaintiffs' Responses

Plaintiffs' Penkoski, Kohl, and Sevier's responses largely reiterate information contained in their amended complaint, and generally insist that they have sufficiently pled, have taxpayer standing, and that the Court has subject matter jurisdiction. (ECF Nos. 77, 79, & 80).

### 4. Defendants' Reply

Defendants Justice and Morrissey argue in reply that mere status as a taxpayer is insufficient to confer standing, and that the Ex Parte Young exception cited by Kohl does not apply to them for lack of any sufficient act on the part of either. (ECF No. 85).

---

[3] The undersigned notes that Defendants Justice and Morrisey's memorandum of law in support of their motion to dismiss (ECF No. 70) and their reply (ECF No. 85) contain page numbers that differ from those assigned in CM/ECF, because the first two pages of same were not numbered. Accordingly, the page citations contained in this Report and Recommendation refer to the CM/ECF-assigned page numbers indicated in the header of the document, and not to Defendants' page numbers at the bottom left of each page.

## II. Analysis

Article III, Section II, Clause 1 of the Constitution provides, in relevant part, that the judicial power "shall extend to all cases . . . [and] controversies arising under th[e] Constitution [and] laws of the United States." Before a "Court can address the merits of plaintiffs' challenge, it has an obligation to assure itself that the merits question is presented in a proper Article III 'case' or 'controversy.'" Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 126 S.Ct. 1854, 1856, 164 L.Ed.2d 589 (2006). Under this case or controversy requirement, plaintiffs "must [first] establish that they have standing to sue." Clapper v. Amnesty Intern. USA, 568 U.S. 398, 408, 133 S.Ct. 1138, 1146 (2013) (quoting Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312 (1997).

In addition to the standing hurdle, relevant here, Eleventh Amendment Sovereign Immunity also operates as a limitation on a party's ability to bring suit against a state officer. Lastly, to survive a motion to dismiss, a complaint must contain plausible allegations. Because the undersigned finds that 1) Plaintiffs have not met their burden to establish standing; 2) Sovereign Immunity bars this suit against Defendants Justice and Morrisey; 3) Plaintiffs amended complaint contains no plausible factual allegations under the Twombly/Iqbal standard nor a plausible Fourteenth Amendment claim; and 4) Plaintiffs' arguments lack any discernible merit and are frivolous, Plaintiffs' amended complaint should be dismissed with prejudice in its entirety.

1. **The Ex Parte Young exception to Eleventh Amendment Sovereign Immunity permits this suit against Defendant Butcher; it does not, however, permit this suit against Defendants Morrisey and Justice because they have only general authority to enforce state laws.**

Generally, "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." Virginia Office for Protection and Advocacy v. Stewart, 535 U.S. 247, 254, 131 S.Ct. 1632, 1638 (2011). A narrow exception, however, exists when suit is necessary to for "federal courts to vindicate federal rights." Id. at 255 (quoting Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 105, 104 S.Ct. 900, 910 (1984)).

While suits against state officers for *monetary* damages are typically barred by the Eleventh Amendment, suits against state officers for *injunctive* relief are not. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), affirmed in Will v. Michigan Department of State Police. 491 U.S. 58, 109 S.Ct. 2304 (1989). "[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." Virginia Office for Protection and Advocacy at *255, *1638. Thus, "[i]n determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md. Inc. v Public Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S.Ct. 1753, 1753 (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028 (1997).

However, to be a "state officer" within the meaning of the Ex Parte Young exception, an officer of the state must have "*proximity to* and *responsibility for* the challenged state action," and not just "general authority to enforce the laws of the state." McBurney v Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) (quoting S.C. Wildlife Fed'n v. Lifehouse, 549 F.3d 324, 331 & 333 (4th Cir. 2008)). Defendants Morrissey and Justice point out that only Defendant Butcher is involved in the issuance of marriage licenses; they are not. Plaintiffs have identified no specific action on

7

the part of Justice or Morrisey that could fairly indicate they have "threaten[ed] and are about to commence proceeding to enforce against parties affected [by] an unconstitutional act." Ex Parte Young, 209 U.S. at 155-56. Accordingly, the undersigned finds that this suit is barred against Defendants Justice and Morrissey by Eleventh Amendment Sovereign Immunity, and that the Ex Parte Young exception does not apply to them; only to Defendant Butcher.

**2. Plaintiffs lack standing to bring this suit.**

Before a "Court can address the merits of plaintiffs' challenge, it has an obligation to assure itself that the merits question is presented in a proper Article III 'case' or 'controversy.'" Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 126 S.Ct. 1854, 1856, 164 L.Ed.2d 589 (2006). To have standing, plaintiffs must show injury, causation, and redressability. That is, "the plaintiff[s] must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d. 351 (1992). The burden to establish standing is on the Plaintiff[s] asserting it. Id. at 560-61.

    **a. As to their Establishment Clause claim, Plaintiffs have not alleged any injury-in-fact sufficient to confer standing because the issuance of marriage licenses to same-sex couples has no plausible nexus or logical link to any religion.**

To establish sufficient injury-in-fact, plaintiffs must show they suffered "an invasion of a legally protected interest which is (a) concrete and particularized. . ., and (b) "actual or imminent,' not 'conjectural' or 'hypothetical.'" Lujan, 504 U.S. at 560, quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). Mere disagreement is not a cognizable injury. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464

(1982) (abrogated on other grounds by Bowen v. Kendrick, 487 U.S. 589, 618-19 (1988). A party's "keen interest in the issue" is likewise insufficient. Hollingsworth v. Perry, 570 U.S. 693, 133 S.Ct. 2652, 2659, 186 L.Ed.2d 768 (2013) ("'[C]oncerned bystanders' may not marshal the judiciary as a 'vehicle for the vindication of value interests' — the exercise of judicial power is restricted to litigants who seek to rectify a personal and discrete harm.").

Plaintiffs assert standing based on the claim that they are "taxpayer[s]" in the State of West Virginia." (ECF No. 62 at 1). Defendants Justice and Morrisey argue that simply being a taxpayer does not confer standing; that Plaintiffs' amended complaint does not correct the deficiency on this point, and that Sevier's response likewise contains no more than a conclusory assertion of "taxpayer standing." (ECF No. 85 at 3). Plaintiffs further assert a "vested interest in how the State spends tax dollars generated and paid for by the Plaintiffs." (ECF No. 62 at 2, 5). However, vested or not, Plaintiffs' "interest" is irrelevant, as "standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." Valley Forge Christian College at 485-486.

"It has long been established [] that the payment of taxes is generally not enough to establish standing to challenge [government action]," Hein v. Freedom From Religion Foundation, Inc., 551 U.S. 587, 593, 127 S.Ct. 2553, 2559, 108 L.Ed.2d 424 (2017), except in limited circumstances. This is true for challenged actions of both state and federal government. Cuno, 547 U.S. at 126, S.Ct. at 1855-56. (2006) ("State taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers."). Rather, payment of taxes may be a sufficient basis for standing only when a taxpayer alleges action "in derogation of the Establishment Clause." Cuno, 547 U.S. at 347, 126 S.Ct. at 1864,

9

quoting Flast v. Cohen, 392 U.S. 83, 88, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Specifically, plaintiffs must allege the spending of tax dollars "in aid of religion." Id. at *348, **1865.

Moreover, "[t]o have standing under Flast, taxpayers must show (1) a 'logical link' between the plaintiff's taxpayer status 'and the type of legislative enactment attacked,' and (2) 'a nexus' between such taxpayer status and 'the precise nature of the constitutional infringement alleged.'" Arizona Christian School Tuition Organization v. Winn, 563 U.S. 125, 126, 131 S.Ct. 1436, 1438 (2011) quoting Flast, 392 U.S. at 102. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan, 504 U.S. at *561, 112 S.Ct. at **2137, quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189. (1990). For taxpayer standing purposes, individuals suffer a particular injury when "their property is transferred through the Government's Treasury *to a sectarian entity*" in violation of the Establishment Clause. Arizona Christian at *126 (emphasis added). Therein lies one of many fatal flaws in Plaintiffs' claims.

Plaintiffs' filings identify two purported religious groups upon which their Establishment Clause claims rest: "Because the government has elected to respect gay marriage and to enforce sexual orientation statutes, the Plaintiffs have been subjected to an incredibly [sic] amount of coercion by Secular Humanists, the LGBTQ Church, and government actors." (ECF No. 62 at 17). However, though Plaintiffs make repeated reference to an alleged "LGBTQ Church," no such actual religious entity is apparent. Moreover, while Plaintiffs' opposition to same-sex marriage is clearly rooted in their religious beliefs, it does not automatically follow that the converse is true – that individuals who are granted same-sex marriage licenses share a common

religious affiliation, or indeed *any* religious affiliation at all.

Plaintiffs have failed to explain how the issuance of same-sex marriage licenses in any way causes "sectarian [groups] to receive government funds drawn from general tax revenues," or plausibly aids any religious entity. Moreover, even if they had, such a claim would be plainly without merit. "Same-sex couples who have been granted a marriage license" is clearly distinct from other categories of individuals found to have a religious affiliation or group membership for Establishment Clause purposes. Cf., e.g., Lemon v. Kurtzman, 403 U.S. 602, 608-09, 91 S.Ct. 2105 (1971) (Roman Catholic School teachers and "church-related schools"); Arizona Christian School Tuition Organization v. Winn, 563 U.S. 125, 179 L.Ed.2d 523 (2011) (Christian school tuition organizations).

Accordingly, Plaintiffs have failed to meet their burden to show that they have standing under Article III, for lack of any cognizable injury in fact as to their Establishment Clause claims. Without tax revenues being spent in aid of a religious entity, there is no Establishment Clause claim. And, without any injury, the questions of causation and redressability are moot. Moreover, even had Plaintiffs' Lemon test claims been reached, the lack of any plausible nexus to religion would likewise necessarily preclude a finding favorable to Plaintiffs on this point as well.

### b. As to Plaintiffs' Equal Protection Claim, there is likewise no injury in fact because Plaintiffs have not identified any "legally protected interest."

Obergefell recognized the fundamental right to marry the person of one's choice, regardless of sex. 135 S.Ct. at 2584, 2589 ("A second principle in this Court's jurisprudence is that the right to marry is fundamental because it supports a *two-person union* unlike any other in its importance to the committed individuals.")(emphasis added). No court has recognized a

11

fundamental right to marry multiple people, or to marry objects. As such, the denial of Sevier's and Gunter, Harley, and Kohl's marriage licenses simply did not run afoul of any "legally protected interest" of any of those four Plaintiffs. And, as explained in more detail later in this report and recommendation, the undersigned finds no non-frivolous basis to entertain the idea.

> **3. All other defects aside, this case should be dismissed under Fed. R. Civ. P. 12(b)(6) for lack of any plausible allegations and failing to state any claim upon which relief could be granted.**

Defendants Justice and Morrissey argue that Plaintiffs' Amended Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 70 at 8). The undersigned must agree.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, courts must "liberally construe" complaints filed *pro se*. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . a pro se

complaint rais[es] civil rights issues") (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 521, 92 S.Ct 594, 30 L.Ed.2d 652 (1972).

### a. Plaintiffs Establishment Clause claims should be dismissed under Rule 12(b)(6) because there is no plausible connection between the acts Plaintiff complain of and religion.

A central premise underlying Plaintiffs' Establishment Clause claims is that the Supreme Court's decision in <u>Obergefell v. Hodges,</u> and States' subsequent issuance of marriage licenses to same-sex couples, are inextricably linked to religion and thus cross constitutional lines. More specifically, Plaintiffs argue that <u>Obergefell</u> was perpetrated by purported "Secular Humanist Judges," and favors a purported "LGBTQ Church." Neither assertion is remotely plausible.

First, the religious affiliation of each Supreme Court Justice, including those justices who were in the <u>Obergefell</u> majority, is a matter of public record. None are "Secular Humanists."[4] Second, no such religious entity as the "LGBTQ Church" is apparent.[5] While Plaintiffs' opposition to same-sex marriage is plainly rooted in their religious beliefs, it does not automatically follow that the converse is true - that recognition of same-sex marriage has any basis in religion. Indeed, the <u>Obergefell</u> decision specifically, and the issue of same-sex marriage generally, is an issue of due process and equal protection; not of religion. Moreover, as already addressed previously in this report and recommendation (§2(a)), issuance of marriage licenses to same-sex couples is inapposite to funds being spent "in aid of religion." Accordingly, Plaintiffs

---

[4] Z. Byron Wolf, *Why do Catholics hold a strong majority on the Supreme Court?* CNN.com, (Jul. 10, 2018) https://www.cnn.com/2018/07/10/politics/catholic-justices/index.html.

[5] *Religious Landscape Study,* Pew Research Center http://www.pewforum.org/religious-landscape-study/ (last visited August 3, 2018).

13

insistence to the contrary notwithstanding, there is no conceivable connection to religion involving these acts.

### b. Plaintiffs' Fourteenth Amendment Equal Protection Claims should likewise be dismissed under Rule 12(b)(6) for lack of plausibility and for failure to state a claim upon which relief could be granted.

Plaintiff Sevier, Gunter, Harley, and Kohl's 14th Amendment claims fare no better. A central premise underlying these claims is that recognition of the fundamental right to marry the person of one's choice, must include recognition of the fundamental right to marry the object or the people of one's choice. In other words, Plaintiffs argue, if the fundamental right to marry includes anything other than one person of the opposite sex, it must include the right to marry any person or thing whatsoever in any quantity. This fallacy of composition, too, fails.

Obergefell recognized the fundamental right to marry the person of one's choice, regardless of sex. 135 S.Ct. 2584, 2589 ("A second principle in this Court's jurisprudence is that the right to marry is fundamental because it supports a *two-person* union unlike any other in its importance to the committed individuals.")(emphasis added). No court has recognized a fundamental right to marry multiple people, or to marry objects. As such, the denial of Sevier's and Gunter, Harley, and Kohl's marriage licenses clearly did not violate any constitutional rights of any of those four Plaintiffs, as rights that do not exist cannot be violated. Accordingly, assuming as true that the Gilmer County Clerk's Office refused to issue the marriage licenses Plaintiffs requested, Plaintiffs fail to identify any cognizable right or violation inherent in that action.

In addition, Sevier's claim to have married[6] an object in New Mexico is not plausible. New Mexico law requires that in order to obtain a marriage license, a "couple shall personally appear at the office of the county clerk" in order to verify that both parties meet all requirements, including, *inter alia*, the ability to consent to the civil contract of marriage. N.M.A.C. § 40-1-1. These requirements include verification of identity, age, social security number, etc. Id. There are no circumstances on which a laptop computer could legally qualify to be married in the State of New Mexico. Accordingly, Sevier's claim to have married his laptop there is flatly implausible in any valid or legal sense.

### c. This case should also be dismissed as frivolous.

A frivolous action is one that "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Like other cases involving Sevier, this complaint too is "frivolous and a waste of the court's resources," Sevier v. Cuomo et al., No. 1:14-CV-5380, ECF No. 8 at 2-3 (S.D.N.Y. Oct. 7, 2014) (citing cases having so found as to Sevier), likely rooted more in "mental infirmity or an attempt . . . to gain further media exposure and self-promotion" than any legitimate legal argument. General Synod of the United Church of Christ v. Cooper, No. 14-CV-0123, ECF No. 88 at 1 (W.D.N.C. Aug. 12, 2014) (noting that Sevier is "currently on disability inactive service as a result of the finding by the Supreme Court of Tennessee that Sevier is incapacitated from continuing to practice law by reason of mental infirmity or illness."). It is telling that Plaintiffs' complaint relies heavily on faith-based rhetoric for support; and that citations to legal support, frequently do not stand for the propositions Plaintiffs purport. (ECF No. 85 at 5, citing examples). Indeed, Plaintiffs concede in places that there is no real law to

---

[6] Sevier does not specify whether this alleged "marriage" was validly conducted pursuant to a duly issued marriage license, but simply asserts he "married" a laptop in New Mexico. Regardless, no matter what (if anything) actually occurred, what *is* certain is that Sevier did not "marry" his laptop in any legal or valid sense.

15

support their argument. (ECF No. 62 at 18, admitting that "[t]he The Plaintiffs seek to change the course of law through force of intellect alone.").

### d. There is no non-frivolous argument for extending or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2).

Moreover, Plaintiffs' citation to Justice Roberts' dissent in Obergefell is unavailing for multiple reasons. First, rhetorical questions in a dissenting opinion carry no precedential weight. Second, although Justice Roberts remarked that the holding "invited [the question of] whether States may retain the definition of marriage as a union of two people," or preclude recognition of "plural marriage," Id. at 2621, he also explicitly cautioned in the same breath that he "d[id] not mean to equate marriage between same-sex couples with plural marriages in all respects. *There may well be relevant differences* that compel different legal analysis. But if there are, petitioners have not pointed to any." Id. at 2622 (emphasis added).

Some of those reasons are fairly obvious, and clearly either do not apply to Plaintiffs' alleged situations, or counsel *against* what they seek. For example, one consideration is affording same-sex spouses the same rights that heterosexual spouses have with regard to inheritance of a deceased spouse's property. United States v. Windsor, 570 U.S. 744 (2013). Another consideration is affording same-sex spouses equal parental rights to the couples' children, highlighted by co-plaintiffs DeBoar and Rowse in Obergefell:

> April DeBoer and Jayne Rowse are co-plaintiffs in the case from Michigan. They celebrated a commitment ceremony to honor their permanent relation in 2007. They both work as nurses, DeBoer in a neonatal unit and Rowse in an emergency unit. In 2009, DeBoer and Rowse fostered and then adopted a baby boy. Later that same year, they welcomed another son into their family. The new baby, born prematurely and abandoned by his biological mother, required around-the-clock care. The next year, a baby girl with special needs joined their family. Michigan, however, permits only opposite-sex married couples or single individuals to adopt, so each child can have only one woman as his or

>her legal parent. If an emergency were to arise, schools and hospitals may treat the three children as if they had only one parent. And, were tragedy to befall either DeBoer or Rowse, the other would have no legal rights over the children she had not been permitted to adopt. This couple seeks relief from the continuing uncertainty their unmarried status creates in their lives.

Id. at 2595.

Expanding marriage to include three or more persons would only impossibly complicate, rather than serve, these objectives. Legislative bodies would then be faced with the task of modifying succession statutes and determining which of multiple spouses would share in those rights, and in what shares. Given enough spouses, settlement of estates could result in shares so reduced by percentage that it aids none of the surviving spouses in any meaningful way.

Family courts would likewise be faced with the daunting task of determining which of multiple parents should have custody, visitation, etc. Indeed, with multiple parents, visitation could potentially become a revolving door through which children would constantly be shuffled in an attempt to observe each parents' rights. It likewise goes without saying, though apparently it must be said, that non-human objects lack the capacity to own, convey or receive property. Certainly, no non-human objects are capable of raising or parenting children. Lastly, non-human objects have no sex, nor any other characteristics that are safeguarded from discrimination, unlike the same-sex couples in <u>Obergefell</u>. These are just a few of the more obvious reasons why the right to same-sex marriage is entirely inapposite to an alleged right to marry multiple persons or objects.

A plaintiff seeking a preliminary injunction must establish 1) that he is likely to succeed on the merits, 2) that he is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in his favor, and 4) that an injunction is in the public interest.

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, *20, 129 S.Ct. 365, **375 (2008). As Plaintiffs here flatly cannot succeed on the merits and have suffered no cognizable injury or harm, Plaintiffs' requests for injunctive relief would properly be denied even if all of the preceding defects in their amended complaint did not preclude consideration.

    **4. Service of Process**

Lastly, Defendants Justice and Morrisey argue that they have not, in fact, been properly served. (ECF No. 70). Plaintiffs do not address this point in any meaningful way; however, given that the amended complaint should be dismissed on multiple other grounds, the point is moot.

**III.**                                                          **Conclusion**

For all of these reasons, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 69) be **GRANTED,** Plaintiffs' amended complaint (ECF No. 62) **DISMISSED WITH PREJUDICE**, and this matter stricken from the Court's active docket.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of Court is **DIRECTED** to provide a copy of this Report and

Recommendation to counsel of record, and to the *pro se* Plaintiffs by certified mail, return receipt requested, at their last known addresses as shown on the docket.

Entered this 3rd day of August, 2018.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE