IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD PENKOSKI,
JOHN GUNTER, JR.,
WHITNEY KOHL,
JOAN GRACE HARLEY,
and CHRIS SEVIER,

    Plaintiffs,

v.                    CIVIL ACTION NO. 1:18CV10
                        (Judge Keeley)

JIM JUSTICE, in his official
capacity as Governor of West Virginia
PATRICK MORRISEY, in his official
capacity as Attorney General of West Virginia,
and JEAN BUTCHER, in her official capacity
as the Clerk of Gilmer County,

    Defendants.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

Pending before the Court is the Report and Recommendation of United States Magistrate Judge Michael J. Aloi, recommending dismissal of the amended complaint filed by the pro se plaintiffs in this case. Also pending are the plaintiffs' objections to the magistrate judge's recommendations. For the reasons that follow, the Court **OVERRULES** the plaintiffs' objections (Dkt. Nos. 108, 109, 110, 111, 112), **ADOPTS** the Report and Recommendation insofar as it is consistent with this Memorandum Opinion and Order (Dkt. No. 104), **GRANTS** the defendants' motion to dismiss (Dkt. No. 69), and **DISMISSES** the amended complaint **WITHOUT PREJUDICE** for lack of standing.

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**  1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

## I. BACKGROUND

On January 16, 2018, the pro se plaintiffs, Richard Penkoski ("Penkoski"), John Gunter, Jr. ("Gunter"), Whitney Kohl ("Kohl"), Joan Grace Harley ("Harley"), and Chris Sevier ("Sevier") (collectively, "the Plaintiffs"), filed a complaint against defendants Jim Justice, in his official capacity as Governor of West Virginia, Patrick Morrisey, in his official capacity as Attorney General of West Virginia, and Jean Butcher, in her official capacity as the Clerk of Gilmer County (Dkt. No. 1). The Plaintiffs take issue with the United States Supreme Court's same-sex marriage jurisprudence and characterize the "paramount question" in the case as "whether parody marriage policies enforced by the state violate the Establishment Clause" (Dkt. No. 62 at 2).

The Plaintiffs seek, among other things, declarative and injunctive relief enjoining the state of West Virginia from legally recognizing any form of "parody marriage," including same-sex marriage (Dkt. Nos. 1 at 43; 62 at 3). They also seek a ruling from this Court overturning the Supreme Court's decision in Obergefell v. Hodges, 576 U.S. ---, 135 S.Ct. 2584 (2015) (Dkt. No. 62 at 3; 35). In the alternative, the Plaintiffs allege that Jean Butcher, in her official capacity as Clerk of Gilmer County, refused to issue Sevier, "a self-identified objectophile," a license to marry

**PENKOSKI, ET AL. V. JUSTICE, ET AL.                            1:18CV10**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

his laptop computer, and also refused to issue Gunter, "a self-identified polygamists [sic]" a license to marry both Kohl and Grace. Id. at 5. The Plaintiffs contend that the refusal to issue these marriage licenses, while issuing licenses to "individuals who identify as homosexual," violates the Due Process Clause, the Equal Protection Clause, and 42 U.S.C. § 1983. Id. at 24-33.

Pursuant to 28 U.S.C. § 636 and this Court's local rules, the Court referred all motion practice in this case to Magistrate Judge Aloi for a written order or report and recommendation ("R&R") (Dkt. No. 13). After the Governor and the Attorney General (collectively, "the State Defendants") filed a joint motion to dismiss (Dkt. No. 52), the Plaintiffs amended their complaint as of right on March 9, 2018 (Dkt. No. 62). Shortly thereafter, on March 30, 2018, the State Defendants moved to dismiss the amended complaint for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim (Dkt. No. 69).[1]

On August 3, 2018, Magistrate Judge Aloi entered an R&R recommending that the Court grant the State Defendants' motion and dismiss the Plaintiffs' amended complaint (Dkt. No. 104). The R&R first concluded that the Eleventh Amendment bars the Plaintiffs'

---

[1] To date, defendant Jean Butcher, in her official capacity as the Clerk of Gilmer County, has not made an appearance in the case.

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                         **1:18CV10**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

claims against the State Defendants. Id. at 6-8. Next, it concluded that the Plaintiffs lack standing under Article III of the Constitution because the amended complaint fails to allege that they have suffered any injury in fact. Id. at 8-11. The R&R further concluded that, notwithstanding these jurisdictional defects, the amended complaint must nonetheless be dismissed under Federal Rule of Procedure 12(b)(6) because the Plaintiffs have failed to state any claim upon which relief can be granted. Id. at 12-15. Finally, the R&R concluded that the amended complaint is frivolous and should be dismissed as such. Id. at 15-18.

The R&R also informed the parties of their right to file "written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection." Id. On August 22, 2018, the Court received the Plaintiffs' various "Notice[s] of Appeal Under FRCP 72 to the District Court Judge" (Dkt. Nos. 108; 111), "Motion[s] to Appeal the Magistrate's Recommendations Under FRCP 72 to the District Court Judge" (Dkt. Nos. 109; 110), and "Motion for Reconsideration Pursuant to FRCP 72" (Dkt. No. 112), all of which it construes as timely objections to the R&R. Accordingly, this case is now ripe for decision.

**PENKOSKI, ET AL. V. JUSTICE, ET AL.                       1:18CV10**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

## II. STANDARDS OF REVIEW

**A.   The R&R**

When reviewing a magistrate judge's R&R made pursuant to 28 U.S.C. § 636(b), the Court must review <u>de novo</u> only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). On the other hand, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." <u>Dellacirprete v. Gutierrez</u>, 479 F. Supp. 2d 600, 603-04 (N.D. W. Va. 2007) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation to which no objection has been made unless they are "clearly erroneous." <u>See</u> <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).

Vague objections to an R&R distract a district court from "focusing on disputed issues" and defeat the purpose of an initial screening by the magistrate judge. <u>McPherson v. Astrue</u>, 605 F. Supp. 2d 744, 749 (S.D. W. Va. 2009) (citing <u>Howard's Yellow Cabs, Inc. v. United States</u>, 987 F. Supp. 469, 474 (W.D.N.C. 1997)). Failure to raise specific errors waives the claimant's right to a <u>de novo</u> review because "general and conclusory" objections do not warrant such review. <u>Id.</u> (citing <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982); <u>Howard's Yellow Cabs</u>, 987 F. Supp. at 474); <u>see</u>

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                      1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

also <u>Green v. Rubenstein</u>, 644 F. Supp. 2d 723 (S.D. W. Va. 2009). Indeed, failure to file specific objections waives appellate review of both factual and legal questions. <u>See</u> <u>United States v. Schronce</u>, 72 7 F.2d 91, 94 & n.4 (4th Cir. 1984); <u>see also</u> <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991).

**B.   <u>Pro Se</u> Pleadings**

The Court liberally construes <u>pro se</u> complaints. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("[A] <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citations and quotation marks omitted)).[2] Nevertheless, even under that liberal standard, a court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely

---

[2] While the Plaintiffs all appear <u>pro se</u> in this matter, the Court notes that Sevier asserts that he is, or was formerly, an attorney. <u>See, e.g.</u>, Dkt. Nos. 62 at 5 n. 1 (stating that Sevier "is a former . . . prosecutor for DOD and DOJ rule of law mission"); 112 at 3 (describing himself as a "former Judge Advocate General"). The Court further notes that, despite being individually filed, the Plaintiffs' objections to the R&R are almost identical in substance and style and were all mailed on the same day, in envelopes marked with Sevier's name and/or his last-known mailing address. <u>See</u> Dkt. Nos. 108-8; 109-4; 110-1; 111-1; 112-6). From the record before it, however, the Court is unable to determine with any certainty to the extent to which Sevier actually drafted the pleadings or other filings in this case. Moreover, plaintiffs Penkoski, Gunter, Kohl, and Harley are not attorneys. Thus, the Court will consider the pleadings as if all Plaintiffs, in fact, appeared <u>pro se</u>.

6

**PENKOSKI, ET AL. V. JUSTICE, ET AL.                    1:18CV10**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. DISCUSSION

As an initial matter, the Court observes that the Plaintiffs' objections to the R&R consist largely of groundless and repetitive attacks and insults against Magistrate Judge Aloi. See generally Dkt. Nos. 108, 111, 112. Further, the Plaintiffs' lengthy and highly duplicative objections focus almost exclusively on the same legal arguments raised before the magistrate judge. See Dkt. Nos. 77, 79, 80. As this Court has previously observed, "reiterations and general objections place the Court under no obligation to conduct a de novo review." Reynolds v. Saad, No. 1:17CV124, 2018 WL 3374155, at *3 (N.D. W. Va. July 11, 2018), aff'd, 738 F. App'x 216 (4th Cir. 2018) (citing Diamond, 414 F. 3d. at 315).

Nevertheless, to the extent that the Plaintiffs' Notices and Motions can be construed as specific objections to the magistrate judge's recommendations, the Plaintiffs object to the recommendations that the Court dismiss their amended complaint for lack of standing, for failure to state a claim, and as frivolous. Because the issue of standing is dispositive in this case, the Court devotes the remainder of its discussion to that inquiry. See Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009) ("[I]t is

7

well established that the court has an independent obligation to assure that standing exists.").

### A. Applicable Law

Article III of the Constitution limits the exercise of judicial power to "Cases" and "Controversies," U.S. Const. art. III, § 2, cl. 1, and "Article III standing . . . enforces the Constitution's case-or-controversy requirement." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (quoting Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004)). Thus, "[t]he requirement of standing is 'perhaps the most important' condition of justiciability." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 153 (4th Cir. 2000) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).

Standing under Article III "generally requires a showing that a plaintiff has suffered actual loss, damage or injury, or is threatened with impairment of his or her own interests." Lamar Outdoor Advert. v. City of Weston, No. 2:17-CV-82, 2018 WL 3029272, at *3 (N.D. W. Va. June 18, 2018) (citing Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979)). The standing inquiry thus "ensures that a plaintiff has a sufficient personal stake in a dispute to render judicial resolution appropriate." Friends of the Earth, 204 F.3d at 153 (citing Allen, 468 U.S. at 750-51). "The

**PENKOSKI, ET AL. V. JUSTICE, ET AL.** 1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

burden of establishing standing to sue lies squarely on the party claiming subject-matter jurisdiction." Frank Krasner Enterprises, Ltd. v. Montgomery Cty., MD, 401 F.3d 230, 233 (4th Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

To meet the constitutional minimum for standing, a plaintiff must establish

> (1) an 'injury in fact' to a 'legally protected interest' that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) a causal connection between the injury and the conduct complained of that is 'fairly traceable,' and not 'the result of the independent action of some third party not before the court'; and (3) a non-speculative likelihood that the injury would be redressed by a favorable judicial decision.

Frank Krasner, 401 F.3d at 234 (citing Lujan, 504 U.S. at 560–61 (internal quotations, brackets, and citations omitted)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . . At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." Lujan, 504 U.S. at 561.

**B. Injury in Fact**

The Plaintiffs seek to enjoin the state of West Virginia "from legally recognizing gay marriage for violating the first amendment

9

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                        1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

establishment clause [sic] for (1) constituting a non-secular shame, for (2) serving as a defensible weapon against non-observers, and for (3) excessive entanglement of government with the religion of secular humanism" (Dkt. No. 62 at 3). The State Defendants argue, in part, that the Plaintiffs have failed to allege facts sufficient to establish any purported injury that is fairly traceable to the challenged conduct of the defendants (Dkt. No. 70 at 6-7). The Court agrees that the Plaintiffs have failed to establish that they have suffered an injury in fact sufficient to challenge the constitutionality of same-sex marriage under the Establishment Clause.

To establish an injury in fact, the Plaintiffs must show that they have suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . , and (b) 'actual or imminent,' not 'conjectural' or hypothetical.'" Lujan, 504 U.S. at 560 (internal citations omitted). Although standing may be predicated on a non-economic injury, a plaintiff's mere disagreement with the law or a court's decision does not constitute an injury cognizable under Article III. Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 485-486 (1992) ("[T]he psychological consequence presumably produced by observation of conduct with which one

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                          **1:18CV10**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms."). Thus, neither the Plaintiffs' disbelief in the legitimacy of same-sex marriage nor their disagreement with the Supreme Court's decisions in <u>Obergefell</u> and related cases constitutes an injury in fact sufficient to confer standing.

Moreover, to the extent that the Plaintiffs argue they have standing under the Establishment Clause as taxpayers who "have a vested interest in how the State spends tax dollars generated and paid for by [them]," Dkt. No. 62 at 2, this argument is unavailing. Generally, "the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing." <u>Hein v. Freedom From Religion Found., Inc.</u>, 551 U.S. 587, 599 (2007). In <u>Flast v. Cohen</u>, the Supreme Court carved out a narrow exception to the general prohibition against taxpayer standing to challenge "an exercise by Congress of the taxing and spending power" in violation of the Establishment Clause. <u>See</u> 392 U.S. 83, 102-04 (1968).

To establish taxpayer standing under <u>Flast</u>, a taxpayer must demonstrate (1) "a logical link between that status and the type of legislative enactment attacked," and (2) "a nexus between that

11

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                           **1:18CV10**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

status and the precise nature of the constitutional infringement alleged." Id. at 102. In Flast, the plaintiffs alleged that the distribution of federal funds to religious schools under a federal statute violated the Establishment Clause. Applying the two-part test, the Court concluded that the plaintiffs had established the "logical link between [their taxpayer] status and the type of legislative enactment attacked" where the alleged Establishment Clause violation was funded by a specific congressional appropriation and was undertaken pursuant to an express congressional mandate. Id. at 102-103.

In addition, the Supreme Court narrowly limits taxpayer standing under the Establishment Clause to challenges to Congressional action under Article I, Section 8. "Flast explained that individuals suffer a particular injury when, in violation of the Establishment Clause and by means of 'the taxing and spending power,' their property is transferred through the Government's Treasury to a sectarian entity." Arizona Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 126 (2011) (citing Flast, 392 U.S. at 105-06); Valley Forge, 454 U.S. at 479 (noting that Flast "limited taxpayer standing to challenges directed only [at] exercises of congressional power" under the Taxing and Spending Clause) (internal quotation marks omitted). Moreover, while subsequent

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                               1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

cases have modified Flast, none suggests that taxpayer standing exists to challenge federal court rulings. See Hein, 551 U.S. at 605–609 (discussing developments in taxpayer standing since Flast).

Here, the Plaintiffs have not attacked any legislative action. Instead, the Plaintiffs admit that, "like in Obergefell v. Hodges, . . . this case concerns only what states may do under the Constitution," and that they seek to challenge the Supreme Court's jurisprudence permitting same-sex marriage. See Dkt. No. 62 at 3-4. Thus, the Plaintiffs have failed to establish the requisite link between their taxpayer status and any legislative enactment. See, e.g., Hein, 551 U.S. at 607–09 (finding no taxpayer standing where plaintiffs "cite[d] no statute whose application they challenge" and rel[ied] solely on "lump-sum Congressional budget appropriations") (internal quotation marks omitted).

Further, despite their references to purported "coercion by Secular Humanists [and] the LGBTQ Church," e.g., Dkt. No. 62 at 17, the Plaintiffs have not alleged that, by means of the tax and spending power, their property has been transferred to any church, religious school, or other sectarian entity. Arizona Christian, 563 U.S. at 126; see also id. at 140 ("As Flast put it: The taxpayer's allegation in such cases would be that his tax money is being extracted and spent in violation of specific constitutional

13

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                               1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

protections against such abuses of legislative power. Flast thus understood the injury alleged in Establishment Clause challenges to federal spending to be the very extract[ion] and spen[ding] of tax money in aid of religion alleged by a plaintiff.") (internal quotation marks and citations omitted).

For these reasons, and for those more fully discussed in the R&R, the Plaintiffs' allegations in this case do not fall within the narrow Flast exception to the general rule against taxpayer standing. Accordingly, the Plaintiffs fail to qualify for taxpayer standing under the Establishment Clause.

**C.   Actual Case or Controversy**

Finally, to the extent that the Plaintiffs seek, in the alternative, to "force the government to legally recognize polygamy and man-object marriage," Dkt. No. 62 at 4, the Plaintiffs have failed to state a justiciable claim or controversy. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In a declaratory judgment action, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial

**PENKOSKI, ET AL. V. JUSTICE, ET AL.** 1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler, 547 U.S. at 341.

Throughout their pleadings, the Plaintiffs repeatedly describe marriage to more than one person or to an inanimate object as "obscene" and refer repeatedly to polygamy and man-object marriage as forms of "parody marriage." See, e.g., Dkt. Nos. 62 at 2, 24, 33, 35. Further, the Plaintiffs repeatedly ask the Court to enter injunctions "enjoining the State from legally recognizing any form of marriage other than man-woman marriage" and "enjoining the Defendants from issuing marriage licenses to self-identified homosexuals." They also request declarations from this Court that "Obergefell v. Hodges . . . is overturned" and that "man-woman marriage is the only form of marriage, and thereby, the State can legally recognize it." See, e.g., Dkt. No. 62 at 34-35; see also id. at 3 (stating that gay marriage "constitutes a non-secular sham"), 5 (seeking to enjoin the state from recognizing "any form

**PENKOSKI, ET AL. V. JUSTICE, ET AL.**                              1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**
---

of parody marriage - to include man-man and woman-woman marriage"), 21 (seeking to enjoin the Defendants from "legally respecting, endorsing, and enforcing gay marriage policies").

Thus, it is clear from the record in this case that the Plaintiffs' "alternative" request for a declaratory judgment "forc[ing] the government to legally recognize polygamy and man-object marriage" does not constitute a real request for relief. Therefore, because the Plaintiffs present no real interest in marrying an inanimate object or each other, their claim fails to qualify as an actual case or controversy for purposes of Article III.

## IV. CONCLUSION

For the reasons discussed, the Court:

- **OVERRULES** the plaintiffs' objections (Dkt. Nos. 108, 109, 110, 111, 112);

- **ADOPTS** the R&R to the extent consistent with this Memorandum Opinion and Order (Dkt. No. 104);

- **GRANTS** the defendants' motion to dismiss the amended complaint (Dkt. No. 69);

- **DENIES** the plaintiffs' motions for default judgment (Dkt. Nos. 108, 109, 110, 111); and

**PENKOSKI, ET AL V. JUSTICE, ET AL** 1:18CV10

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 104] AND DISMISSING THE AMENDED COMPLAINT [DKT. NO. 62]**

- **DISMISSES** the amended complaint **WITHOUT PREJUDICE** for lack of standing (Dkt. No. 62).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to the pro se parties, certified mail, return receipt requested, and to counsel of record. It further **DIRECTS** the Clerk to **STRIKE** this case from the Court's active docket.

Dated: November 9, 2018

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE